# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

AARON MCNEIL,

Plaintiff,

v.                                                          3:25-CV-725
(AMN/MJK)

VAN HOUTEN *et. al.*,

Defendant.

Aaron McNeil, Plaintiff *pro se*

Mitchell J. Katz, U.S. Magistrate Judge

To the Honorable Anne M. Nardacci, U.S. District Judge:

## ORDER and REPORT- RECOMMENDATION

McNeil began this action on June 6, 2025, by filing a Complaint (Dkt. 1) and moving for leave to proceed *in forma pauperis* ("*IFP*"). (Dkt. 9). The Clerk sent Plaintiff's Complaint and *IFP* application to this Court for review. (Dkts. 1, 9).

## I.    <u>BACKGROUND</u>

According to McNeil, in October 2024, Lisa Turner intended to withdraw a restraining order against him. (Complaint, Dkt. 1, at 2). The Complaint never identifies whether she withdrew the order. *See generally* (*Id.*). Five months later, Defendants Matthew Van Houten, the elected District Attorney of Tompkins County, and Assistant District Attorney Andrew Kelly "arrested" McNeil for violating the restraining order and charged him with "attempted homicide-

1

strangulation." (*Id.* at 2). McNeil contends "no victim and no credible evidence

supported the charge."

During the proceedings, McNeil claims that "Defendants suppressed

exculpatory evidence, coerced witnesses into a false narrative, and initiated a

media campaign to vilify" him. (*Id.* at 2). Probation Officer, Quentin Kaih, then

"prepared and filed a probation-violation report" based on hearsay. (*Id.*). Later,

Judge Maura Kennedy-Smith, the presiding Judge in Tompkins County Criminal

Court, approved a "plea agreement containing plainly incorrect factual recitations,

refused to recuse" herself "despite clear bias, and denied" McNeil's "motions to

dismiss." (*Id.* at 2, 3). McNeil alleges that the proceedings terminated in his favor

but then seeks "immediate release" as one of his remedies. (*Id.* at 3).

McNeil now brings this action under 42. U.S.C. § 1983. He alleges

that Defendants District Attorney Van Houten, A.D.A. Kelly, Probation Officer

Kaih, Judge Kennedy-Smith, Tompkins County Criminal Court Clerk Kimberly H.

Record, Tompkins County Criminal Court Clerk Jennifer Donlan-Fitzgibbon,

Tompkins County, Tompkins County District Attorney's Office, Tompkins County

Probation Office, Tompkins County Criminal Court, the New York State Office of

Court Administration without prejudice, and John Does 1-10 violated his

constitutional rights.

## II.    *IFP* APPLICATION

McNeil declares in his *IFP* application that he is unable to pay the filing fee. (Dkt. 9). After reviewing his application, this Court finds McNeil is financially eligible for *IFP* status.

## III.    STANDARD OF REVIEW

In addition to determining whether plaintiffs meet the financial criteria to proceed *IFP*, courts must also review the sufficiency of the allegations in the complaint under 28 U.S.C. § 1915. That statute requires a court to dismiss a case— at any time—if it determines that the action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915 (e)(2)(B)(i)- (iii).

When determining whether an action is frivolous, courts must consider whether the complaint lacks an arguable basis in law or in fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process and to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974).

To be sure, courts have a duty to show liberality toward *pro se* litigants and must use extreme caution when *sua sponte* dismissing *pro se* complaints before

adverse parties have been served and had an opportunity to respond. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee). But courts *still* have a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See id.*

## III.   <u>DISCUSSION</u>

The Court recommends dismissing:

- Defendants Van Houten, Kelly, Kaih, Kennedy-Smith, Record, and Donlan-Fitzgibbon with prejudice and without leave to amend;

- Defendants Tompkins County, Tompkins County District Attorney's Office, Tompkins County Probation Office, Tompkins County Criminal Court, and New York State Office of Court Administration without prejudice and with leave to amend; and

- John Does 1-10 without prejudice and with leave to amend.

### A. Abstention doctrines prevent the District Court from weighing in on this matter.

Federal courts are forbidden from enjoining ongoing state proceedings. *See Gristina v. Merchan,* 131 F.4th 82, 86 (2d Cir. 2025) quoting *Younger v. Harris*, 401 U.S. 37, 43 (1971). There are three circumstances that trigger *Younger* abstention: (1) state criminal prosecutions; (2) civil enforcement proceedings; and (3) civil proceedings that implicate a state's interest in enforcing the orders and judgments of its courts. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-3 (2013); *see also Schorr v. DoPico*, 686 Fed. App'x 34, 36 (2d Cir. 2017) (summary

4

order). "After applying the categorical *Sprint* approach," courts "consider three additional, non-dispositive factors to determine whether abstention is appropriate." *Lowell v. Vermont Dep't of Child. & Fams.*, 835 Fed. App'x 637, 639 (2d Cir. 2020) (summary order). The three additional factors are: whether "(1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Spargo*, 351 F.3d a 75; *see also Falco v. Justices of Matrimonial Parts of Supreme Ct. of Suffolk Cnty.*, 805 F. 3d 425, 427 (2d Cir. 2015).

  *Younger* abstention should apply to McNeil's Complaint. Under "Count 1" McNeil asks the District Court to terminate the proceedings in his favor. (Complaint, Dkt. 1, at 3). From this and the Complaint as a whole, the Court can ascertain that the State of New York is prosecuting McNeil in Tompkins County. *See* (Complaint, Dkt. 1, at 2). So the state's prosecution of McNeil triggers *Younger* abstention. *See Sprint*, 571 U.S. at 72.

  The non-dispositive factors do not change that outcome. Addressing the first and third factors, there is a pending state-criminal proceeding which will allow a judge to adjudicate McNeil's federal claims. *See* (Complaint, Dkt. 1, at 2-3). Taking the second factor, the state has an important interest in adjudicating

attempted homicide cases. (*Id.*). All told, the categorical approach and the three additional factors weigh in favor of the District Court applying *Younger* abstention.

The Complaint also indicates that the state-criminal proceedings may be over. *See* (Complaint, Dkt. 1, at 3) ("Judge Kennedy-Smith approved a plea agreement . . ..).[1] Even if that is the case, this Court still recommends that the District Court abstain from hearing this case.

"The *Rooker-Feldman* doctrine bars federal courts from exercising jurisdiction over claims brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Walker v. Fam. Ct. Judge Catherine Cholakis,* 19-CV-1288(LEK/CFH), 2020 WL 3503158, at *3 (N.D.N.Y. June 29, 2020) (cleaned up). "The *Rooker-Feldman* doctrine has four requirements: (1) the plaintiff must have lost in state court; (2) the loss must have occurred before the district court proceedings commenced; (3) the plaintiff must complain of injuries caused by a state court judgment; and (4) the plaintiff must invite district court review and rejection of that judgment." *Id*. (cleaned up).

---

[1] The phrase "the proceedings terminated in Plaintiff's favor" can also be read as McNeil telling this Court that the state court criminal case is over. This reading would be inconsistent with the rest of the of the document which indicates McNeil pled guilty.

*Rooker-Feldman* applies "only after state-court proceedings have ended," and the doctrine "does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." *Id.* (cleaned up); *see also Lance v. Dennis,* 546 U.S. 459, 466, (2006) ("*Rooker-Feldman* is not simply preclusion by another name" but "applies only in limited circumstances where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court.") (internal quotation marks and citation omitted).

*Rooker-Feldman* bars the District Court from hearing McNeil's case. If the plea agreement ended his case, McNeil lost in state court before he filed this complaint (establishing elements one and two). Next, McNeil claims that Defendants' conduct led to his 64-day-wrongful detention, has "significantly hindered, delayed, and cost him employment," caused him to endure "severe emotional distress, damages to personal relationships," and forced McNeil "to endure a heinous ongoing stigma of having an attempted homicide charge on his record." (Complaint, Dkt. 1, at 3). In simpler terms, McNeil complains of injuries caused by the state court judgment (establishing element 3). Last, in McNeil's relief section, he asks to be released from incarceration. In essence, he is asking the District Court to review and reverse his guilty plea (establishing element four). *Rocker-Feldman* prevents the Court from doing exactly what McNeil asks the

District Court to do. *See Cathlin v. City of New York*, No. 23-CV-4219 (LTS),

2023 WL 6929187 (S.D.N.Y. Oct. 18, 2023) ("*Rooker-Feldman* doctrine applies

where a plaintiff seeks relief that invites a federal district court to reject or overturn

a final decision of a state court as to a conviction"). In capsule form, *Rooker-*

*Feldman* prevents the District Court from hearing McNeil's complaint. *Moalawi v.*

*James*, 22-CV-6770, 2023 WL 4817618, at *2 (S.D.N.Y. July 27, 2023) (finding

that *Rooker-Feldman* bars the plaintiff's challenge to state-court conviction under

Section 1983).

### B. The District Court should dismiss the claims against Defendants Van Houten and Kelly because they are immune from suit.

The Court recommends dismissing McNeil's claims against Van Houten and

Kelly with prejudice and without leave to amend.

"Prosecutors sued under § 1983 enjoy absolute immunity from claims for

damages arising out of prosecutorial duties that are intimately associated with the

judicial phase of the criminal process." *Joyner v. Cty. of Cayuga*, No. 5:20-CV-

1904088 (MAD/TWD), 2020 WL 1904088, at *9 (N.D.N.Y. Apr. 17, 2020)

(cleaned up). Prosecutorial immunity from § 1983 liability covers "virtually all

acts, regardless of motivation, associated with the prosecutor's function as an

advocate." *Anilao v. Spota,* 27 F.4th 855, 864 (2d Cir. 2022) (cleaned up).

Naturally, this includes charging defendants, presenting evidence to a grand jury,

and evaluating evidence before trial. *Buari v. City of New York,* 530 F. Supp. 3d 356, 378 (S.D.N.Y. 2021). Immunity even extends to falsifying evidence, coercing witnesses, the knowing use of perjured testimony, deliberating withholding exculpatory information, making false or defamatory statements in judicial proceedings, and conspiring to present false evidence at a criminal trial. *Id.* (collecting cases).

The Court recommends dismissing McNeil's claims against Van Houten and Kelly with prejudice and without leave to amend. McNeil alleges that Van Houten approved of charges without probable cause and withheld exculpatory evidence, and A.D.A. Kelly fabricated witness statements, manipulated evidence, and conspired to deprive him of a fair trial. (Complaint, Dkt. 1, at 2).[2] Nevertheless, *all* the conduct McNeil alleges falls within prosecutor's function as an advocate. So Van Houten and Kelly are immune from suit. *See Anilao*, 27 F.4th at 864 ("absolute immunity extends even to a prosecutor who "conspires to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is *properly* within the role of a prosecutor is immaterial, because the immunity attaches to his function, not to the manner in which [they] performed it.") (cleaned up).

---

[2] McNeil also claims that Van Houten and Kelly arrested him. But this is highly unlikely given that Van Houten and Kelly are prosecutors and not police officers.

### C. The District Court should dismiss McNeil's claims against Defendant Kaih because he is also immune from suit.

The Court recommends dismissing McNeil's claims against Kaih with prejudice and without leave to amend.

"Probation officers are entitled to immunity in the performance of their duties." *Detteelis v. Sharbaugh,* 919 F.3d 161, 164 (2d Cir. 2019) (cleaned up). But the type of immunity afforded depends on whether the probation officers' conduct was judicial or prosecutorial. *Id.* "Probation officers are entitled to absolute immunity from suit in connection with their preparing and furnishing presentence reports to the court." *Id.* (cleaned up). "They are also entitled to absolute immunity" for "initiating parole revocation proceedings" and "presenting the case for revocation to hearing officers." *Id.* (cleaned up). Probation officers are entitled to qualified immunity when they perform investigatory duties like filing a violation report or recommending the issuance of an arrest warrant. *Id.*

Defendant Kaih is immune from suit. McNeil alleges that Kaih harmed him by "filing a probation-violation report based solely on uncorroborated hearsay." (Complaint, Dkt. 1, at 2). In essence, McNeil is suing Kaih for filing a probation violation. (*Id.*). The Court need not decide whether filing a probation violation entitles Kaih to absolute or qualified immunity. *See Detteelis*, 919 F.3d at 164-65. (Here, it could be argued that certain Appellees are entitled to absolute immunity for prosecuting a violation of probation, . . . But we need not resolve which

10

immunity applies here. . ..". But he is at least entitled to qualified immunity.

Plaintiff does not allege that Kaih filed the report without probable cause. He only

alleges that Kaih filed a report containing hearsay. But what McNeil misses is that

there is no bar to including hearsay in a probation report. If someone gave Kaih

information that McNeil violated his probation conditions, that is enough to

establish probable cause. *See Betts v. Shearman*, 751 F.3d 78, 82–83 (2d Cir. 2014)

(holding officer entitled to qualified immunity where "it was objectively

reasonable for the officer to believe that his actions were lawful at the time of the

challenged act") (cleaned up). And that would entitle Kaih to qualified immunity.

*See Malik v. Mackey*, 268 Fed. App'x 83, 84 (2d Cir. 2008) (summary order)

(holding state parole officer entitled to qualified immunity in filing parole violation

charges).

> **D.    The District Court should dismiss McNeil's claims against Defendants Kennedy-Smith, Record, and Donlan-Fitzgibbon because they are also immune from McNeil's lawsuit.**

The Court recommends dismissing McNeil's claims against Judge Kennedy-

Smith with prejudice and without leave to amend. Judges have absolute immunity

for their judicial acts performed in their judicial capacities. *See Mireles v. Waco*,

502 U.S. 9, 11 (1991); *see also Shtrauch v. Dowd*, 651 Fed. App'x 72, 73-74 (2d

Cir. 2016) ("Generally, acts arising out of, or related to, individual cases before the

judge are considered judicial in nature") (cleaned up). "Judicial immunity applies

even when the judge is accused of acting maliciously or corruptly." *Coon v.*

*Merola*, 19-CV-394 (DNH/ATB), 2019 WL 1981416, at *3 (N.D.N.Y. Apr. 8,

2019) (cleaned up). "'The only two circumstances in which judicial immunity does

not apply is when'" the judge "'takes action outside'" their "'judicial capacity'" or

"'when the judge takes action that, although judicial in nature, is taken 'in absence

of jurisdiction.'" *Id*. (quoting *Mireles*, 502 U.S. at 11-12). Here, McNeil alleges

that Judge Kennedy-Smith approved a flawed plea agreement, refused to correct

clear judicial errors, and violated her oath of office. (Complaint, Dkt. 1, at 2). The

judge also refused to recuse herself and denied McNeil's motions to dismiss. (*Id.* at

3). All the conduct McNeil complains of is judicial in nature. *See Bliven v. Hunt,*

579 F.3d 204, 209 (2d Cir. 2009) ("The factors determining whether an act by a

judge is a judicial one relates to the nature of the act itself, *i.e.*, whether it is a

function normally performed by a judge. . ..") (cleaned up). As a result, Judge

Kennedy-Smith is immune from suit, and the District Court should dismiss

McNeil's claims against her.

The Court also recommends dismissing McNeil's claims against Defendants

Record and Donlan-Fitzgibbon, with prejudice and without leave to amend,

because they also enjoy immunity.[3] The immunity afforded to judges also applies

---

[3] The Court is construing McNeil's complaint as suing Record and Donlan-Fitzgibbon in their
personal capacity.

to government officials for their acts that assist a judge in the performance of their judicial duties. *See Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985); *see also Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999); *Oliva v. Heller*, 839 F.2d 37, 39-40 (2d Cir. 1988). In the State of New York, a County Clerk's duties include those of a state-court clerk. *See* N.Y. Const. Art. VI, § 6(e); *see also* N.Y. County Law § 525(1); *Diaz v. Pataki*, 368 F. Supp. 2d 265, 271 (S.D.N.Y. Apr. 26, 2005) (cleaned up) (holding that the Bronx County Clerk's "'primary function' is to 'serve as clerk of the Supreme Court' of Bronx County, a state court.). Here, McNeil alleges that Record and Donlan-Fitzgibbon obstructed his access to the court by requiring *pro se* filings to be submitted only by counsel. *See* (Complaint, Dkt. 1, at 2). Flatly, Record's and Donlan-Fitzgibbon's conduct fall within their official duties. *See Bey v. New York*, 11-CV-3296, 2012 WL 4370272, at *7 (E.D.N.Y. Sept. 21, 2012) (holding that court clerks were entitled to "absolute quasi[-]judicial immunity" in suits alleging they refused to file documents). So they are immune from suit.

**E. The District Court should dismiss McNeil's claims against Tompkins County District Attorney's Office, Tompkins County Probation Office, Tompkins County Criminal Court, and New York State Office of Court Administration, because they are immune from McNeil's lawsuit.**

The Court recommends dismissing the claims against Tompkins County District Attorney's Office, Tompkins County Probation Office, Tompkins County

Criminal Court, and New York State Office of Court Administration with prejudice but with leave to amend.[4]

"State governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity or Congress has abrogated the states' eleventh amendment immunity." *Williams v. Does*, 24-Civ-4794, 2025 WL 713295 at *4 (S.D.N.Y. Jan 30, 2025). This immunity extends to "state agents and state instrumentalities that are, effectively, arms of the state. *Id* at *5. For example, "the New York State Unified Court System is unquestionably an arm of the State and is entitled to Eleventh Amendment sovereign immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (cleaned up). Likewise, District Attorney Offices are also immune from suit. *See Woodward v. Off. of Dist. Atty.*, 689 F. Supp. 2d 655, 659 (S.D.N.Y. 2010) (holding that district attorney offices are immune from suit). Importantly, New York has not waived its sovereign immunity. *See Williams*, 2025 at WL 713295 at *5.

Here, McNeil is suing four entities that are "unquestionably arms of the state. So Tompkins County District Attorney's Office, Tompkins County Probation Office, Tompkins County Criminal Court, and New York State Office of Court Administration are immune from suit and should be dismissed.

---

[4] Although McNeil sued Tompkins County Criminal Court through Defendants Record and Donlan-Fitzgibbon, the Court analyzes the two separately for absolute clarity.

The Court recommends dismissing these four Defendants without prejudice. "Whether a dismissal" under "the Eleventh Amendment is jurisdictional or merely an affirmative defense is an unsettled question in federal jurisprudence, with significant disagreement and varying outcomes amongst the district and circuit courts throughout the country." *Mulhern Gas Co. v. Rodriguez*, 23-CV-1267 (GTS/CFH), 2024 WL 3992588 at *7 (N.D.N.Y. Aug. 29, 2024). "The constitutional principle of sovereign immunity poses a bar to federal jurisdiction over suits against nonconsenting States.'" *Karupaiyan v. New York*, No. 23-1257-CV, 2024 WL 2174272 at *2 (2d Cir. May 15, 2024) (summary order) (cleaned up). "When subject matter jurisdiction is lacking, the district court lacks the power to adjudicate the merits of the case, and accordingly Article III deprives federal courts of the power to dismiss the case with prejudice." *Id.* (cleaned up). Within the Second Circuit, "a dismissal for lack of jurisdiction must be without prejudice rather than with prejudice." *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 126 (2d Cir. 2022). "In light of this significant uncertainty" this Court finds "that the most appropriate course is to dismiss the claims" against these four Defendants "without prejudice." *Mulhern Gas Co.*, 2024 WL 3992588 at *8.[5]

---

[5] This analysis does not apply to any other Defendants because McNeil noted that he was suing the others in their personal capacity.

**F. The District Court should dismiss McNeil's claims against Tompkins County**

The Court recommends dismissing the claims against Tompkins County without prejudice and with leave to amend.

Under § 1983, a municipality is responsible only for its "own illegal acts" and cannot be held vicariously liable for the constitutional violations of its employees. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). A municipality may be held liable only where an "official municipal policy" causes the constitutional deprivation. *Id.* (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978)). "Official municipal policy" includes laws passed by legislators, acts of policymaking officials, and "practices so persistent and widespread as to practically have the force of law." *Id.* at 61. Accordingly, a plaintiff may satisfy the policy or custom requirement in one of four ways: (1) "a formal policy officially endorsed by the municipality;" (2) "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question;" (3) "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising [policymaker] must have been aware;" or (4) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come

into contact with the municipal employees." *Brandon v. City of New York*, 705 F.

Supp. 2d 261, 276-77 (S.D.N.Y. 2010).

Here McNeil alleges that Tompkins County "maintained policies and

customs—deficient training, lack of oversight, and tolerance of misconduct—that

caused Plaintiff's constitutional injuries" (Complaint, Dkt. 1, at 3). At first blush,

this may seem to be enough to satisfy the four method of establishing a *Monell*

claim. But surely a "threadbare recital" of that element is not enough. *See Ashcroft*,

556 U.S. at 678. Thus, the Court recommends dismissing Plaintiff claims against

Tompkins County without prejudice and with leave to amend.

### G. The District Court should dismiss McNeil's claims against the John Does because McNeil failed to state a claim against the 10 Doe defendants.

Pleadings must contain, among other things, "a short and plain statement of

the claim showing that the pleader is entitled to relief …" Fed. R. Civ. P. 8(a)(2).

"The purpose of" Rule 8 "is to give fair notice of the claim being asserted so"

adverse parties have "the opportunity to file a responsive answer, prepare an

adequate defense, and determine whether the doctrine of res judicata is applicable."

*Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (cleaned up). The rule also

requires the pleading to include "a short and plain statement of the grounds for the

court's jurisdiction" and "a demand for the relief sought[.]" Fed. R. Civ. P. 8(a)(1),

(3). "Although no technical form is required, the Federal Rules make clear that

17

each allegation contained in the pleading 'must be simple, concise, and direct."

*Cole v. Smrtic*, No. 24-CV-847, 2024 WL 4870495, at *2 (N.D.N.Y. 2024)

(cleaned up). Allegations "so vague as to fail to give the defendants adequate

notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335

F. App'x 102, 104 (2d Cir. 2009) (summary order).

Indeed, to survive dismissal for failure to state a claim, a complaint must

contain sufficient factual matter, accepted as true, to state a claim that is "plausible

on its face." *Ashcroft*, 556 U.S. at 678 (2009) (cleaned up). "Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements do not

suffice." *Id.* (cleaned up).

Here, McNeil's complaint doesn't allege any facts about the John Does. In

fact, the only information McNeil states about the Doe defendants is that they "are

prosecutors, investigators, and court staff whose identifies will be revealed through

discovery." (Complaint, Dkt. 1, at 2). Surely, this is less than an "unadorned, the-

defendant-unlawfully-harmed-me accusation," which is insufficient to state a

claim. *Ashcroft*, 556 U.S. at 678. As a result, the District Court should dismiss

McNeil's claims against all John Does without prejudice and with leave to amend.

## H. Opportunity to Amend

Generally, before courts dismiss a *pro se* complaint or any part of the

complaint *sua sponte*, it should afford the plaintiff the opportunity to amend at

18

least once. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

But leave to re-plead may be denied where any amendment would be futile. *See id.*

Futility is present when the problem with plaintiff's causes of action is substantive

such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112

(2d Cir. 2000) (citation omitted). Here, the Court recommends dismissing

McNeil's claims against Defendants Van Houten, Kelly, Kaih, Kennedy-Smith,

Record, and Donlan-Fitzgibbon with prejudice and without leave to amend because

they are all immune from suit, so any amendment would be futile.

## IV.    CONCLUSION

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that Plaintiff's motion to proceed IFP (Dkt. 9) is **GRANTED**,[6]

and it is further

**RECOMMENDED,** the District Court dismiss McNeil's claims against

Van Houten, Kelly, Kaih, Kennedy-Smith, Record, and Donlan-Fitzgibbon **WITH**

**PREJUDICE** and **WITHOUT LEAVE TO AMEND**; and it is further

**RECOMMENDED,** the District Court dismiss McNeil's claims against

Tompkins County, Tompkins County District Attorney's Office, Tompkins County

Probation Office, Tompkins County Criminal Court, and New York State Office of

---

[6] The court notes that although Plaintiff's IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in the future regarding this action, including but not limited to copying and/or witness fees.

Court Administration **WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**; and it is further

    **RECOMMENDED,** the District Court dismiss McNeil's claims against John Does 1-10, in accordance with Fed. R. Civ. P. 8, **WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**;

    **ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on Plaintiff by regular mail.[7]

    Under 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**. *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated: July 22nd, 2025

                                       Digitally signed by
                                       Mitchell J Katz
                                       Date: 2025.07.22
                                       16:25:21 -04'00'

                             Hon. Mitchell J. Katz
                             U.S. Magistrate Judge

---

[7] The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) *(per curiam)*.

2012 WL 4370272
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Malcolm BEY, Francique Bey, Rein Bey, Drizzle Bey, Truth Bey,
and Amicus Curiae Bey, in propia persona, sui juris, Plaintiffs,

v.

State of NEW YORK, Nassau County Inc., Nassau County Family Court, Nassau County Child
Protective Services, Edmund Dane, Suzanne Leahey, Elizabeth Mcgrath, rosalie fitzgerald,
john Coppola, Alton Williams, David Sullivan, Kathleen Rice, David Gotimer, Bruce Cohen,
Merry–Lou Ferro, Cheryl Kreger, Warren Freeman, and Jane Doe/John Doe 1–100, Defendants.

No. 11–CV–3296 (JS)(WDW).
|
Sept. 21, 2012.

**Attorneys and Law Firms**

Malcolm Bey, Francique Bey, Rein Bey, Drizzle Bey, Truth Bey, Amicus Curiae Bey, Uniondale, NY, pro se.

Ralph Pernick, Esq., N.Y.S. Attorney General's Office, Mineola, NY, for Defendants N.Y.S. Defendants.

Liora M. Ben–Sorek, Esq., Nassau County Attorney's Office, Mineola, NY, for Defendants County Defendants.

Adam Daniel Levine, Esq., Matthew K. Flanagan, Esq., Catalano, Gallardo & Petropoulous, LLP, Jericho, NY, for Defendant Bruce Cohen, Esq.

Jessica Zimmerman, Esq., Marian C. Rice, Esq., L'Abbate, Balkan, Colavita & Contini LLP, Garden City, NY, for Defendant Cheryl Kreger, Esq.

*MEMORANDUM & ORDER*

SEYBERT, District Judge.

**\*1** Presently pending before the Court are the following motions: (1) Plaintiff Malcolm Bey's ("Mr.Bey") motions to "set aside and vacate" this Court's Order dated July 28, 2011 (Docket Entries 19, 27); (2) Mr. Bey's motion for a default judgment (Docket Entry 39); (3) a motion to dismiss the claims against Defendants State of New York, Nassau County Family Court, Judge Edmund Dane, Judge David Sullivan, Rosalie Fitzgerald, and John Coppola (the "State Defendants") (Docket Entry 25); (4) a motion to dismiss the claims against Bruce Cohen (Docket Entry 29); and (5) motions to dismiss the claims against Cheryl Kreger (Docket Entries 18, 32). [1] For the following reasons, Mr. Bey's motions to vacate and for a default judgment are DENIED and the motions to dismiss are GRANTED (with the exception of Defendant Kreger's letter-motion at Docket Entry 18, which is DENIED AS MOOT).

*BACKGROUND*

The Plaintiffs in this action are Mr. Bey; his wife, Francique Bey ("Mrs.Bey"), and their minor children, Rein Bey, Drizzle Bey, Truth Bey, and Amicus Curiae Bey (the "Bey Children"). Mr. Bey commenced this action *pro se,* on behalf of himself, his wife, and his children against Nassau County, Inc. [sic], Nassau County Child Protective Services ("CPS"), Suzanne Leahey, Elizabeth McGrath, Alton Williams, Nassau County District Attorney Kathleen Rice, David Gotimer, Merry–Lou Ferro, and Warren Freeman (collectively, the "County Defendants"), the State Defendants, Mr. Cohen, and Ms. Kreger arising out of petitions for child neglect that were filed in Nassau County Family Court in 2009 and 2010. The Court will briefly summarize the facts as stated in the Complaint-which are presumed to be true for the purposes of this Memorandum and Order-that are relevant to the pending motions.

On or around June 4, 2009, the Bey Children were questioned at school by CPS regarding suspected child abuse occurring in the Bey home. (Compl.¶ 26.) The Bey Children were later taken to the police station for further questioning. (Compl.¶ 26.) Mrs. Bey was arrested, and the Bey Children returned home with their father. (Compl.¶ 26.) The following day, however, the Bey Children were removed from the home and placed in foster care (Compl.¶¶ 27, 31), and on or around June 9, 2009 petitions for neglect were filed with the Family Court against Mr. and Mrs. Bey. (Compl.¶ 31).

Shortly thereafter, CPS inspected the Bey home and, after finding it habitable for the Bey Children, returned them to their father. (Compl.¶ 32.) A temporary restraining order was issued against Mrs. Bey, however, and she was only allowed supervised visitation with her children. (Compl.¶ 32.) She was ordered to take parenting and anger management classes. (Compl.¶ 34.) During this time, Mr. Bey "lost work" because he could not afford daycare, and he and his family were eventually evicted from their home. (Compl.¶ 35.) In December 2009, the neglect petition against Mr. Bey was withdrawn. (Compl.¶ 36.)

**\*2** In April 2010, a new neglect petition was filed and a temporary restraining order issued against Mr. Bey. (Compl.¶ 37.) During the next few months, the Bey Children were repeatedly questioned by CPS at school and visited by CPS twice a month at home. (Compl.¶ 39.) On June 7, 2010, Mr. Bey attempted to file an "objection and counterclaim" in Family Court, but Defendant Coppola, the Family Court's Deputy Chief Clerk, refused to file it. (Compl.¶ 40.) Mr. Bey was able to successfully file it, however, a few days later. (Compl.¶ 41.)

Mr. Bey returned to Family Court several times during the next few months for appearances before Judge Dane related to the neglect petition. (Compl.¶ 42.) [2] The proceedings were repeatedly adjourned, and Mr. Bey eventually told Judge Dane that he would not be returning to court. (Compl.¶ 42.) Judge Dane warned him that failure to appear would result in a warrant being issued for his arrest. (Compl.¶ 42.)

On October 19, 2010, Mr. Bey went to the Family Court to file papers and bumped into his court-appointed attorney, Mr. Cohen, leaving Judge Dane's chambers. (Compl.¶ 44.) Mr. Cohen advised him that he had missed a court appearance that morning before Judge Dane and that it had been rescheduled for 2:00PM. (Compl.¶ 44.) When Mr. Bey returned that afternoon, however, he was arrested for failing to appear that morning and incarcerated. (Compl.¶ 44.)

In January 2011, Judge Dane extended the temporary restraining order issued against Mr. Bey and ordered that he be mentally evaluated. (Compl.¶ 45.) Mr. Bey returned to court on March 15, 2011 for trial. CPS asked Mr. Bey to turn custody of the Bey Children over to CPS for one year, but Mr. Bey refused and his trial was adjourned to April 29, 2011. (Compl.¶¶ 46.48.) Around the same time, Mr. Bey requested copies of "everything in the court file." (Compl.¶ 47.) Defendants Fitzgerald, the Family Court's Chief Clerk, and Coppola gave him some documents but not others. (Compl.¶ 47.) Mr. Bey returned to court on April 29 and was asked to turn over custody of his children to CPS for six months, but he again refused. (Compl.¶ 49.) His trial was adjourned to May 13, 2011. (Compl.¶ 49.) On that date, he was again asked to give CPS custody of his children. (Compl.¶ 50.) This time, Ms. Kreger, the Bey Children's appointed law guardian, "attempt[ed] to coerce" him to agree to it, but he again refused. (Compl.¶ 50.) The trial was rescheduled to June 8, 2011 (Compl.¶ 51), and on June 15, 2011, Ms. Kreger spoke with the Bey Children at school about the alleged neglect (Compl.¶ 52).

Mr. Bey commenced this action on July 8, 2011, asserting claims for, *inter alia,* violations of the Constitution (*e.g.,* due process and unreasonable search and seizure), various criminal statutes (*e.g.,* genocide and kidnapping), international treaties and provisions of the United Nations' Charter, as well as a claim under the Alien Tort Claims Act and claims for "breech [sic] of trust and fiduciary duty," for "use of statutes[,] ordinances, rules and policies of the corporate state of New York[,] not a rule of law against indigenous man," and fraud. He is seeking monetary, declaratory, and injunctive relief. Mr. Bey simultaneously filed an application for a temporary restraining order and preliminary injunction which was denied by this Court on July 13, 2011. [3]

**\*3** On July 28, 2011, this Court entered an Order that: (1) reminded Plaintiffs that pursuant to Rule 4(m) of the Federal Rules of Civil Procedure they had to serve process on Defendants by November 7, 2011 or their Complaint would be dismissed; (2) advised Plaintiffs of their duty to keep the Court informed of any change of address; and (3) warned Plaintiffs that the claims brought on behalf of the Bey Children would be dismissed without prejudice unless counsel entered a notice of appearance on their behalf within thirty days. (Docket Entry 7.) No counsel has filed a notice of appearance on behalf of the Bey Children to date.

Presently pending before the Court are the following: (1) Mr. Bey's motions to vacate the July 28, 2011 Order, (2) motions to dismiss filed on behalf of the State Defendants, Mr. Cohen, and Ms. Kreger, and (3) Mr. Bey's motion for a default judgment against all Defendants. [4] Plaintiffs have not opposed the motions to dismiss.

*DISCUSSION*

Before discussing the merits of the pending motions, the Court must briefly address a threshold issue. Pursuant to Rule 11(a) of the Federal Rules of Civil Procedure, "[e]very pleading, written motion, and other paper shall be signed by at least one attorney of record ... or, by a party personally if the party is unrepresented." Since a non-attorney, *pro se* party may not represent another's interests, *see Iannaccone v. Law,* 142 F.3d 553, 558 (2d Cir.1998), every *pro se* plaintiff must sign a copy of the operative complaint in order to be a party to the action, *see Lynch v. DeMarco,* No. 11–CV–2602, 2011 WL 3418390, at \*2 (E.D.N.Y. July 29, 2011). Here, only Mr. Bey signed the Complaint; therefore, he is the only proper plaintiff in this action. If the Court does not receive a copy of the Complaint signed by Mrs. Bey within thirty (30) days of the date of this Memorandum and Order, all of her claims will be dismissed.

I. *Motion to Set Aside and Vacate*

On September 19, 2011, Mr. Bey filed a motion requesting that the Court "take mandatory judicial notice that the order dated July 28, 2010[sic], signed by Judge Joanna Seybert is inconsistent with Stare decisis [sic] Supreme Court Ruling [sic] *Winkleman v. Parma Central School District,* 550 U.S. 516 (2007)" and "set aside and vacate [this] void order." (Docket Entry 19.) Mr. Bey filed a similar (albeit less clear) motion to "take mandatory judicial notice" and "set aside and vacate" the July 28, 2011 Order on October 31, 2011. (Docket Entry 27.) These motions are denied for three reasons.

*First,* to the extent that Mr. Bey is seeking to vacate a "final judgment, order, or proceeding" pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, his motion is premature as the July 28, 2011 Order is not a "final" order for the purposes of Rule 60(b). *See Byrne v. Liquid Asphalt Sys., Inc.,* 250 F.Supp.2d 84, 87 (E.D.N.Y.2003) ("Courts have held that a final judgment is needed to support a Rule 60(b) motion." (citation omitted)); *Wanamaker v. Columbian Rope Co.,* 907 F.Supp. 522, 526–27 (N.D.N . Y.1995) (finding that an order "dismissing some but not all of the defendants, and dismissing some but not all of plaintiff's claims, was interlocutory and thus not 'final' for the purposes of Rule 60(b)").

**\*4** *Second,* to the extent that Mr. Bey's motion is more properly construed as one for reconsideration under Local Civil Rule 6.3, his motion is time-barred. Local Civil Rule 6.3 requires motions for reconsideration to "be served within fourteen ¶ 4) days after the entry of the Court's determination of the original motion." Here, Mr. Bey waited almost two months after the Court

issued its Order to file his first motion to vacate and another six weeks to file his second motion to vacate. Thus, both motions are time-barred and are, accordingly, DENIED.[5]

*Finally,* Mr. Bey's argument in support of reconsideration is without merit. Mr. Bey argues that he and his wife may represent the interests of their infant children *pro se.* However, while a parent may bring a lawsuit on behalf of an infant child, it is well established that the parent cannot do so *pro se. See Cheung v. Youth Orchestra Found. of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990) (holding that a father was not allowed to bring suit on behalf of his minor daughter without representation by counsel); *Berrios v. N.Y.C. Hous. Auth.,* 564 F.3d 130, 133 (2d Cir.2009) ("The fact that a minor or incompetent person must be represented by a next friend, guardian ad litem, or other fiduciary does not alter the principle ... that a non-attorney is not allowed to represent another individual in federal court litigation without the assistance of counsel."). The Court warned Plaintiffs that the claims brought on behalf of the Bey Children would be dismissed unless counsel filed a notice of appearance by August 27, 2011. More than a year has passed and no lawyer has appeared on behalf of the Bey Children. Accordingly, their claims are DISMISSED without prejudice.

II. *Motion for Default Judgment*

Also pending is Mr. Bey's motion for the entry of default and a default judgment against all Defendants. A party is entitled to an entry of default when the party against whom judgment is sought "has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). In the present case, counsel for Defendants either filed a motion to dismiss or an answer on behalf of every Defendant (*see* Docket Entries 25, 29, 32, 34), and the Clerk of the Court noted this on December 7, 2011 when he refused to enter a certificate of default against Defendants (Docket Entry 44). Thus, there is no basis for entering a default judgment in this case, and Mr. Bey's motion is DENIED.

III. *Motions to Dismiss*

There are three motions to dismiss pending: one filed by the State Defendants, one filed by Cheryl Kreger, and one filed by Bruce Cohen. The Court will first discuss the applicable standard of review before turning to the merits of the pending motions.

A. *Standard of Review under Rule 12(b)(6)*

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009). *First,* although the Court must accept all of a complaint's allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris,* 572 F.3d at 72 (alteration in original) (quoting *Iqbal,* 556 U.S. at 678) (internal quotation marks omitted). *Second,* only complaints that state a "plausible claim for relief" survive a motion to dismiss. *Id.* (internal quotation marks and citation omitted). Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (internal quotation marks and citation omitted). While *pro se* plaintiffs enjoy a somewhat more liberal pleading standard, *see Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citation omitted), they must still comport with the procedural and substantive rules of law. *Colo. Capital v. Owens,* 227 F.R.D. 181, 186 (E.D.N.Y.2005).

B. *The State Defendants' Motion to Dismiss*

**\*5** For the following reasons, the Court grants the State Defendants' motion to dismiss.

1. *Claims against New York State and the Nassau County Family Court*

All of Mr. and Mrs. Bey's claims against the State of New York and the Nassau County Family Court are barred by sovereign immunity. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). "The Eleventh Amendment to the Constitution bars suits against a state in federal court unless that state has consented to the litigation or Congress has permissibly enacted legislation specifically overriding the state's immunity." *Russell v. Dunston,* 896 F.2d 664, 667 (2d Cir.1990) (citations omitted); *see also Bd. of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). This bar precludes suits against states for both monetary and equitable relief. *See Edelman v. Jordan,* 415 U.S. 651, 667–69, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Cory v. White,* 457 U.S. 85, 90–91, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); *see also Atl. Healthcare Benefits Trust v. Googins,* 2 F.3d 1, 4 (2d Cir.1993). Therefore, all claims against the State of New York must be dismissed with prejudice.

The Nassau County Family Court is also immune from suit under the Eleventh Amendment because it is an arm of the State of New York. *Madden v. Vt. Sup.Ct.,* 8 F. App'x 128, 129 (2d Cir.2001) (finding that claims against the Vermont Supreme Court were barred by the Eleventh Amendment); *Gollomp v. Spitzer,* 568 F.3d 355, 366 (2d Cir.2009) (finding that the New York state Unified Court System, of which a county court is a part, is an "arm of the State," and therefore entitled to Eleventh Amendment immunity); *Manko v. Steinhardt,* No. 11–CV–5430, 2012 WL 213715, at *3 (E.D.N.Y. Jan. 24, 2012) (dismissing claim against the Kings County Supreme Court of the State of New York Clerk's Office because it was barred by Eleventh Amendment immunity as an arm of the State of New York). Accordingly, the claims against the Nassau County Family Court must also be dismissed with prejudice.

### 2. *Claims against Judge Dane and Judge Sullivan*

The claims for monetary relief against Judge Dane and Judge Sullivan must be dismissed because "[i]t is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities or within his or her jurisdiction," *Miller v. Cnty. of Nassau,* 467 F.Supp.2d 308, 312 (E.D.N.Y.2006) (citing *Mireles v. Waco,* 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Maestri v. Jutkofsky,* 860 F.2d 50, 52–53 (2d Cir.1988)), and that such "immunity is not overcome by allegations of bad faith or malice," *Mireles,* 502 U .S. at 11 (citation omitted); *see also Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) ( "[I]mmunity applies even when the judge is accused of acting maliciously and corruptly."). Here, as all of the claims against Judge Dane and Judge Sullivan arise solely out of actions they allegedly took from the bench while presiding over various proceedings involving Mr. and Mrs. Bey, their alleged wrongful conduct falls squarely within the scope of absolute judicial immunity. Accordingly, all of Mr. and Mrs. Bey's claims for monetary relief are dismissed with prejudice.

**\*6** Mr. and Mrs. Bey are also seeking declaratory and injunctive relief, which do not fall within the ambit of judicial immunity. These claims, however, fail as a matter of law. *First,* Mr. and Mrs. Bey's claims for injunctive relief under Section 1983 are barred because "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *see also Dorman v. Higgins,* 821 F.2d 133, 139 (2d Cir.1987). Further, to the extent that Mrs. Bey's constitutional claims arise out of the ongoing Family Court proceedings, they are barred either by the *Younger* abstention doctrine, *see Diamond "D" Const. Corp. v. McGowan,* 282 F.3d 191, 198 (2d Cir.2002) (*"Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." (citing *Younger v. Harris,* 401 U.S. 37, 43–44, 91 S.Ct. 746, 27 L.Ed.2d 669) (1971)); *Donkor v. N.Y.C. Human Res. Admin. Special Servs. for Children,* 673 F.Supp. 1221, 1224–27 (S.D.N.Y.1987), or the *Rooker–Feldman* doctrine, [6] *see Phifer v. City of N.Y.,* 289 F.3d 49, 57 (2d Cir.2002) ("This court may not review the family court's determinations regarding custody, neglect and visitation" if "those issues were decided by the family court after providing [the plaintiff] with a full and fair opportunity to litigate those issues").

*Second,* Mr. and Mrs. Bey's claim for breach of the public's trust is not a cognizable cause of action. *See Brady v. Lynes,* No. 05–CV–6540, 2008 WL 2276518, at *6 (S.D.N.Y. June 2, 2008).

*Third,* their claim under the Alien Tort Claims Act fails because they are not "aliens" within the meaning of the statute. *See Topo v. Dhir,* 210 F.R.D. 76, 78 (S.D.N.Y.2002) (defining "alien" in the context of the Alien Tort Claims Act as a "foreign born person who has not qualified as a citizen of the country" (internal quotation marks and citation omitted)). Mr. and Mrs. Bey assert that they are "aliens" because they have declared their independence from the United States (*see* Mr. Bey's Aff. in Support of Prelim. Inj. ¶ 4 ("Indigenous Affiant declares independence from the USA and all sub-corporations thereof, and heretofore, herein and hereafter claims absolute power, authority and control over himself, without limitation, and herein states, for the record, that he is a free, sovereign indigenous political power holder ...."); *see also* Compl. at 1 (Mr. Bey describing himself as a "Free Indigenous Sovereign Political Power Holder"); *id.* at 42 (requesting a "Declaratory Judgment verifying the lawful indigenous status of The Bey Family")); however, such arguments have been uniformly rejected by courts in this Circuit and others, *see, e.g., United States v. Hilgeford,* 7 F.3d 1340, 1342 (7th Cir.1993) ("The defendant in this case apparently holds a sincere belief that he is a citizen of the mythical 'Indiana State Republic' and for that reason is an alien beyond the jurisdictional reach of the federal courts. This belief is, of course, incorrect."); *Duwenhoegger v. King,* No. 10–CV–3965, 2012 WL 1516865, at *14 (D.Minn. Feb. 13, 2012) ("[A]ny argument by plaintiff that he is not subject to the laws of Minnesota or the United States because he is a "Sovereign Citizen" is frivolous." (collecting cases)); *M & I Marshall & Ilsley Bank v. Glavin,* No. 10–CV–0616, 2011 WL 322663, at *1 (W.D.Wis. Jan. 31, 2011) ('This 'sovereign citizen' argument has been rejected repeatedly by courts."); *United States v. Lumumba,* 741 F.2d 12, 14–15 (2d Cir .1984) (rejecting criminal defendant's argument that he is immune from prosecution due to his "proclaimed status" as "Vice President and Minister of Justice" of the "independent state" of "the Republic of New Afrika"—a self-created "Nation of Afrikans born in North America as a consequence of ... slavery" (alteration in original)).

**\*7** *Fourth,* any of Mr. and Mrs. Bey's claims arising under Title 18 of the United States Code necessarily fail because there is no private right of action under criminal statutes, *see, e.g., Sanchez v. Dankert,* No. 00–CV–1143, 2002 WL 529503, at *10–11 (S.D .N.Y. Feb. 22, 2002) (collecting cases), and there is similarly no private right of action under international treaties or provisions of the United Nation's Charter, *see, e.g., id.* at *11; *United States v. De La Pava,* 268 F.3d 157, 164 (2d Cir.2001) ("[T]here is a strong presumption against inferring individual rights from international treaties."); *Garza v. Lappin,* 253 F.3d 918, 924 (7th Cir.2001) ("[A]s a general rule, international agreements, even those benefitting private parties, do not create private rights enforceable in domestic courts."); RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES,,,, § 907 cmt. a. ("International agreements ... generally do not create private rights or provide for a private cause of action in domestic courts...."); *Joyner–El v. Giammarella,* No. 09–CV–3731, 2010 WL 1685957, at *3 n. 4 (S.D.N.Y. Apr. 15, 2010) (finding that the United Nations' Universal Declaration of Human Rights and Declaration on the Rights of Indigenous Peoples do not create federal causes of action (citing *Sosa v. Alvarez–Machain,* 542 U.S. 692, 734, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004))).

*Finally,* Mr. and Mrs. Bey's claim that "any Laws[,] statutes, ordinances and rules made since 1867 are unconstitutional" because Congress "ceased to exist as a lawful deliberative body" after the South seceded from the Union during the Civil War is frivolous and entirely without merit.

Accordingly, all claims against Judge Sullivan and Judge Dane are hereby dismissed with prejudice. [7]

3. *Claims against Defendants Fitzgerald and Coppola*
Defendants Fitzgerald and Coppola are also entitled to immunity because it is well established that "the clerk of the court and deputy clerks are shielded by an absolute quasijudicial immunity, particularly when they 'perform tasks that are an integral part of the judicial process.' " *McGann v. Lange,* No. 96–CV–0859, 1996 WL 586798, at *2 (E.D.N.Y. Oct. 10, 1996) (quoting *Mullis v. U.S. Bankr.Ct.,* 828 F.2d 1385, 1390 (9th Cir.1987)); *see also Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir.1997) (finding that the "court's inherent power to control its docket is part of its function of resolving disputes between parties" and is thus "a function for which judges and their supporting staff are afforded absolute immunity"). In this case, Mr. and Mrs. Bey allege that Defendant Coppola refused to file Mr. Bey's "objection and counter claim" (Compl.¶ 40) and that Coppola and Fitzgerald did not provide him with a copy of the entire court file upon request (Compl .¶ 47). Courts have found similar actions

by court clerks to be shielded by absolute quasi-judicial immunity. *See, e.g., Rodriguez,* 116 F.3d at 66 (finding that clerks were entitled to quasi-judicial immunity for, *inter alia,* refusing an inmate's request for records on appeal); *Pukulin v. Gonzalez,* No. 07–CV–0412, 2007 WL 1063353, at \*2 (E.D.N.Y. Apr. 5, 2007) (finding that absolute judicial immunity extends to "the Clerk's Office['s] activities of filing and docketing legal documents"); *McKnight v. Middleton,* 699 F.Supp.2d 507, 525–26 (E.D.N.Y.2010) (granting immunity to Family Court clerk for claims arising out of his failure to process the plaintiff's motions); *Mullis,* 828 F.2d at 1390 (finding that clerk was entitled to quasi-judicial immunity for, *inter alia,* refusing to file a document with the court); *Stewart v. Minnick,* 409 F.2d 826, 826 (9th Cir.1969) (holding that quasi-judicial immunity shielded court clerk from suit arising out of his refusal to provide litigant with a portion of the trial transcript).

**\*8** Accordingly, and for the reasons discussed above, all claims against Defendants Fitzgerald and Coppola are dismissed.

### C. *Defendant Cohen's Motion to Dismiss*

The only allegations in the Complaint against Defendant Cohen, who according to the Complaint was Mr. and Mrs. Bey's court-appointed attorney (Compl.¶ 19), are that on October 19, 2010, he advised Mr. Bey that he missed a court appearance and directed him to return to court at 2:00PM (Compl.¶ 44). Upon Mr. Bey's return to court later that day, he was arrested. (Compl.¶ 44 .) Defendant Cohen argues that the claims against him must be dismissed because: (1) the Court lacks subject matter jurisdiction, (2) he was never properly served, and (3) the Complaint fails to state a claim.

The Court finds Defendant Cohen's jurisdictional arguments to be without merit as (1) the Complaint asserts claims for violations of the United States Constitution so this Court has subject matter jurisdiction, *see* 28 U.S.C. § 1331, and (2) allegations of improper service, without a sworn affidavit, are insufficient to establish improper service, *see United States v. Riser,* No. 10– CV–4550, 2011 WL 1004566, at \*3 (E.D.N.Y. Mar. 16, 2011).

However, the Court finds that Mr. and Mrs. Bey have failed to state a cognizable claim for relief against Defendant Cohen. Their claims arising under Section 1983 fail because Defendant Cohen is not a state actor. *See Browdy v. Karpe,* 131 F. App'x 751, 753 (2d Cir.2005) ("[C]ourt-appointed attorneys 'performing a lawyer's traditional functions as counsel' to a defendant do not act 'under color of state law' and, therefore, are not subject to suit under 42 U.S.C. § 1983." (quoting *Rodriguez,* 116 F.3d at 65–66)). And to the extent that Mr. and Mrs. Bey attempt to cure this defect by conclusorily alleging that Defendant Cohen conspired with state officials, "[a] merely conclusory allegation that a private [party] acted in concert with a state actor does not suffice to state a § 1983 claim against [a] private [party]." *Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 324 (2d Cir.2002) (citation omitted); *accord Browdy,* 131 F. App'x at 753.

Accordingly, all constitutional claims (and for the reasons discussed above, all other claims) against Defendant Cohen must be dismissed.

### D. *Defendant Kreger's Motion to Dismiss*

Mr. and Mrs. Bey's claims against Defendant Kreger arise out of her appointment as the Bey Children's law guardian. Defendant Kreger argues that the claims asserted against her must be dismissed because: (1) she is protected by quasijudicial immunity; (2) Mr. and Mrs. Bey lack standing to assert claims against her; (3) Mr. and Mrs. Bey lack privity with her; (4) the claims are barred by the *Rooker–Feldman* doctrine; (5) the Complaint does not contain a short and concise statement of Plaintiffs' claims in violation of Rule 8 of the Federal Rules of Civil Procedure; and (6) the Complaint fails to state a claim upon which relief can be granted. Because the Court finds that Defendant Kreger is protected by quasi-judicial immunity, it will not address her other arguments.

**\*9** Courts in New York have consistently held that law guardians are entitled to absolute quasi-judicial immunity for actions taken within the scope of their appointment. *See Yapi v. Kondratyeva,* 340 F. App'x 683, 685 (2d Cir.2009); *Dowlah v. Dowlah,* No. 09–CV–2020, 2010 WL 889292, at \*7 (E.D.N.Y. Mar. 10, 2010) (collecting cases); *see also Bluntt v. O'Connor,* 291 A.D.2d 106, 116–119, 737 N.Y.S.2d 471 (4th Dep't 2002) ("[M]ost courts that have considered suits by disgruntled parents

against attorneys appointed by courts to protect children in custody disputes have granted, on public policy grounds, absolute quasijudicial immunity to the attorneys for actions taken within the scope of their appointments." (collecting cases)).

Because all of the claims against Defendant Kreger arise out of activities taken within the scope of her appointment as the Bey Children's legal guardian (*i.e.,* participating in proceedings in Family Court (Comp.¶ 50) and interviewing the Bey Children about their parents (Compl.¶ 53)), her actions are protected by quasi-judicial immunity. Therefore, for this reason and the reasons discussed above, the Court GRANTS her motion, and all claims against Defendant Kreger are dismissed. [8]

### *CONCLUSION*

For the foregoing reasons, it is hereby ORDERED that:

(1) The pending motions to dismiss are GRANTED (Docket Entries 25, 29, 32), and all claims (including cross-claims) against Defendants Sullivan, Dane, Kreger, Fitzgerald, Coppola, and Cohen are DISMISSED; [9]

(2) Ms. Kreger's letter motion asking the Court to *sua sponte* dismiss the claims against her (Docket Entry 18) is DENIED AS MOOT;

(2) Mr. Bey's motions to vacate (Docket Entries 19, 27) are DENIED, and all claims brought on behalf of Rein, Drizzle, Truth, and Amicus Curiae Bey are DISMISSED without prejudice; and

(3) Mr. Bey's motion for a default judgment (Docket Entry 39) is DENIED; and

4) Mrs. Bey's remaining claims will be dismissed without prejudice unless the Court receives a copy of the Complaint signed by Mrs. Bey within thirty (30) days of the date of this Memorandum and Order.

The Clerk of the Court is directed to terminate Judge Sullivan, Judge Dane, Ms. Kreger, Ms. Fitzgerald, and Mr. Cohen as Defendants and Rein, Drizzle, Truth, and Amicus Curiae Bey as Plaintiffs. The Clerk of the Court is also directed to terminate the motion at Docket Entry 23 (*see supra* page 2 n. 2) which is not a motion but rather Defendant Cohen's opposition to Plaintiff's motion to vacate. The Clerk of the Court is further directed to mail a copy of this Memorandum and Order to each of the *pro se* Plaintiffs.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4370272

---

### Footnotes

1    There is also a motion pending at Docket Entry 23. This is not a motion, however, but rather an opposition to Plaintiffs' motion to vacate. The Clerk of the Court is directed to terminate the motion and amend the docket entry to reflect that it is a "Letter in Opposition" to Docket Entry 19.

2    It appears as though Judge Dane presided over Mr. Bey's neglect proceedings. It is unclear what role, if any, Judge Sullivan had in these proceedings.

3    The contents of Mr. Bey's application are incomprehensible; however, the Complaint asserts that he is seeking an order enjoining the Family Court proceeding and vacating any judgments issued to date.

4    The County Defendants did not move to dismiss but rather answered the Complaint on November 7, 2011 and asserted cross-claims against the other defendants for indemnification and/or contribution.

5    Mr. Bey argues that his motion is "timely because non attorneys are not bound by the same rules as attorneys." (Docket Entry 19, at 2.) This is not true. A plaintiff's *pro* se status "does not exempt [him] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (internal quotation marks and citation omitted).

6    Although it appears as though the Family Court proceedings against Mrs. Bey are ongoing and the neglect petitions filed against Mr. Bey have been dismissed (Kreger Decl. ¶ 7 n. 1), Mr. and Mrs. Bey are also seeking, *inter alia,* vacatur of the "judgments issued by The Family Court and Nassau County Court CPS" (Compl. at 42).

7    To the extent that Mr. and Mrs. Bey assert claims for declaratory relief arising under state law, the Court declines to extend supplemental jurisdiction, and those claims are dismissed without prejudice. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

8    Defendant Kreger also filed a letter motion asking this Court to *sua sponte* dismiss the claims asserted against her. (Docket Entry 18.) This motion is DENIED AS MOOT.

9    With the exception of any claims for declaratory judgment arising under state law, all claims are DISMISSED WITH PREJUDICE.

---

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 30 of 108

Cathlin v. City of New York, Not Reported in Fed. Supp. (2023)

2023 WL 6929187
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Michael C. CATHLIN, Plaintiff,

v.

CITY OF NEW YORK, et al., Defendants.

23-CV-4219 (LTS)
|
Signed October 18, 2023

**Attorneys and Law Firms**

Michael C. Cathlin, Brooklyn, NY. Pro Se.

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

**\*1** Plaintiff, who is appearing *pro se*, brings this action alleging that Defendants violated his rights in criminal proceedings before the Criminal Court of the City of New York, New York County, in violation of the Equal Protection Clause of the Fourteenth Amendment and the New York State Constitution. By order dated May 24, 2023, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses this action.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 31 of 108

Cathlin v. City of New York, Not Reported in Fed. Supp. (2023)

## BACKGROUND

Plaintiff alleges that Defendants violated his rights in connection with his arrest and criminal proceedings, resulting in his conviction of attempted forcible touching and sexual abuse in the third degree. Named as defendants are the City of New York; Christina Awad, an Assistant District Attorney at the Manhattan District Attorney's Office ("DA's Office"); Jacob Smith, a member of the New York City Police Department ("NYPD") Transit Bureau Manhattan Task Force; Michael Miceli, a Youth Officer at NYPD Transit Bureau District 2; and Catherine Byrns, Esq., an attorney at the DA's Office. Plaintiff seeks to vacate his conviction and seal his DNA results, and money damages.

**\*2**  The following information is taken from the complaint. Plaintiff, who at the time was a second year law student, was arrested on June 11, 2019, and charged with forcible touching and sexual abuse in the third degree based on a subway train incident. On November 25, 2019, Judge Josh Hanshaft, who presided over Plaintiff's criminal case in the Criminal Court of the City of New York, New York County, denied him his right to a jury trial in violation of the Equal Protection Clause of the Fourteenth Amendment and the New York State Constitution. Judge Hanshaft "did not recognize the potential of [Plaintiff] being homeless and the damage it caused to [his] reputation, as a person as well as a security officer, serious enough for a jury trial within the confines of New York City." (ECF 1, at 5.)[1] Instead, Judge Hanshaft conducted a bench trial and allowed "admission of hearsay for the complainant, which otherwise would have been the only evidence to use against [Plaintiff's] plea of not guilty." (*Id.*) Although at trial, "it was established no communication of any kind occurred between [Plaintiff] and the complainant before, during, or after the incident," Judge Hanshaft found Plaintiff guilty of attempted forcible touching and sexual abuse in the third degree and imposed a sentence of one year probation and counseling, and submission of his DNA.

On appeal, the New York Supreme Court, Appellate Division, First Department ("Appellate Division"), affirmed Plaintiff's conviction, and the New York Court of Appeals denied him leave to appeal. *See People v. Cathlin*, 76 Misc. 3d 137(A), 175 N.Y.S.3d 408 (Table) (1st Dep't Oct. 12, 2022), *lv denied*, 39 N.Y.3d 1077 (Feb. 21, 2023). The Appellate Division determine that there was no basis for disturbing the trial court's acceptance of the victim's account of the incident and rejection of Plaintiff's testimony, that the verdict was not against the weight of evidence, that any errors in admission of statements were harmless, and that Plaintiff was not entitled to a jury trial. *See People v. Cathlin*, 76 Misc. 3d 137(A), at *1-2.

In the complaint, Plaintiff reiterates many of the same grounds for relief from the direct appeal of his conviction. He refers to the victim's shifting accounts of the events and asserts that she "fabricated the story about [his] hand under her dress because of embarrassment, from thinking a rat was on her leg, and for whatever unknown reason, thought [he had] laughed at her reaction to this mistake." (ECF 1, at 11.) Plaintiff also challenges aspects of his arrest, including the arresting officer's failure to use his body camera "for the purpose of supporting the truth" or to verify the victim's account of the events the same day. (*Id.* at 12.) Plaintiff further asserts that Judge Hanshaft failed to address prosecutorial misconduct, made favorable rulings for the prosecution, and convicted him of the charges despite "discrepancies of unreliable, inconsistent testimonies." (*Id.* at 13.)

## DISCUSSION

Plaintiff brings this action seeking to vacate his state court conviction, seal his DNA results, and money damages for alleged violations of his rights in the criminal proceedings before the Criminal Court of the City of New York, New York County. Because Plaintiff is not in custody – and thus has no remedy available through *habeas* relief – the Court construes the complaint as asserting claims of constitutional violations under 42 U.S.C. § 1983.[2] *See Huang v. Johnson*, 251 F.3d 65, 74 (2d Cir. 2001) (noting Justice Souter's language in a concurrence that stated that " 'a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy' " (quoting *Spencer v. Kemna*, 523

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 32 of 108

Cathlin v. City of New York, Not Reported in Fed. Supp. (2023)

U.S. 1, 21 (1998) (Souter, J., concurring))). Section 1983 allows an individual to bring suit against persons who, acting under color of state law, have caused him to be depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws of the United States." [3] 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988). For the reasons set forth below, however, the Court must dismiss this action.

## A. Challenge to Conviction

**\*3** The *Rooker-Feldman* doctrine "established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Sung Cho v. City of New York*, 910 F.3d 639, 644 (2d Cir. 2018) (citation omitted). Because "federal district courts are granted original – and not appellate – jurisdiction, cases that function as de facto appeals of state-court judgments are therefore jurisdictionally barred." *Id.* Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where the plaintiff seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) ("[The *Rooker-Feldman* doctrine] bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court [of the United States] is the only federal court with jurisdiction over such cases." (citing 28 U.S.C. § 1257)); *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) ("The [*Rooker-Feldman*] doctrine reflects the principle set forth in 28 U.S.C. § 1257 that the Supreme Court [of the United States] is the only federal court that has jurisdiction to review state court judgments, unless otherwise provided by Congress, *see, e.g.*, 28 U.S.C. § 2254 (habeas corpus review)." (citation omitted)).

District court review of claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a final state court order or judgment; (3) the plaintiff invites district court review and rejection of the final state court order or judgment; and (4) the final state court order or judgment was rendered before the district court proceedings commenced. *Dorce*, 2 F.4th at 101 (internal quotation marks and citation omitted).

The *Rooker-Feldman* doctrine applies where a plaintiff seeks relief that invites a federal district court to reject or overturn a final decision of a state court as to a conviction. *See Teichmann v. New York*, 769 F.3d 821, 826 (2d Cir. 2014) (dismissal of Section 1983 claims warranted under *Rooker-Feldman* where a plaintiff "seeks nothing more than a review of a state court judgment"); *Moalawi v. James*, No. 22-CV-6770, 2023 WL 4817618, at \*2 (S.D.N.Y. July 27, 2023) (finding that *Rooker-Feldman* bars Plaintiff's challenge to state-court conviction under Section 1983); *Mitchell v. New York State*, No. 22-CV-1747, 2023 WL 2734823, at \*4 (E.D.N.Y. Mar. 31, 2023) (dismissing under the *Rooker-Feldman* doctrine, Section 1983 action that "necessarily invites the Court to review the judgment of [the plaintiff's state court criminal] conviction"); *Molina v. James*, No. 21-CV-3144, 2022 WL 813815, at \*5 (E.D.N.Y. Mar. 17, 2022) (dismissing under the *Rooker-Feldman* doctrine, plaintiff's request for an injunction to dismiss his criminal conviction); *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 705-06 (S.D.N.Y. 2011) (finding no subject-matter jurisdiction under *Rooker-Feldman*, where plaintiff requested to "void ... conviction entered by ... state courts").

Here, Plaintiff's claims are barred under the *Rooker-Feldman* doctrine. Plaintiff, who was convicted in state court before bringing this action, complains that his constitutional rights were violated in his 2019 criminal proceedings. In other words, he challenges the validity of his state court conviction and invites the Court to review the judgment of conviction. The *Rooker-Feldman* doctrine bars this Court from reviewing such challenges. The Court therefore dismisses Plaintiff's challenge to his state court conviction, under the *Rooker-Feldman* doctrine, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Exxon Mobil Corp.*, 544 U.S. at 291.

## B. Remaining Section 1983 Claims

Plaintiff brings this action ostensibly challenging his conviction and the submission of his DNA on the ground that he was denied his right to a jury trial in violation of the Equal Protection Clause of the Fourteenth Amendment and the New York State Constitution. (*See* ECF 1, at 2.) However, Plaintiff names as defendants the City of New York, prosecutors from the Manhattan

Cathlin v. City of New York, Not Reported in Fed. Supp. (2023)

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 33 of 108

DA's Office, and the officers involved in his arrest. It therefore appears that as well as challenging the validity of his conviction, Plaintiff is also bringing Section 1983 claims against these defendants arising out of his arrest and prosecution.

### 1. Statute of limitations

**\*4** Plaintiff's claims arising from his arrest and prosecution may be time-barred. The statute of limitations for Section 1983 claims is found in the "general or residual [state] statute [of limitations] for personal injury actions." *Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure,* 488 U.S. 235, 249-50 (1989)). In New York, that period is three years. *See* N.Y. C.P.L.R. § 214(5). Section 1983 claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *Hogan v. Fischer,* 738 F.3d 509, 518 (2d Cir. 2013). A false arrest claim under Section 1983 accrues, for example, when the false arrest ends, that is, once the arrestee "becomes held pursuant to legal process – when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace v. Kato,* 549 U.S. 384, 389 (2007); *Jaegly v. Couch,* 439 F.3d 149, 154 (2d Cir. 2006) ("A cause of action for false arrest accrues at the time of detention.").

Plaintiff was arrested on June 11, 2019, and was convicted on November 25, 2019. Plaintiff therefore had until some point between June 2022 and November 2022 to file a timely action asserting claims arising from his arrest and prosecution. Plaintiff's complaint, however, was filed on May 21, 2023, almost six months beyond the expiration of the three-year limitations period.

Because the failure to file an action within the limitations period is an affirmative defense, a plaintiff is generally not required to plead that the case is timely filed. *See Abbas,* 480 F.3d at 640. Dismissal is appropriate, however, where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading. *See Walters v. Indus. and Commercial Bank of China, Ltd.,* 651 F.3d 280, 293 (2d Cir. 2011); *see also Pino v. Ryan,* 49 F.3d 51, 53 (2d Cir. 1995) (affirming *sua sponte* dismissal under 28 U.S.C. § 1915(d) on statute of limitations grounds). A district court should grant notice and opportunity to be heard, however, before dismissing a complaint *sua sponte* on statute of limitations grounds. *Abbas,* 480 F.3d at 640.

To the extent Plaintiff is seeking to bring claims arising out of his arrest and prosecution, his claims were filed beyond the expiration of the applicable statute of limitations. Normally, the Court would grant him leave to plead any facts showing that equitable tolling applies but, as discussed below, Plaintiff fails to state any claim for relief, and therefore, it is appropriate to dismiss his untimely claims.

### 2. Claims against the City of New York

When a plaintiff sues a municipality, such as the City of New York, under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a claim under Section 1983 against a municipality, the plaintiff must allege facts showing: (1) the existence of a municipal policy, custom, or practice; and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven,* 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted).

**\*5** Plaintiff does not allege any facts showing that a policy, custom, or practice of the City of New York caused a violation of his federal constitutional or statutory rights. The Court therefore dismisses any claims Plaintiff may be asserting under Section 1983 against the City of New York for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

### 3. Claims against Awad and Byrns

Cathlin v. City of New York, Not Reported in Fed. Supp. (2023)

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 34 of 108

Plaintiff claims for damages under Section 1983 against Defendants Christina Awad and Catherine Byrns arising from his criminal prosecution must also be dismissed. Prosecutors are immune from civil suits for damages for acts committed within the scope of their official duties where the challenged activities are not investigative in nature but, rather, are " 'intimately associated with the judicial phase of the criminal process.' " *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (absolute immunity is analyzed under a "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it" (internal quotation marks and citations omitted)). In addition, prosecutors are absolutely immune from suit for acts that may be administrative obligations but are "directly connected with the conduct of a trial." *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009); *see also Ogunkoya v. Monaghan*, 913 F.3d 64, 70-72 (2d Cir. 2019) (holding that ADAs' direction as to where criminal defendant would be arraigned was in preparation for a court proceeding in which the prosecutors were acting as advocates, and ADAs were therefore shielded by absolute immunity (citing, *inter alia, Van de Kamp*)).

Here, Plaintiff does not allege what Defendants Awad and Byrns did to violate his rights. However, the Court understands Plaintiff's claims against these defendants to be based on actions within the scope of their official duties within the Manhattan DA's Office and associated with the conduct of a trial. Therefore, Plaintiff's claims against these defendants are dismissed because he seek monetary relief against defendants who are immune from such relief, 28 U.S.C. § 1915A(b)(2), and, consequently, as frivolous, 28 U.S.C. § 1915A(b)(1). *See Collazo v. Pagano*, 656 F. 3d 131, 134 (2d Cir. 2011) (holding that a claim against a prosecutor is frivolous if it arises from conduct that is "intimately associated with the judicial phase of the criminal process").

## C. Claims against Smith and Miceli

Plaintiff also names Officers Smith and Miceli, who appear to be the arresting officers, as defendants in this action. To state a claim under Section 1983, a plaintiff must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)). A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official[.]" *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

**\*6** Plaintiff does not allege any facts showing how Officers Smith or Miceli were personally involved in the events underlying his claims. Plaintiff's claims against these defendants are therefore dismissed for failure to state a claim on which relief may be granted. [4] *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## D. Claims under State Law

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state-law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.' " (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

## E. Leave to Amend Denied

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 35 of 108

Cathlin v. City of New York, Not Reported in Fed. Supp. (2023)

**\*7**  District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

## CONCLUSION

The Court dismisses Plaintiff's challenge to his conviction under the *Rooker-Feldman* doctrine, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). The Court also dismisses Plaintiff's remaining claims under 28 U.S.C. § 1915(e)(2) (B)(ii), (iii). All other pending matters in this action are terminated.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 6929187

---

## Footnotes

1    The Court quotes Plaintiff's complaint and other submissions verbatim. All spelling, grammar, and punctuation are as in the original unless otherwise indicated.

2    Generally, a civil action is not the appropriate vehicle to seek expungement of a criminal conviction. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (noting that a writ of *habeas corpus* is the sole remedy for a prisoner seeking to challenge the fact or duration of his confinement); *see also Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) ("[I]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of *habeas corpus*[.]"). However, the favorable termination rule stated in *Heck* does not bar Section 1983 claims when *habeas* relief is unavailable. *See Huang v. Johnson*, 251 F.3d 65, 74 (2d Cir. 2001); *see also Heck*, 512 U.S. at 500 ("[State prisoners] not 'in custody' cannot invoke federal *habeas* jurisdiction, the only statutory mechanism besides § 1983 by which individuals may sue state officials in federal court for violating federal rights.").

3    To state a Section 1983 claim, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West*, 487 U.S. at 48-49.

4    The Court notes that Plaintiff does not allege any facts suggesting viable false arrest or malicious prosecution claims. To state a claim for false arrest and imprisonment under New York law, a plaintiff must show that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012). An arrest is privileged if it is based on probable cause. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d

Cir. 2007). Officers have probable cause to arrest when they "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (emphasis and citation omitted). Plaintiff does not allege facts indicating that the police officers who arrested him for forcible touching and sexual abuse lacked probable cause or otherwise acted unreasonably or in the absence of good faith when they arrested him.

Any malicious prosecution claim Plaintiff is asserting is also deficient. To state a claim for malicious prosecution, a plaintiff must allege facts showing: (1) that the defendant initiated or continued a prosecution against the plaintiff; (2) that the defendant lacked probable cause to commence the proceeding or believe the proceeding could succeed; (3) that the defendant acted with malice; and (4) that the prosecution was terminated in the plaintiff's favor. *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002). Thus, because favorable termination is an element of a malicious prosecution claim, a plaintiff who has been convicted and seeks to recover damages under Section 1983 for malicious prosecution must show that his conviction terminated in his favor by alleging that the conviction or sentence has been reversed on direct appeal, expunged by executive order, invalidated by a state tribunal authorized to make such determinations, or otherwise called into question by a federal court's issuance of a writ of *habeas corpus. See Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (holding that Section 1983 actions are "barred (absent prior invalidation) ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration" (italics in original) (citing *Heck*, 512 U.S. at 486-87)). Because Plaintiff does not allege facts suggesting that his conviction has been overturned or otherwise invalidated, he cannot state a viable malicious prosecution claim for damages and equitable relief.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4870495

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,

v.

Honorable Michael W. SMRTIC, et al. Defendants.

No. 1:24-CV-00847 (MAD/CFH)

|

Signed November 21, 2024

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

### REPORT-RECOMMENDATION & ORDER

CHRISTIAN F. HUMMEL, United States Magistrate Judge

#### I. In Forma Pauperis

**\*1** Plaintiff pro se Matthew H. Cole ("plaintiff") commenced this action (No. 1:24-CV-00623) on May 6, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). On September 26, 2024, plaintiff submitted what the Court construes to be a supplement to the complaint.[1] See Dkt. No. 7. In lieu of paying this Court's filing fees, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP.[2] Thus, the Court proceeds to its review of the complaint pursuant to 28 U.S.C. § 1915. Plaintiff has also submitted for the Court's review a Pro Se Application for Permission to File Electronically and a Motion to Appoint Counsel. See Dkt. Nos. 4, 5.

#### II. Initial Review

##### A. Legal Standards

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). As the Second Circuit stated,

> There are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they

"suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

**\*2**  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at \*2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Pleading guidelines are provided in the Federal Rules of Civil Procedure. Specifically, Rule 8 requires the pleading to include:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought...

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Further, Fed. R. Civ. P. 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

**\*3**  This Court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999)[3] (quoting Livingston v. Adirondack

Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.").

## B. Complaint

Plaintiff's civil cover sheet indicates that he seeks to bring this action pursuant to "Title U.S.C. 18 Section 241, Conspiracy Against Rights & Title U.S.C. 18 Section 242 Deprivation of rights Under Color of Law." Dkt. No. 1-1 at 1. The civil cover sheet further provides that his cause of action involves, "Violation of Due process, Speedy Trial Rights, Ineffective Assistance of Counsel. I feel I am being targeted for being black and gay." Id.

Plaintiff's form complaint checks the box indicating that he seeks to bring this case pursuant to 42 U.S.C. § 1983. See Compl. at 3. In response to the question in the form complaint asking in "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," plaintiff responds, "Due Process, 30.30 Speedy Trial Violation, Ineffective Assistance of counsel." [4] Id. In response to a question asking him to explain "how each defendant acted under color of state or local law," plaintiff states "Each judge deliberately denied me due process, and refused to look into the paperwork to see that i was improperly denied my speedy trial rights. It was a tean [sic] effort. The ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me. All mentioned actions were done and upheld even after I showed federal law with supportive case law as a pro se litigant." Id.

Plaintiff provides that his "case is still on appeakl [sic] in Appellate Court Third Department. I feel they are guilty, or part of what I call a scandal. I went to them from the very start with a complaint to the grievance committee, where they denied any wrongdoing. It must be ok to violate Constitutional rights there. This is from March 2019 to present" Id.

In response to a question that asks plaintiff to state the facts underlying his claims, plaintiff states, "Please see attached Article 78 that is attached. It was dismissed being in the wrong court, but is on point." Id. at 4. Plaintiff did not provide the Court with any such attachment and has not submitted any Article 78 materials. See Compl., Dkt. No. 7.

In response to the form complaint's question asking about any injuries suffered as a result of the conduct he complains of, plaintiff states, "Sever [sic] depression over 20 years, irreperable [sic] harm, defamation of charcter [sic] by arguments not legally allowed to give. Loss of income, inability to gain and keep employment, mental trauma, instilled disbelief in justice in the legal system, familial traumam [sic] due to my legal battles." Id. Indicating the relief sought, plaintiff states

> **\*4** Petitioner seeks reinstatement of driving priveldges [sic], and 10 million dollars for damages caused by conflict of interest, deliberate violation of Due Process, Speedy Trial rights, Ineffective assistance of counsel, malice, Brady Violation, Petitioner claims deliberate misconduct and malice in Montgomery County Court, the Saratoga Disrict Attorney's Office, and the Supreme Court Appellate Division Third department. \*\* This is subject to change if an attorney agrees to represent.

Compl. at 5. Although he typed his name, plaintiff does not sign the complaint where a signature is indicated. See id. at 8.

Plaintiff provides in his supplement that he "removed this action to district court asserting jurisdiction pursuant to 42 U.S.C. 1983, and § 1441." Dkt. No. 7. at 1. Plaintiff states that he removed this case from Montgomery County Supreme Court. See id. He states that he seeks or sought the removal because he was told he was "not guarantee counsel" at the state, but that "[i]n Federal Court, there is that option, pending qualification, and I am told, if a lawyer agrees to take it, then I really have something. I am in dire need of counsel." Id.

Plaintiff states, "[t]he ineffective assistance of counsel and The County Court are a matter already mentioned in the appeal." Dkt. No. 7 at 2. Plaintiff states that "[t]o get my conviction, I allege judicial and prosecutorial misconduct, and ineffective assistance of counsel × 4. That is why I am pro se. I had to protect myself when appointed counsel did not. It also went through a couple judges which is why they are mentioned in the preliminary complaint/paperwork, and why I mention bias." Id. Plaintiff states he can "prove each thing I saw not just with my words, but with transcripts [5] from the County Court, and the Adult Drug Court." Id. Plaintiff refers to being drug free for four and a half years and having academic success in college. Id. at 3. He states that he wishes this Court to hear his case because he believes he will not "see bias" in federal court "like I saw in others." Id. Plaintiff states that he "also put in a Notice of Removal in the Federal Court for those criminal charges that led to the Complaint. I do not trust the assigned appellate attorney. That case too has Constitutional violations. That case number is 1:24-CR-301 (AMN)." Id.

## C. Discussion [6]

### 1. Rule 8

As a threshold issue, plaintiff's complaint fails to meet the requirements of Rule 8. See FED. R. CIV. P. 8(a)(2). He does not provide a short and plain statement of the claim demonstrating why he is entitled to relief. Although he makes general references to both an Article 78 proceeding and a criminal proceeding and unexplained references to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel," he does not provide factual support or context. Thus, his complaint does not provide "fair notice" to defendants of the claims against them. See FED. R. CIV. P. 8(a)(2).

### 2. Heck v. Humphrey

However, there are several substantive concerns that further lead the undersigned to recommend dismissal. First, in referencing to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel" and explicitly referencing a criminal conviction, it is clear that plaintiff is attempting to seek some kind of review of a criminal proceeding or conviction. See Compl. at 3. Plaintiff also accuses all named judges of denying him due process and contends that an unnamed "ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me." Compl. at 4. Plaintiff also references a conviction. See Dkt. No. 7 at 4. Such claims would be barred by Heck v. Humphrey.

**\*5** As this Court, citing the District of Connecticut, has set forth:

In Heck, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in original).

[ ]

Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Ali v. Shattuck, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at *3 (N.D.N.Y. May 29, 2024), report-recommendation adopted sub nom. Ali v. Dow, No. 8:24-CV-128, 2024 WL 3460745 (N.D.N.Y. July 18, 2024) (quoting Zografidis v. Richards,

No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at *7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)).

Plaintiff has failed to demonstrate that any criminal charge(s), conviction, or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Zografidis, 2022 WL 21756775, at *7. Although plaintiff's complaint wants for detail, the undersigned can clearly determine that plaintiff seeks review of his criminal proceedings, conviction, and/or sentence. The claims plaintiff seeks to pursue relate to allegations that he was denied due process, denied speedy trial rights, and experienced ineffective assistance of counsel. Accordingly, plaintiff's claims are barred by Heck unless and until he can demonstrate favorable termination of his criminal conviction. [7]

### 3. Immunities

Plaintiff names as defendants several defendants who are immune from suit. Insofar as plaintiff names Hon. Michael W. Smrtic, Interim Montgomery County Judge and Tatiana N. Coffinger, "County/Family/Surrogate's Court Judge" [8] such claims would be barred by judicial immunity.

**\*6** "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 1, 2017) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.' " Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Id. (citation omitted); see Positano v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Zavalidroga, 2017 WL 8777370, at *8 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " Id. (quoting Mireles, 502 U.S. at 11-12). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.' " Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Ceparano, 404 F. App'x at 539 (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he " 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.' " Ceparano, 404 F. App'x at 539 (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (quoting Mireles, 502 U.S. at 11).

Thus, as plaintiff names the judicial defendants in relation to actions or omissions that they took in their roles as judges, their actions are protected by absolute judicial immunity. To the extent plaintiff names Hon. Felix Catena, "Retired Administrative Law Judge," Judge Catena is also protected by absolute judicial immunity as a judge's retirement, "does not impact [his or] her immunity for acts taken in [his or] her official capacity before her retirement." McCray v. Lewis, No. 16-CV-3855 (WFK/VMS), 2016 WL 4579081, at *2 (E.D.N.Y. Aug. 31, 2016). To the extent plaintiff may seek to sue the judges their official

capacities, the suit is barred by the Eleventh Amendment. See Pacherille v. Burns, 30 F. Supp. 3d 159, 163 n.5 (N.D.N.Y. 2014) ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").

**\*7** In addition, plaintiff also references, exclusively in his "relief" section of the form complaint, "the Supreme Court Appellate Division, Third Department" when stating that he experienced "deliberate misconduct and malice." Compl. at 7. He does not name this Court as a defendant anywhere in the complaint. However, even if plaintiff were to have named the Appellate Division, Third Department as a defendant, such defendant would also need to be dismissed based on Eleventh Amendment immunity as the Appellate Division "is merely an agency or arm of New York State." Benyi v. New York, No. 3:20-CV-1463 (DNH/ ML), 2021 WL 1406649, at \*5 (N.D.N.Y. Mar. 23, 2021), report and recommendation adopted, No. 3:20-CV-1463, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citation omitted). Accordingly, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division as a defendant, such claims are barred by Eleventh Amendment immunity. See Compl.

Finally, insofar as plaintiff seeks to sue Prosecutor Samuel V. Maxwell, Esq., Assistant District Attorney, in addition to the Heck issues noted above, he would be protected by absolute prosecutorial immunity. As this Court has recently reiterated,

> Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " Barr v. Abrams, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011) (citing Kalina v. Fletcher, 522 U.S. 118, 127 (1997)).

> Accordingly, absolute immunity extends to functions such as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013) (citing Imbler, 424 U.S. at 431 n.33); see also Flagler, 663 F.3d at 547 (explaining, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).

Williams v. Atkins, No. 5:24-CV-0573 (DNH/TWD), 2024 WL 3649849, at \*5 (N.D.N.Y. June 11, 2024), report and recommendation adopted, No. 5:24-CV-573, 2024 WL 3548760 (N.D.N.Y. July 26, 2024).

Plaintiff appears to suggest that Mr. Maxwell "withheld potentially exculpatory material" that was used against him. Compl. at 4. Beyond the Heck barriers already discussed, even if plaintiff could amend to provide greater detail, absolute immunity would extent to even this alleged misconduct as such allegations clearly fall within the scope of prosecutorial immunity. Accordingly, it is recommended that any claims against ADA Samuel V. Maxwell be dismissed for absolute prosecutorial immunity. "Furthermore, because the District Attorney's prosecutorial immunity is substantive and not something that can be corrected by a better pleading, I recommend that the dismissal be with prejudice." Phillips v. New York, No. 5:13-CV-927, 2013 WL 5703629, at \*5 (N.D.N.Y. Oct. 17, 2013) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 223 (2d Cir. 2000)). [9]

### III. Conclusion

**\*8** It is **ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's section 1983 claims against Honorable Michael W. Smrtic; Tatiana N. Coffinger, County/Family/Surrogate's Court Judge; and Felix Catena, Retired Administrative Law Judge (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** as follows: (1) claims brought against them in their personal/individual capacities for judicial immunity, and (2) claims brought against them in their official capacities for Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that plaintiff's section 1983 claims against Assistant District Attorney Samuel V. Maxwell (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division, Third Department, as a defendant (Dkt. Nos. 1, 7), such claims be **DISMISSED WITH PREJUDICE** as barred by Eleventh Amendment immunity, and it is

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically (dkt. no. 4) and motion to appoint counsel [10] (dkt. no. 5) be **DISMISSED AS MOOT** based on the above recommendations, and it is

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have
**FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [11]

**All Citations**

Slip Copy, 2024 WL 4870495

---

### Footnotes

1    The submission includes a letter addressed to District Judge D'Agostino, titled, "Requirements for Cases Removed From State Court," Dkt. No. 7; a receipt from Montgomery County Clerk dated December 8, 2022; and a "Notice of Claim" with the caption of Cole v. County of Montgomery, dated December 7, 2022. See Dkt. No. 7. The undersigned has reviewed this submission in connection with the initial review of plaintiff's complaint. See Sira v. Morton, 380 F. 3d 57, 67 (2d Cir. 2004).

2    Plaintiff is advised that, although he has been granted IFP status, he is still required to pay all fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

3    Any unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

4 Although plaintiff generally references ineffective assistance of counsel, Compl. at 4, he does not name any attorney who may have represented him. Any claims against the prosecutor would not be considered ineffective assistance of counsel because Mr. Maxwell, as the prosecutor, was not plaintiff's attorney.

5 Plaintiff did not provide any transcripts.

6 As a courtesy, the Court has provided plaintiff with copies of any unpublished cases cited within this Report-Recommendation & Order.

7 The undersigned recognizes that claims that are determined to be barred by <u>Heck</u> are dismissed without prejudice. However, the undersigned has recommended dismissal with prejudice because plaintiff has only named defendants who are immune from relief. Accordingly, the undersigned is recommending dismissal of the claims based on these immunities, rather than a <u>Heck</u> dismissal. The undersigned has included the <u>Heck</u> review for sake of completeness.

8 Although plaintiff provides no facts regarding any family court proceedings, that he named a family court judge and makes general reference to that he seeks review over actions taken by a family court judge. Even if plaintiff were to amend his complaint to provide facts about any possible family court proceedings and details about any alleged violations of his rights that he believes he faced in that Court, if plaintiff seeks this Court's review of an order of the family court, such review would be barred by <u>Rooker-Feldman</u>, and if plaintiff seeks this Court's review or intervention of a currently pending/ongoing Family Court proceeding, such review would be barred by <u>Younger</u>. See <u>Porter v. Nasci, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at \*4 (N.D.N.Y. Mar. 15, 2024)</u> (citations omitted), <u>report</u> and <u>recommendation</u> <u>adopted, 2024 WL 3158645 (N.D.N.Y. June 25, 2024)</u> ("Under the <u>Rooker-Feldman</u> doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."); <u>see also</u> <u>Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002)</u> ("[F]ederal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

9 Plaintiff appears to characterize his submissions as a purported removal to federal court or suggests that he seeks to remove his case from Montgomery County Court to this Court. See Dkt. No. 7 (citing <u>28 U.S.C. § 1441</u>). However, in addition to the infirmities mentioned above, plaintiff has not demonstrated that any proceeding related to this complaint has been properly removed to, or is subject to removal to, this Court. <u>See, e.g.</u>, <u>28 U.S.C. § 1446</u>. Indeed, plaintiff's submissions appear to indicate that plaintiff is the plaintiff in the County Court action. See <u>id. § 1446(a)</u>.

10 The undersigned also notes that plaintiff did not contend that he made any efforts to obtain counsel on his own, show proof of any attorneys he contacted. See <u>Terminate Control Corp v. Horowitz, 28 F.3d 1335 (2d Cir. 1994).</u> See Dkt. No. 5.

11 If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. <u>FED. R. CIV. P. 6(d)</u>. If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. <u>Id.</u> § 6(a)(1)(c).

---

**End of Document**      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:25-cv-00725-AMN-MJK   Document 13   Filed 07/22/25   Page 45 of 108

Coon v. Merola, Not Reported in Fed. Supp. (2019)

2019 WL 1981416

2019 WL 1981416
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Donald James COON, Plaintiff,

v.

Frank MEROLA, et al., Defendants.

1:19-CV-394 (DNH/ATB)
|
Signed 04/08/2019

**Attorneys and Law Firms**

Donald James Coon, Troy, NY, pro se.

**ORDER and REPORT-RECOMMENDATION**

Hon. Andrew T. Baxter, U.S. Magistrate Judge

**\*1** The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiff Donald James Coon, together with a motion to proceed in forma pauperis ("IFP"). (Dkt. Nos. 1, 2).

**I. In Forma Pauperis ("IFP") Application**
A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2). The court finds for purposes of this recommendation, that plaintiff meets the financial criteria for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 46 of 108
Coon v. Merola, Not Reported in Fed. Supp. (2019)
2019 WL 1981416

## II. Complaint

Although plaintiff's complaint is very conclusory, a liberal reading of the allegations contained therein show that plaintiff is attempting to allege that the Rensselaer County Clerk and his John/Jane Doe Deputy Clerks have violated plaintiff's constitutional rights in connection with a state court law suit that plaintiff has attempted to bring. (Complaint ("Compl.") *generally*) (Dkt. No. 1). In order to understand plaintiff's allegations in this action, the court must discuss another action filed by this plaintiff in 2016. In 2016, plaintiff filed a federal action in this court in which he named a variety of defendants, including Police Chief George Bell, the Villages of Cambridge and Greenwich, various district attorneys, Claverack Insurance Company, Glens Falls Hospital, Washington County Child Protective Services, and a police officer. *Coon v. Bell*, No. 1:16-CV-291 (TJM/DJS).

**\*2** After initial review of plaintiff's complaint in *Coon v. Bell*, Magistrate Judge Daniel Stewart found that plaintiff failed to state claims against the defendants and recommended that he be allowed to file an amended complaint in an effort to cure the deficiencies in the original. (Dkt. No. 8 in 16-CV-291). United States District Court Judge Thomas J. McAvoy adopted Magistrate Judge Stewart's recommendation on May 23, 2016. (Dkt. No. 11 in 16-CV-291). Plaintiff complied with the court's direction and filed an amended complaint on May 23, 2016. (Dkt. No. 12 in 16-CV-291).

Magistrate Judge Stewart conducted an initial review of the amended complaint and found that plaintiff failed to cure most of the deficiencies that were in the original. (Dkt. No. 13 in 16-CV-291). Magistrate Judge Stewart recommended dismissing most of the claims and most of the defendants from the action, while allowing a Fourth Amendment illegal search claim and Fourth Amendment excessive force claim to proceed against defendant Bell. [1] (Dkt. No. 13 in 16-CV-291). Magistrate Judge Stewart's recommendation was adopted by Judge McAvoy on November 2, 2016. (Dkt. No. 16 in 16-CV-291).

In Magistrate Judge Stewart's report and recommendation, he found that plaintiff's defamation claims against defendant Bell and his attempted contract claims against defendant Bell and Claverack Insurance Company were, at best, state law claims. [2] (Dkt. No. 13 in 16-CV-291 at 4). Plaintiff then states that he "filed said claims" in the Rensselaer County Supreme Court. (Compl. at 1). Plaintiff states that in 2017, Judge Andrew G. Ceresia granted plaintiff poor person status, but that when he went to the Rensselaer County Clerk's office, defendant Merola told plaintiff that Judge Ceresia's order was "no good and they wouldn't honor it." (Compl. at 2). Plaintiff states that he brought Judge Ceresia's order to the Clerk's office four more times, and "finally" on March 11, 2019, a clerk that plaintiff had never seen before stamped the Judge's order and kept a copy. (*Id.*)

Plaintiff alleges that he has been denied his "rightful benefits and access to the court." Plaintiff states that he even had "to choose between the suit or my housing," and that he was homeless from January 12, 2018 until April 24, 2018. (*Id.*) Plaintiff states that the Rensselaer County Supreme Court wrote plaintiff "2 times the County Clerk's staff made me pay for RJI motion I had already paid for. They told me to give letter [sic] to the Clerk and I would get my monies back." (*Id.*)

Plaintiff states that he is seeking "just compensation" for the Rensselaer County Clerks' actions who refused to recognize his "poor person status" from 2017 until 2019. Plaintiff states that he still has not "received anything" from the "grant[ed] status" because the Clerks refused to grant "my said status." (*Id.*) Plaintiff seeks substantial monetary relief. (*Id.*)

## III. Judicial Immunity

### A. Legal Standards

**\*3** With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991). Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Judicial immunity is immunity

Case 3:25-cv-00725-AMN-MJK   Document 13   Filed 07/22/25   Page 47 of 108

Coon v. Merola, Not Reported in Fed. Supp. (2019)

2019 WL 1981416

from suit, not just immunity from the assessment of damages. *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). The only two circumstances in which judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles,* 502 U.S. at 11-12.

Absolute immunity extends to court clerks who perform tasks " 'which are judicial in nature and an integral part of the judicial process.' " *Proctor v. Quinn,* No. 19-CV-833, 2019 WL 692935, at *2 (E.D.N.Y. Feb. 19, 2019) (quoting *Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir. 1997)). The court's " 'inherent power to control its docket is part of its function of resolving disputes between parties' and is thus 'a function for which judges and their supporting staff are afforded absolute immunity.' " *Id.* (quoting *Rodriguez,* 116 F.3d at 66); and citing *Pikulin v. Gonzalez,* No. 07-CV-0412 (CBA), 2007 WL 1063353, at *2 (E.D.N.Y. Apr. 5, 2007) (finding that absolute judicial immunity extends to "the Clerk's Office activities of filing and docketing legal documents"). However, a court clerk may not be entitled to absolute immunity where the clerk's refusal to accept the papers of a litigant seeking to commence an action results in the deprivation of the individual's constitutional rights. *Glass v. New York Supreme Court Appellate Division,* No. 1:17-CV-226, 2017 WL 9487181, at *3 (N.D.N.Y. Apr. 26, 2017) (citations omitted).

In determining whether the clerk's conduct in a particular case is "judicial" in nature, the court takes a "functional approach" and allows the defendant absolute immunity when the clerk is performing a "discretionary act, or performing a duty that inherently relates to resolving a dispute." *Vance v. State of New York Dep't of Corrections,* No. 9:18-CV-748, 2018 WL 6047828, at *10 (N.D.N.Y. Nov. 19, 2018) (quoting *Dzwonczyk v. Suddaby,* No. 10-CV-0300, 2010 WL 1704722, at *6 (N.D.N.Y. Apr. 28, 2010) (citing *Rodriguez,* 116 F.3d at 67) (internal quotation marks omitted)).

### B. Application

Plaintiff's statements in this case are conclusory and essentially, he is suing the "clerks" because they would not file his poor person status order between 2017 and 2019. At best, he alleges a delay in granting him poor person status because it appears that a clerk finally took and filed plaintiff's order, and at the end of his complaint, plaintiff alleges that he "still" has not "received a thing or any help from ***the granted [sic] status***." (Compl. at 2) (emphasis added). It is unclear what plaintiff believes he should have "received" or to what "help" he thinks he is entitled from the clerks beyond filing his order.

It is also unclear how plaintiff alleges that he was denied "access to courts" because he states that he filed his state law claims in the Rensselaer County Supreme Court. (Compl. at 1). However, he claims he was denied his "rightful benefits," and that somehow the clerk's actions in delaying the filing of his poor person order were related to his homelessness between January 12, 2018 and April 24, 2018. Plaintiff claims that he had to choose between "the suit" or his housing, but he does not explain why this is true or why this would be a denial of his constitutional rights. Plaintiff also states that the clerks made plaintiff pay for his RJI "motion," but that he was told that if he wrote a letter, he would get his money back.

**\*4** As it is written, plaintiff's complaint is too conclusory to state a claim against any of the clerks in this action, whether named or unnamed, [3] and the court will recommend dismissal.

### IV. Opportunity to Amend

#### A. Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte,* the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993).

#### B. Application

In this case, the court will recommend dismissal without prejudice, even though the court has serious doubts that plaintiff will be able to amend his complaint to state a claim. However, because there are situations in which a clerk would not be entitled to

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 48 of 108
Coon v. Merola, Not Reported in Fed. Supp. (2019)
2019 WL 1981416

absolute immunity, and plaintiff in this case has failed to include enough facts for the court to make an accurate determination, the court will recommend dismissal without prejudice to plaintiff submitting an amended complaint.

If the court adopts this recommendation, and plaintiff is afforded the opportunity to amend, he should be afforded forty-five (45) days from the date of the order adopting this court's recommendation. Plaintiff should also be advised that if he files an amended complaint, it must be a complete pleading which must supercede the original and may not incorporate any facts from the original by reference.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) be **GRANTED for purposes of filing**, and it is further

**RECOMMENDED**, that the complaint be **DISMISSED** based on quasi-judicial immunity and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii) **WITHOUT PREJUDICE** to plaintiff filing an amended complaint, and it is

**RECOMMENDED**, that if the District Court adopts this recommendation, plaintiff be directed to file his amended complaint or ask for an extension of time to do so within **FORTY-FIVE (45) DAYS** from the date of the District Court's order adopting the recommendation, and it is

**RECOMMENDED**, that if plaintiff files an amended complaint within the appropriate time, the court return the proposed amended complaint to me for initial review, and it is

**RECOMMENDED**, that if the court adopts this recommendation, and plaintiff fails to file an amended complaint or ask for an extension of time to do so at the expiration of the forty-five (45) days, the complaint be dismissed with prejudice and the case closed, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1981416

---

## Footnotes

1    Defendant Bell has since passed away, and his estate's representative has been substituted as a party. (Dkt. Nos. 52, 71). Another defendant was joined to 16-CV-291, and there have been various other proceedings in that case, but those details are not relevant to this action.

2    Although plaintiff states in this action that Magistrate Judge Stewart told plaintiff that the contract and defamation claims "needed to be refiled in Supreme Court," that is not exactly what Magistrate Judge Stewart said. His exact words were that "[l]iberally construed, plaintiff *might* be attempting to make state law defamation and intentional interference with a

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 49 of 108

Coon v. Merola, Not Reported in Fed. Supp. (2019)

2019 WL 1981416

contract claims. *Again, however, Plaintiff's vague and conclusory allegations fail to plausibly state such claims.*" (Dkt. No. 13 in 16-CV-291 at 4) (emphasis added). The court merely notes this for the record. Magistrate Judge Stewart's dismissal and his language are not relevant to the findings herein.

3    Finally, the court must note that the United States Marshal would not be able to effect service of process on a "John or Jane Doe" defendant. In order for plaintiff to pursue his claims against John Doe defendants, he would ultimately be required to ascertain their identity. *LaPoint v. Vasiloff*, No. 5:15-CV-185, 2015 WL 1524437, at \*4 (N.D.N.Y. Apr. 2, 2015).

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)

2020 WL 1904088

⚑ KeyCite Yellow Flag

Declined to Extend by  Broadwater v. County of Onondaga,  N.D.N.Y.,  March 11, 2024

2020 WL 1904088
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael JOYNER, Plaintiff,

v.

COUNTY OF CAYUGA; Cayuga County Sheriff's Department; City of Auburn; Shawn I. Butler, Chief of
Auburn Police Department, as an Individual and in his official capacity; Cayuga County District Attorney's
Office; Jon E. Budelmann, as an Individual and in his capacity as District Attorney for Cayuga County;
and Anthony Spinelli, as an Individual and in his capacity as an Auburn City Police Officer, Defendants.

5:20-CV-60 (MAD/TWD)
|
Signed 04/17/2020

**Attorneys and Law Firms**

OF COUNSEL: JARROD W. SMITH, ESQ., OFFICE OF JARROD W. SMITH, 11 South Main Street, P.O. Box 173, Jordan,
New York 13080, Attorneys for Plaintiff.

OF COUNSEL: JEFFREY R. PARRY, ESQ., OFFICE OF JEFFREY R. PARRY, 7030 East Genesee Street, Fayetteville, New
York 13066, Attorneys for Plaintiff.

OF COUNSEL: FRANK W. MILLER, ESQ., GIANCARLO FACCIPONTE, ESQ., OFFICE OF FRANK W. MILLER, 6575
Kirkville Road, East Syracuse, New York 13057, Attorneys for Defendants.

## MEMORANDUM-DECISION AND ORDER

Mae A. D'Agostino, U.S. District Judge:

### I. INTRODUCTION

**\*1** On or about February 18, 2020, Plaintiff filed a complaint against Defendants City of Auburn, Shawn L. Butler, County of
Cayuga, Cayuga County District Attorney's Office, Jon E. Budelmann, and Anthony Spinelli, asserting eight claims pursuant
to 42 U.S.C. §§ 1983 and 1988, and state law. See Dkt. No. 5. Specifically, Plaintiff's complaint alleges the following causes of
action: (1) false arrest under the Fourth and Fourteenth Amendments; (2) malicious prosecution under the Fourth and Fourteenth
Amendments; (3) negligent failure to train or supervise; (4) state law false arrest; (5) state law false imprisonment; (6) intentional
and negligent infliction of emotional distress under New York State law; (7) negligence; and (8) deliberate indifference to
medical care under the Eighth Amendment. See Dkt. No. 5 at ¶¶ 40-114. Currently before the Court is Defendants' motion to
dismiss the complaint in its entirety. See Dkt. No. 9.

### II. BACKGROUND

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)

2020 WL 1904088

According to the complaint, on August 10, 2018, Plaintiff was the passenger in a vehicle that was driven by 140 Wall Street, allegedly in violation of an order of protection for Linda Fitzsimmons and Lee Joyner, who both reside at that address. *See* Dkt. No. 5 at ¶¶ 24-25. Plaintiff resides at 145 Wall Street, several houses down from 140 Wall Street, on the opposite side of the street. *See id.* at ¶ 25. Plaintiff was not the driver of the vehicle and had no control over how the driver was delivering him to his home. *See id.*

On August 13, 2018, Plaintiff was arraigned on two felony complaints charging him with two counts of Criminal Contempt in the First Degree based on the alleged violation of the order of protection. *See id.* at ¶ 22. At the conclusion of his arraignment, Plaintiff was remanded to the Cayuga County Jail. *See id.* Plaintiff claims that "Defendant police officer lacked the requisite requirement of having probable cause to arrest the Plaintiff; and did falsely arrest and imprison the Plaintiff." *Id.* at ¶ 23.

On October 4, 2018, Defendant Jon E. Budelmann, in his capacity as Cayuga County District Attorney, presented Plaintiff's charges to a grand jury, which "No Billed" the case. *See id.* at ¶ 26. At this point, Plaintiff was released from custody. *See id.*

During the fifty-three days during which Plaintiff "was being illegally imprisoned," he slipped and fell at the Cayuga County Jail. *See id.* at ¶ 31. According to Plaintiff, on August 31, 2018, a water pipe burst at the Cayuga County Jail near Plaintiff's cell while he was already locked in for the night and sleeping. *See id.* at ¶ 32. Plaintiff was woken by a bursting water pipe that was turned off by a Cayuga County Correctional officer. *See id.* at ¶ 33. "The first burst of the water pipe [occurred] when the Cayuga County Correctional officer shut the water off" between "12:00 midnight and 2:00 a.m." *Id.* at ¶ 34. "Plaintiff was woken by a bursting water pipe; and observed and heard that the correctional officer was going to turn off the water and clean up the water spill. At that time, there was no water in Plaintiff's cell." *Id.*

**\*2** Unbeknownst to Plaintiff, water from the burst pipe went underneath his locked cell door "and flooded his room while he was in bed and asleep." *Id.* at ¶ 35. "At around 6:30 am-7:00 am, Plaintiff got out of his bed to use the toilet in his cell. Plaintiff slipped and fell on the wet floor of his cell. The water on the floor was all near the toilet in his cell. There was a huge puddle of water between Plaintiff's bunk and the toilet in his cell." *Id.* at ¶ 36. Plaintiff claims that he slipped and fell, hitting his head and neck on his bunk, and his lower back on the floor, causing severe injuries. *See id.* at ¶ 37. At the time that Plaintiff had fallen and injured himself, a second water leak had occurred in the pod in which he was being held. *See id.* at ¶ 38. Plaintiff claims that, as a result of the fall, he suffered a herniated disc in his neck and a lower lumbar strain. *See id.* at ¶ 39. Plaintiff also claims that he suffers from numbing of his toes and finger tips. *See id.*

### III. DISCUSSION

**A. Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w]' that the pleader is entitled to relief[,]' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.*

Case 3:25-cv-00725-AMN-MJK   Document 13   Filed 07/22/25   Page 52 of 108
Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)
2020 WL 1904088

at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

## B. Documents Considered in Deciding Motion to Dismiss

In their reply to the motion to dismiss, Defendants submitted several documents in further support of their motion. *See* Dkt. No. 16-1. These documents include (1) the August 10, 2018 criminal complaint charging Plaintiff with Criminal Contempt in the First Degree, (2) the order of protection that Plaintiff allegedly violated, (3) the affidavit of Linda Fitzsimmons that formed the basis for Defendant's underlying criminal charge, and (4) the incident narrative report of Defendant Spinelli dated August 15, 2018 relating to the criminal complaint filed against Plaintiff. *See id.* at 1-6.

 **\*3** In deciding a motion to dismiss for failure to state a claim, the court considers the complaint, materials incorporated into the complaint by reference, materials integral to the complaint, and facts that are capable of judicial notice. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

In the present matter, the Court finds that these documents are not properly considered at the motion to dismiss stage. The Court acknowledges that there are cases in which courts have considered similar police records at the pleading stage. *See Betts v. Shearman*, No. 12-cv-3195, 2013 WL 311124, \*3 (S.D.N.Y. Jan. 24, 2013) (considering incident report and accusatory instrument that "provide[d] crucial details" about the plaintiff's prosecution), aff'd *on qualified immunity grounds*, 751 F.3d 78 (2d Cir. 2014); *cf. Obilo v. City Univ. of City of N.Y.*, No. 01-cv-5118, 2003 WL 1809471, \*4 (E.D.N.Y. Apr. 7, 2003) (considering incident report and police complaint that the plaintiff had conceded were "implicitly" incorporated into his conspiracy allegations). The better view, however, adopted by a majority of courts in our Circuit, is that these kinds of police records are not "integral" to a false arrest complaint. *See Bejaoui v. City of New York*, No. 13-CV-5667, 2015 WL 1529633, \*4– 5 (E.D.N.Y. Mar. 31, 2015) (noting disagreement and declining to consider extrinsic police reports); *Alvarez v. Cty. of Orange*, 95 F. Supp. 3d 385, 394-95 (S.D.N.Y. 2015) (collecting cases). A document is not "integral" simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff relied on the document in preparing his complaint. *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156-57 (2d Cir. 2006); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Most typically, "the incorporated document is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason ... was not attached to the complaint." *Global Network Commc'ns*, 458 F.3d at 157. "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

Here, there is "no indication in the record that plaintiff relied on these documents in drafting the complaint." *Allyn v. Rockland Cty.*, No. 12-cv-5022, 2013 WL 4038602, \*4 (S.D.N.Y. July 30, 2013), *affirmed*, 646 Fed. Appx. 60 (2d Cir. 2016). To the contrary, Plaintiff relies on his own perceptions and recollections, while only making passing reference to the criminal complaint and order of protection. Furthermore, it is not beyond dispute that the police report and narrative are a truthful description of the police officer's basis to arrest Plaintiff. To accept the truth of the documents offered by Defendants at this stage would amount to a premature determination that the arresting officers and the alleged victim are more credible than Plaintiff. To make such a determination at this stage would not be appropriate, and therefore the Court will not consider the facts adduced in these documents. The Court will, however, take judicial notice of the existence of the criminal complaint, supporting affidavit, and order of protection. *See Williams v. City of New York*, No. 14-cv-5123, 2015 WL 4461716, \*1 (S.D.N.Y. July 21, 2015) (noting that the court "may take judicial notice of the procedural history of plaintiff's criminal case, but not of the truth of the arresting officers' version of events"); *see also Ribaudo v. Desimone*, No. 3:18-cv-1190, 2019 WL 1906269, \*4 (M.D. Pa. Apr. 5, 2019) (holding that "even if judicial notice is taken of these documents, 'a court may take notice of such documents only to establish their existence and legal effect, or to determine what statements they contained ... not for the truth of the matters asserted' ") (quoting *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 223 (N.D.N.Y. 2014)) (other citation omitted).

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 53 of 108
Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)
2020 WL 1904088

## C. *Monell* and Supervisory Liability

**\*4** "Under the standards of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), a municipality can be held liable under [42 U.S.C. § 1983] if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). Liability under Section 1983 "is imposed on the municipality [only] when it has promulgated a custom or policy that violates federal law and, pursuant to that policy, a municipal actor has tortiously injured the plaintiff." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Jones*, 691 F.3d at 80. Thus, for a municipality to be held liable under Section 1983 for the unconstitutional actions of its employees, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks omitted).

"Supervisory liability is a concept distinct from municipal liability, and is 'imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates.' " *Kucera v. Tkac*, No. 5:12-cv-264, 2013 WL 1414441, \*4 (D. Vt. Apr. 8, 2013) (quoting *Odom v. Matteo*, 772 F. Supp. 2d 377, 403 (D. Conn. 2011)). Prior to the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Second Circuit required a plaintiff to allege one of the following categories for supervisory liability under § 1983:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [persons] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

In order to succeed on his *Monell* and supervisory liability claims, a plaintiff must first "identify obvious and severe deficiencies" in the policies of the municipal and supervisory defendants and "show a causal relationship" between those deficiencies and his alleged deprivations. *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007). However, to the extent that a plaintiff premises his claims on a failure to train or supervise, such failure "may constitute an official policy or custom [only] if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact." *Wray*, 490 F.3d at 195. Similarly, a supervisory defendant is liable only for the creation or continuation of policy that leads to a pattern of unconstitutional conduct or if he demonstrated deliberate indifference in failing to act on information that a pattern of unconstitutional conduct was occurring. *See Colon*, 58 F.3d at 873.

"To establish deliberate indifference a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." *Jones*, 691 F.3d at 81.

> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train [or supervise because] [w]ithout notice

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 54 of 108

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)

2020 WL 1904088

that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

**\*5** *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* at 61 (citation omitted). [1]

### D. Cayuga County District Attorney's Office and Auburn Police Department

Plaintiff names the Cayuga County District Attorney's Office as a named Defendant in this case. The caselaw is clear, however, that a district attorney's office is not an entity subject to suit under 42 U.S.C. § 1983. *See Michels v. Greenwood Lake Police Dep't*, 387 F. Supp. 2d 361, 367 (S.D.N.Y. 2005) (citing cases); *Griffith v. Sadri*, No. 07-CV-4824, 2009 WL 2524961, \*8 (E.D.N.Y. Aug. 14, 2009). Similarly, Plaintiff has listed the Auburn Police Department as an entity responsible for several of the alleged constitutional violations. *See* Dkt. No. 5 at ¶¶ 51-82. As with the District Attorney's Office, the Auburn Police Department (which is not listed as a Defendant in the caption of the complaint), the Court finds that it must be dismissed because a police department is not an independent, suable entity separate from the municipality in which the police department is located. *See Jenkins v. City of New York*, 478 F.3d 76, 93 (2d Cir. 2007) (citation omitted); *Krug v. City of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (citing cases); *Koulkina v. City of New York*, 559 F. Supp. 2d 300, 315 (S.D.N.Y. 2008) (citing cases).

Accordingly, the Court dismisses Plaintiff's claims against the Cayuga County District Attorney's Office and the Auburn Police Department.

### E. False Arrest

In their motion to dismiss, Defendants contend that, based on Plaintiff's own allegations, probable cause was present to believe that he committed the offense for which he was arrested. *See* Dkt. No. 9-1 at 14-16. Defendants claim that Plaintiff "admits that he was charged with violating duly issued orders of protection issued for Linda Fitzsimmons and Lee Joyner, who reside at 140 Wall Street in the City of Auburn. *See id.* at 15 (citing Dkt. No. 5 at ¶ 24). Defendants further claim that Plaintiff "admits he was 'driven by' 140 Wall Street on August 10, 2018." *Id.* (citing Dkt. No. 5 at ¶ 25). Defendants contend that the fact that Plaintiff claims that he was not driving the vehicle "has no bearing on whether the order of protection was reasonably deemed violated by police authorities, and Plaintiff is careful not to deny that he was in fact at 140 Wall Street on the date in question, which is *a per se* violation of the order." *Id.* In response, Plaintiff argues that since he "was arrested for traveling on a public road in route to his own home and in violation of no Order, law or ordinance and, as it cannot be denied that he was 'no billed' by the Grand Jury, it would seem plausible to this writer that any court would agree to the plausibility of Plaintiff's claims." Dkt. No. 10 at 16.

**\*6** In assessing Fourth Amendment claims of false arrest brought under Section 1983, courts generally look to the law of the state in which the arrest is alleged to have occurred. *See Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007) (citation omitted). To prevail on a false arrest claim under New York law, a plaintiff has to prove the following: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (alteration and internal quotation marks omitted) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975)); *see also Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (outlining the elements of false arrest claims). "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.' " *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)); *see also Ackerson*, 702 F.3d at 19-20 (citing *Weyant*, 101 F.3d at 852). "A police officer has probable cause for an arrest when he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime[.]' " *Swartz v. Insogna*,

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)
Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 55 of 108
2020 WL 1904088

704 F.3d 105, 111 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (same). Such knowledge or information can be based on information provided by an eyewitness, unless the circumstances would raise a doubt as to the eyewitness' veracity. *See Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (citing *Singer*, 63 F.3d at 119). The question is whether the facts known to the arresting officer, at the time of the arrest, objectively provided probable cause to support the arrest. *See Gonzalez*, 728 F.3d at 155.

In the present matter, the Court finds that Defendants' motion to dismiss Plaintiff's false arrest claim must be denied as to Defendant Spinelli. The complaint sufficiently alleges, albeit barely, that Defendant Spinelli lacked probable cause to arrest Plaintiff for the crime of Criminal in the First Degree. Indeed, it is unclear from the complaint whether Plaintiff's conduct was, in fact, in violation of the order of protection. [2]

However, to the extent that Plaintiff attempts to assert a false arrest claim against any other named Defendant, the claim must be dismissed. Plaintiff's complaint is devoid of any facts that would permit the Court to find that any other Defendant was personally involved in the alleged false arrest. Aside from conclusory allegations merely reciting the underlying law, Plaintiff fails to include any facts that plausibly allege the personal involvement of any municipal or supervisory Defendant. For example, Plaintiff alleges that "Defendant Butler, Defendant City and Defendant County have created and tolerated an atmosphere of lawlessness, and have developed and maintained long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff and of the public." Dkt. No. 78 at ¶ 78. While this allegation accurately reflects what is required to hold municipal and supervisory officials personally liable for the acts of other, the simple recitation of the relevant law is insufficient to withstand a motion to dismiss. Rather, Plaintiff was required to allege facts, specific to his case, demonstrating how these municipal and supervisory Defendants were personally involved in the alleged unconstitutional conduct, which he has failed to do. Simply put, the legal conclusions in Plaintiff's complaint, devoid of any supporting facts, fail to plausibly allege supervisory or municipal liability as to this claim.

**\*7** Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's false arrest claim as to Defendant Spinelli.

**F. Malicious Prosecution**

In their motion to dismiss, Defendants argue that Plaintiff's malicious prosecution must be dismissed because the complaint fails to set forth facts plausibly alleging that the prosecution was initiated without probable cause or that any named Defendant acted with the requisite malice. *See* Dkt. No. 9-1 at 16-17. In response, Plaintiff states as follows: "As the plaintiff was arrested for traveling on a public road in route to his own home and in violation of no Order, law or ordinance, as it cannot be denied that he was 'no billed' by the Grand Jury and as he spent 53 days in jail for no reason whatsoever, it would seem plausible to this writer that any court would agree to the plausibility of Plaintiff's claims." Dkt. No. 10 at 17 (citing *Swierkiezicz v. Sorema*, 534 U.S. 506 (2002)). Plaintiff brings his malicious prosecution claim against the City of Auburn, Auburn Police Department, Cayuga County, and Defendant Butler. *See* Dkt. No. 5 at ¶¶ 51-82. While Plaintiff may be confident in the viability of his claim, this Court finds that Plaintiff has failed to plausibly allege facts supporting a claim for malicious prosecution. [3]

To prevail on a Section 1983 claim for malicious prosecution, "a plaintiff must show a violation of his rights under the Fourth Amendment ... and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citations omitted). Under New York law, a plaintiff must plausibly allege four elements to support a malicious prosecution claim: " '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.' " *Id.* (quotation and other citations omitted); *see also Dufort v. City of New York*, 874 F.3d 338, 350 (2d Cir. 2017) (quotation omitted). Initiating a criminal proceeding against a person without probable cause, coupled with a deprivation of liberty, is a Fourth Amendment violation. *See Murphy v. Lynn*, 118 F.3d 938, 944-45 (2d Cir. 1997) (citation omitted).

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 56 of 108

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)

2020 WL 1904088

 **\*8**  The Second Circuit has held that although "police officers do not generally "commence or continue" criminal proceedings against defendants, a claim for malicious prosecution can still be maintained against a police officer if the officer is found to 'play[ ] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.' " *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) (quotations omitted). "This element might be satisfied by, for example, showing that an officer generated witness statements or was regularly in touch with the prosecutor regarding the case." *Id.* (citation omitted).

Recently, the New York Court of Appeals acknowledged that it has " 'never elaborated on how a plaintiff in a malicious prosecution case demonstrates that the defendant commenced or continued the underlying criminal proceeding.' " *Torres v. Jones*, 26 N.Y.3d 742, 760-61 (2016) (quotation omitted). "But, by suggesting that a defendant other than a public prosecutor may be liable for supplying false information to the prosecutor in substantial furtherance of a criminal action against the plaintiff, we have implicitly recognized that such conduct may, depending on the circumstances, constitute the commencement or continuation of the prosecution." *Id.* at 761 (citations omitted); *see also Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983) (noting that proof establishing "that the police witnesses" have falsified evidence may create liability for malicious prosecution); *Hopkinson v. Lehigh Val. R.R. Co.*, 249 N.Y. 296, 300-01 (1928) (noting that the falsification of evidence and presentation of that evidence to the prosecutor can constitute commencement of a prosecution).

### 1. Initiation of Criminal Prosecution

In the present matter, the Court finds that Plaintiff's malicious prosecution claim must be dismissed. Initially, the Court finds that Plaintiff has failed to adequately allege that any named Defendant initiated that the prosecution against him. While Defendant Spinelli filed the criminal complaint against him, nothing in the complaint suggests his participation in Plaintiff's prosecution beyond that. Nearly all cases in which law enforcement officers were found to have initiated or continued a prosecution for purposes of a malicious prosecution claim involve officers who provided knowingly false and/or fabricated evidence to unwitting prosecutors. *See, e.g., Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997); *Ramos v. City of New York*, 285 A.D.2d 284, 299 (1st Dep't 2001). There is a rebuttable presumption that criminal proceedings are initiated by prosecutors, not arresting officers. *See Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 228 (S.D.N.Y. 2006) (citation omitted). "[I]n the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment," a claim of malicious prosecution against the officer must fail. *See Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999) (citations omitted).

Plaintiff's complaint is devoid of any allegations that Defendant Spinelli engaged in any of the conduct identified above that would permit the Court to find that Plaintiff plausibly alleged that any party other than the District Attorney initiated the prosecution against him. As such, the Court finds that Plaintiff's malicious prosecution claim is subject to dismissal.

### 2. Malice

Plaintiff's complaint is also devoid of any facts supporting an inference that the prosecution was instituted with malice. As Defendants correctly note, Plaintiff misconstrues the standard on a motion to dismiss. While Plaintiff is not required to "prove" that Defendants acted in a malicious manner to sustain his claim, he is certainly required to plead enough facts that would make such a conclusion plausible. Plaintiff's complaint fails to plead any facts that would support the inference that any named Defendant (or their employees) acted with the requisite malice to support a malicious prosecution claim. Rather, the complaint simply alleges that he was subjected to normal processes of law. The number of days that Plaintiff spent in jail is irrelevant to this consideration, as is the fact that he was "no billed" by the Grand Jury. Plaintiff does not allege that he had previous interactions with any of the named Defendants, or that his interactions with them during his arrest and subsequent prosecution would indicate a malicious intent. Finally, as to the supervisory and municipal Defendants, Plaintiff has failed to put forth any facts in support of this claim. Rather, the complaint contains nothing but legal conclusions without providing any basis for the Court to conclude that Plaintiff has plausibly alleged a malicious prosecution claim against these Defendants.

 **\*9**  Accordingly, the Court finds that Plaintiff's malicious prosecution claim is subject to dismissal on this alternative ground.

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)

2020 WL 1904088

### 3. Prosecutorial Immunity

Prosecutors sued under 42 U.S.C. § 1983 enjoy absolute immunity " 'from claims for damages arising out of prosecutorial duties that are "intimately associated with the judicial phase of the criminal process." ' " *Okongwu v. County of Erie*, No. 14CV832, 2017 WL 2686454, *3 (W.D.N.Y. June 22, 2017) (quoting Doe *v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976))). The prosecutor enjoys this absolute immunity because he or she is acting in a quasi-judicial capacity. *See Okongwu v. County of Erie*, No. 14CV832, 2018 WL 1383233, *3 (W.D.N.Y. Mar. 19, 2018). The function performed by the prosecutor defines the scope of this immunity. *See Imbler*, 424 U.S. at 430; *Warney*, 587 F.3d at 121. Acts of advocacy before a court, or preparation to advocate, are absolutely immune, *Imbler*, 424 U.S. at 430-31; *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993), while administrative duties or investigatory functions are not so immune, *Imbler*, 424 U.S. at 431 n.33; *Buckley*, 509 U.S. at 273; *Warney*, 587 F.3d at 121. "This protection encompasses 'all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation.' " *Peters*, 848 F. Supp. 2d at 385 (quoting *Barrett v. United States*, 798 F.2d 565, 571-72 (2d Cir. 1986)). As noted by the Second Circuit, "thus, to establish [absolute] immunity, the 'ultimate question' is 'whether the prosecutors have carried their burden of establishing that they were functioning as "advocates" when they engaged in the challenged conduct.' " *Warney*, 587 F.3d at 121 (quoting *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996)).

Absolute immunity extends from the initiation of a prosecution and presenting a case at trial, *Boria v. Hicks*, No. 5:17-CV-00486, 2017 WL 2983304, *4 (N.D.N.Y. June 14, 2017), through the decision to end it, *see Okongwu*, 2017 WL 2686454, at *4, as well as post-conviction defense of proceedings and the decision whether to vacate a conviction, *Warney*, 587 F.3d at 123; *Peters*, 848 F. Supp. 2d at 387. Absolute immunity applies in the preparation for the initiation of judicial proceedings, but not to the investigative or administrative duties of a prosecutor. *See Warney*, 587 F.3d at 122. In *Peters*, the court listed activities that are investigative or administrative that do not deserve absolute immunity, such as orchestrating a sting operation, authorizing wiretaps, coercing confidential informant to consent to a wire, releasing information to the media, assisting in the execution of a warrant, or supervising and interacting with law enforcement agents to acquire evidence. *See Peters*, 848 F. Supp. 2d at 386 (citing cases).

In the present matter, the Court finds that Defendant Budelmann, as Cayuga County District Attorney is entitled to absolute prosecutorial immunity. In the complaint, Plaintiff alleges that "[o]n October 4, 2018, Defendant district attorney presented Plaintiff's criminal charges to the Grand Jury of Cayuga County where the grand jury 'No Billed' the case; and Plaintiff was released from his illegal confinement at the Cayuga County Jail." Dkt. No. 5 at ¶¶ 26, 91. Further, Plaintiff claims that "Defendant district attorney knew at the time of Plaintiff's case being presented to the Grand Jury of Cayuga County that he would not prevail due to the lack of probable cause." *Id.* at ¶ 29. These allegations make clear that Defendant Budelmann has been sued relating to his role in presenting the case to the grand jury; conduct for which he is entitled to absolute prosecutorial immunity. *See Hill v. City of New York*, 45 F.3d 653, 661-62 (2d Cir. 1995) (holding that "that prosecutors are immune from § 1983 liability for their conduct before a grand jury") (citations omitted); *Bernard v. County of Suffolk*, 356 F.3d 495, 505 (2d Cir. 2004) (citations omitted). Accordingly, Plaintiff's claim of malicious prosecution against Defendant Budelmann is subject to dismissal on this alternative ground.

**\*10** Finally, to the extent that Plaintiff seeks to impute the conduct of Defendant Budelmann to Cayuga County, the claim must necessarily be dismissed. The Second Circuit Court of Appeals has unequivocally held that "prosecutorial acts may not fairly be said to represent official policy of the County," because "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." *Baez v. Hennessy*, 853 F.2d 73 (2d Cir. 1988) (internal quotation omitted); *see also Doe v. Smith*, 704 F. Supp. 1177, 1184 (S.D.N.Y. 1988). Since Defendant Budelmann was acting on behalf of the State of New York, and not Cayuga County, any alleged misconduct on Defendant Budelmann's part cannot be imputed to Cayuga County.

### G. Negligent/Intentional Infliction of Emotional Distress

In his sixth cause of action, Plaintiff alleges claims of negligent and intentional infliction of emotional distress against Defendants Butler, Spinelli, and Budelmann. *See* Dkt. No. 5 at ¶¶ 96-98. Defendants contend these claims fail as a matter of law. *See* Dkt. No. 9-1 at 19-20.

As to the claim of negligent infliction of emotional distress, it is well settled that a " 'plaintiff seeking damages for an injury resulting from a wrongful arrest and detention may not recover under broad general principles of negligence ... but must proceed by way of the traditional remedies of false arrest and imprisonment.' " *Greenaway v. Cty. of Nassau*, 97 F. Supp. 3d 225, 239 (E.D.N.Y. 2015) (quoting *Secard v. Dep't of Soc. Servs. of Cnty. of Nassau*, 204 A.D.2d 445, 612 N.Y.S. 2d 167, 168 (2d Dep't 1994)). This is precisely what Plaintiff is attempting to do here. Tacking on a claim for negligent infliction of emotional distress without any other facts or assertions is insufficient under the relevant law. Moreover, even if this claim could be considered independent of Plaintiff's false arrest claim, it is still subject to dismissal because Plaintiff has not alleged any facts demonstrating that Defendants breached a duty owed to Plaintiff. As such, the Court grants Defendants' motion to dismiss as to Plaintiff's claim of negligent infliction of emotional distress.

As to the intentional infliction of emotional distress claim, it too must be dismissed. "Intentional infliction of emotional distress has four elements: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.' " *Greenaway*, 97 F. Supp. 3d at 239-40 (quoting *Howell v. N.Y. Post Co., Inc.*, 81 N.Y.2d 115, 596 N.Y.S. 2d 350, 612 N.E. 2d 699, 702 (1993)). "The 'extreme and outrageous conduct' must 'go beyond all possible bounds of decency' and be 'atrocious, and utterly intolerable in a civilized community.' " *Id.* (quotation and other citation omitted).

Here, Plaintiff claims that Defendants Budelmann, Spinelli, and Butler engaged in "extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to Plaintiff." Dkt. No. 5 at ¶ 97. Notably absent from the complaint is any explanation what this "extreme and outrageous conduct" was. " 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 302 (1983) (quotation omitted). The threadbare facts alleged by Plaintiff, which include the fact that he was arrested and eventually released after the grand jury refused to indict, fall far short of this strict standard.

**\*11** Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's claims for negligent and intentional infliction of emotional distress.

### H. Negligence

In his seventh cause of action, Plaintiff asserts a claim for negligence. *See* Dkt. No. 5 at ¶¶ 100-04. In this claim, Plaintiff argues that his arrest, Defendants' failure to "follow the criminal law of the State of New York," and Plaintiff's fifty-three days of incarceration, were the product of Defendants' negligence. *See id.*

"To prevail on a claim for negligence under New York law, a plaintiff must establish '(1) the existence of a duty on the defendant's part as to the plaintiff; (2) a breach of that duty; and (3) resultant injury to the plaintiff.' " *Frederique v. County of Nassau*, 168 F. Supp. 3d 455, 485 (E.D.N.Y. 2016) (quotation omitted). "However, '[u]nder New York law, harm predicated on an intentional act may not give rise to a claim of negligence.' " *Id.* (quotation and other citation omitted). Moreover, it is well settled that, "[u]nder New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citing *Boose v. City of Rochester*, 71 A.D.2d 59, 421 N.Y.S.2d 740, 743 (4th Dept. 1979)) (other citation omitted).

In the present matter, the Court finds that Plaintiff's negligence claim must be dismissed as it is simply redundant of Plaintiff's claims of false arrest, false imprisonment, and malicious prosecution. Accordingly, the Court grants Defendants' motion to dismiss as to this claim.

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 59 of 108

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)
2020 WL 1904088

## I. Deliberate Indifference to Serious Medical Needs

In his eighth cause of action, Plaintiff claims that "Defendant Medical Staff and Defendant Cayuga County Sheriff's Department" were deliberately indifferent to his medical care and treatment after he was injured when a water pipe broke outside his cell on August 31, 2018. *See* Dkt. No. 5 at ¶¶ 105-14.

A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citations omitted). A pretrial detainee's claims are evaluated under the Due Process Clause because, " '[p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner — neither cruelly and unusually nor otherwise.' " *Id.* (quotations omitted).

"A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29 (citation omitted). "This means that a pretrial detainee must satisfy two prongs to prove a claim, an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong' — perhaps better classified as a *'mens rea* prong' or 'mental element prong' — showing that the officer acted with at least deliberate indifference to the challenged conditions." *Id.* "The reason that the term 'subjective prong' might be a misleading description is that, as discussed below, the Supreme Court has instructed that 'deliberate indifference' roughly means 'recklessness,' but 'recklessness' can be defined subjectively (what a person actually knew, and disregarded), or objectively (what a reasonable person knew, or should have known)." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 836-37, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)).

**\*12** Under both the Eighth and Fourteenth Amendments, to establish an objective deprivation, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health," which includes the risk of serious damage to "physical and mental soundness." *Id.* at 30 (citations omitted). "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.' " *Id.* (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981))). For example, the Second Circuit has " 'held that prisoners may not be deprived of their basic human needs — *e.g.*, food, clothing, shelter, medical care, and reasonable safety — and they may not be exposed to conditions that pose an unreasonable risk of serious damage to [their] future health.' " *Id.* (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)).

" '[C]onditions of confinement may be aggregated to rise to the level of a constitutional violation, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.' " *Darnell*, 849 F.3d at 30 (quotations omitted). "Unsanitary conditions, especially when coupled with other mutually enforcing conditions, such as poor ventilation and lack of hygienic items (in particular, toilet paper), can rise to the level of an objective deprivation." *Id.* (citations omitted).

The second element of a conditions of confinement claim brought under the Due Process Clause of the Fourteenth Amendment is the defendant's "deliberate indifference" to any objectively serious condition of confinement. *See Darnell*, 849 F.3d at 32. Courts have traditionally referred to this second element as the "subjective prong." "But 'deliberate indifference,' which is roughly synonymous with 'recklessness,' can be defined either 'subjectively' in a criminal sense, or 'objectively' in a civil sense." *Id.* As such, the "subjective prong" might better be described as the "*mens rea* prong" or "mental element prong." *Id.*

Under the second prong of the deliberate indifference analysis, the Court must consider whether the defendants "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though [they] knew, or should have known, that the condition posed an excessive risk to

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 60 of 108

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)

2020 WL 1904088

health or safety." *Darnell*, 849 F.3d at 35. Under this standard, the plaintiff "must prove that [the defendants] acted intentionally or recklessly, and not merely negligently.' " *Id.* at 36.

In the present matter, the Court finds that Plaintiff has failed to plausibly allege a claim of deliberate indifference under the Fourteenth Amendment. Initially, the Court notes that the "medical staff" at the Cayuga County Jail were not named as defendants in this action. Rule 10(a) requires a plaintiff to "name all the parties" in the Complaint. *See* Fed. R. Civ. P. 10(a). Although the naming of pseudonymous defendants is permissible where a plaintiff requires discovery to learn the true identities of the defendants, the plaintiff subsequently must amend the complaint to reflect the discovered identities and effect service on the named parties within the 120-day time period set forth in Rule 4(m). *See Petty v. Cty. of Franklin*, 478 F.3d 341, 345–46 (6th Cir. 2007).

Here, Plaintiff has not brought suit against any pseudonymous defendants, and only makes reference to these unidentified individuals in the body of the complaint. If Plaintiff had intended to sue then-unknown members of the medical staff at the jail, he should have brought suit against "John and/or Jane Doe" defendants, who could be identified through discovery. Upon obtaining their identities, Plaintiff would then be required to amend his complaint to reflect the Doe defendants' identities. *See Simmons v. District of Columbia*, 750 F. Supp. 2d 43, 45 (D.D.C. 2011) (holding that a plaintiff "may bring an action against unknown John Doe defendants, but plaintiff must substitute named defendants for those unknown defendants after the completion of discovery") (citations omitted); *see also Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) (holding that "[a]n action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery"). Here, Plaintiff has not brought suit against unknown members of the medical staff at the Cayuga County Jail or providing any facts that would permit Defendants to assist in obtaining their identities. As such, the only potential deliberate indifference claim asserted in the complaint is a municipal liability claim against Defendant Cayuga County.

**\*13** In his complaint, Plaintiff has alleged that a water pipe burst outside his cell during the night, the water was turned off, and at some point during the night it pooled near his cell's toilet. *See* Dkt. No. 5 at ¶¶ 109-13. At sometime between 6:30 a.m. and 7:00 a.m., Plaintiff claims that he got out of bed to use the toilet in his cell and slipped and fell on the wet floor. *See id.* at ¶ 110. Plaintiff alleges that, when he fell, he hit his head and neck on his bunk and his lower back on the floor, causing severe injuries, including a herniated disc in his neck and lower lumbar strain. *See id.* at ¶¶ 111-13. Plaintiff claims that, "[a]fter the injury up and until Plaintiff was released on October 4, 2018[,] Plaintiff was denied medical treatment for his injuries that he suffered inclusive of medication and treatment from a physician." *Id.* at ¶ 114.

Initially, the Court notes that nothing in the complaint indicates that Plaintiff's alleged injury was caused by a municipal custom, policy, or usage, as is required to find a plausible claim against Defendant Cayuga County. Rather, Plaintiff claims that a water pipe leaked outside his cell during the night and that a "correctional officer ... turn[ed] off the water and clean[ed] up the water spill. At that time, there was no water in Plaintiff's cell." Dkt. No 5 at ¶ 108. When the second pipe leaked, some water entered Plaintiff's cell, which caused Plaintiff to fall. *See id.* at ¶ 109. This isolated incident, involving a bursting water pipe, is woefully insufficient to plausibly allege municipal liability for Plaintiff's alleged injury. *See Connick*, 131 S. Ct. at 1360; *see also Plair v. City of New York*, 789 F. Supp. 2d 459, 470 (S.D.N.Y. 2011) ("[I]t is well established that a single incident does not give rise to an unlawful practice by subordinate officials so permanent and well-settled as to constitute custom or usage") (internal quotation marks omitted); *Giaccio v. City of New York*, 308 Fed. Appx. 470, 472 (2d Cir. 2009) (finding that allegations of, at most, four prior incidents of misconduct "falls far short of establishing a practice that is 'so persistent or widespread' as to justify the imposition of municipal liability") (internal quotation marks omitted).

Even assuming that Plaintiff had asserted this claim against an individually named Defendant, the claim would still be dismissed. To satisfy the second prong of a deliberate indifference claim, Plaintiff must plausibly allege facts suggesting that a defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though [they] knew, or should have known, that the condition posed an excessive

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 61 of 108

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)

2020 WL 1904088

risk to health or safety." *Darnell*, 849 F.3d at 35. At best, the facts set forth in the complaint describe negligence on the part of the correctional staff, which is insufficient to support a claim of deliberate indifference. *See id.* at 36.

Finally, to the extent that Plaintiff is basing his claim on the alleged deprivation of medical care after his accident, Plaintiff has failed to provide any factual basis in support of his conclusory assertion that he "was denied medical treatment for his injuries that he suffered inclusive of medication and treatment from a physician." Dkt. No. 5 at ¶ 114. The complaint fails to allege that he brought his alleged injuries to the attention of the correctional or medical staff at the Cayuga County jail (or even identify any such individual).

Based on the foregoing, the Court grants Defendants' motion to dismiss as to Plaintiff's deliberate indifference claim.

## IV. CONCLUSION

After carefully the entire record in this matter, parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**\*14  ORDERS** that Defendants' motion to dismiss (Dkt. No. 9) is **GRANTED in part** and **DENIED in part**; [4] and the Court further

**ORDERS** that Defendants City of Auburn, Butler, Cayuga County, Cayuga County District Attorney's Office, and Budelmann are **TERMINATED** as Defendants in this action; and the Court further

**ORDERS** that Defendants' letter motion a portion of the argument raised in their motion to dismiss (Dkt. No. 15) is **DENIED as moot**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 1904088

## Footnotes

1    As discussed in more detail below, Plaintiff's complaint fails to set forth any facts sufficient to find either supervisory or municipal liability against any of the named Defendants for any of the listed causes of action.

2    Although the Court is permitting this claim against Defendant Spinelli to survive, the Court has serious doubts about whether the claim would survive a properly supported motion for summary judgment. If the Court were to consider the contents of the criminal complaint, supporting affidavit, and Defendant Spinelli's narrative, the claim would undoubtedly be dismissed. This, however, highlights why the Court believes that it is inappropriate to rely on the contents of these documents at this stage. Without the benefit of discovery, Plaintiff has been unable to question the veracity of the

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 62 of 108

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)
2020 WL 1904088

statements contained in those documents. That being said, the criminal complaint and affidavits paint a much less sympathetic picture than the one set out in Plaintiff's complaint.

3    Throughout his response, Plaintiff repeatedly states that "the Court is respectfully reminded that it may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See, e.g.*, Dkt. No. 10 at 17, 18 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73). Further, Plaintiff repeatedly contends that he "has no duty at this stage to prove his case." *Id.* These basic tenets are not in dispute. What Plaintiff fails to appreciate, however, is that a complaint must be supported by facts specific to his case, not merely broad assertions of the relevant law poorly disguised as facts. For example, Plaintiff alleges that Defendants engaged in "extreme and outrageous conduct," but fails to explain how any of the conduct alleged could possibly be considered extreme and outrageous. Further, Plaintiff seems to be operating under the assumption that the Court is required to use its imagination to come up with a hypothetical set of facts that could have been pled that would render the claims plausible. *Iqbal* and *Twombly*, however, place no such burden on the Court. Rather, it is incumbent on the plaintiff to set forth the necessary facts specific to his or her case to render the asserted claims plausible.

4    As a result of this Memorandum-Decision and Order, the only remaining claim is Plaintiff's false arrest claim against Defendant Spinelli.

---

End of Document
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 63 of 108

Karupaiyan v. New York, Not Reported in Fed. Rptr. (2024)

2024 WL 2174272
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Palani KARUPAIYAN, Plaintiff-Appellant,

v.

State of NEW YORK, City of New York, New York City Police Department (NYPD), John Does Police Officers
of NYPD, Fredrick Dsouza, Pravin Pandey, Raja Pandey, Adar Management Corp., Defendants-Appellees.

23-1257-cv
|
May 15, 2024

Appeal from a judgment of the United States District Court for the Eastern District of New York (Ann M. Donnelly, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED IN PART, VACATED IN PART,** and **REMANDED** for further action consistent with this order.

**Attorneys and Law Firms**

For Plaintiff-Appellant: Palani Karupaiyan, pro se, Philadelphia, PA.

For Defendants-Appellees: No appearance.

Present: Dennis Jacobs, William J. Nardini, Steven J. Menashi, Circuit Judges.

**SUMMARY ORDER**

 **\*1** Plaintiff-Appellant Palani Karupaiyan, *pro se*, sued the State and City of New York, the New York City Police Department ("NYPD"), unnamed NYPD officers, three private individuals, and a real estate company under various federal and state causes of action. Karupaiyan's allegations stem from several disagreements and altercations with his co-tenants and his apartment's management company, as well as purported discrimination by New York City police officers who allegedly responded to his residence and arrested him after one of his co-tenants called 911 after an altercation. After granting Karupaiyan *in forma pauperis* status, the district court dismissed his complaint under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim but permitted him leave to amend. *See Karupaiyan v. New York*, No. 23-CV-5424 (AMD) (LB), 2023 WL 9020011 (E.D.N.Y. Sept. 8, 2023). Instead of amending, Karupaiyan appealed. [1] We assume the parties' familiarity with the case.

**I. Forfeiture of Issues on Appeal**

While we liberally construe *pro se* filings to raise the strongest arguments they suggest, *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017), *pro se* appellants must still clearly state the issues on appeal in their briefs, *see Moates v. Barkley*, 147 F.3d 207, 209 (2d Cir. 1998). We normally do not decide issues that are not briefed. *Id.*; *see also LoSacco v. City of Middletown*, 71 F.3d 88, 93 (2d Cir. 1995) ("[W]e need not manufacture claims of error for an appellant proceeding *pro se* ...."). [2] Nor will we decide issues that a *pro se* appellant briefs only "in passing." *Gerstenbluth v. Credit Suisse Secs. (USA) LLC*, 728 F.3d 139, 142 n.4 (2d Cir. 2013).

Karupaiyan's brief largely fails to address the substance of the district court's decision dismissing his complaint. The only substantive grounds his brief could be read to raise are that Defendant-Appellee Fredrick Dsouza filed a "false charge" against

him and that his alleged arrest was discriminatory, which can be read to challenge the dismissal of his false arrest and malicious prosecution claims under 42 U.S.C. § 1983. We accordingly conclude that he has forfeited all other issues.

## II. *Sua Sponte* Dismissal

Karupaiyan appears to challenge the district court's *sua sponte* dismissal of his complaint under § 1915(e)(2)(B). While we have cautioned against *sua sponte* dismissals without notice and opportunity to be heard in certain contexts, *see Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 82–83 (2d Cir. 2018), the district court granted Karupaiyan leave to amend his complaint to fix the defects identified, but he did not take advantage of the offer. We discern no error in the *sua sponte* dismissal under these circumstances.

## III. Merits

 **\*2**  We review *de novo* Karupaiyan's challenge to the dismissal of his false arrest and malicious prosecution claims arising out of his alleged arrest. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). We conclude that he failed to state a claim for false arrest under 42 U.S.C. § 1983 against Fredrick Dsouza and Pravin Pandey because they are private citizens and did not act under color of state law. A private individual becomes a state actor for the purposes of § 1983 only when (1) the state compelled the conduct, (2) the private party acted jointly with a state, or (3) the private party fulfilled a role that is traditionally a public state function. *See Sybalski v. Indep. Group Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008). Filing a complaint with the police does not fit within any of these categories. *See Dahlberg v. Becker*, 748 F.2d 85, 93 (2d Cir. 1984) (holding that "mere invocation" of state legal procedures does not amount to state action under § 1983).

Karupaiyan also fails to plead a false arrest or malicious prosecution claim under § 1983 against NYPD officers or the City of New York, as he does not allege any facts showing that the officers lacked probable cause for the arrest, *see Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) ("Probable cause to arrest is a complete defense to an action for false arrest."), or that the criminal proceedings terminated in his favor, *see Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (requiring a plaintiff to plead "termination of the proceeding in [his] favor").

The remainder of Karupaiyan's brief seeks various remedies that are not related to any of the claims he raised below—for example, he seeks an order reorganizing the New York State Unified Court System. He points to no authority that would permit such relief, even assuming he had a meritorious claim.

## IV. Prejudice

Although Karupaiyan's claims against the State of New York fail, the district court erred by dismissing them with prejudice. The district court correctly dismissed these claims because New York is entitled to state sovereign immunity and has not waived that immunity. *See Karupaiyan*, 2023 WL 9020011, at \*2. The "constitutional principle of sovereign immunity" poses "a bar to federal jurisdiction over suits against nonconsenting States." *Alden v. Maine*, 527 U.S. 706, 730 (1999). "When subject matter jurisdiction is lacking, 'the district court lacks the power to adjudicate the merits of the case,' and accordingly 'Article III deprives federal courts of the power to dismiss the case with prejudice.' " *Green v. Dep't of Educ. of City of N.Y.*, 16 F.4th 1070, 1074 (2d Cir. 2021) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54–55 (2d Cir. 2016)). Therefore, because the district court lacked jurisdiction over the claims against the State of New York, it was erroneous to dismiss those claims with prejudice rather than without prejudice.

The district court likewise erred by dismissing with prejudice Karupaiyan's landlord-tenant claims—other than those under the Fair Housing Act or 42 U.S.C. § 1981—pursuant to Federal Rule of Civil Procedure 12(h)(3). *See Karupaiyan*, 2023 WL 9020011, at \*5. Because Rule 12(h)(3) provides for dismissal for lack of subject matter jurisdiction, such a dismissal must be without prejudice. *See Green*, 16 F.4th at 1074. We therefore remand with instructions for the district court to modify its judgment to dismiss these claims without prejudice. *See Russo v. United States*, No. 22-1869, 2024 WL 726884, at \*2 (2d Cir. Feb. 22, 2024).

Karupaiyan v. New York, Not Reported in Fed. Rptr. (2024)

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 65 of 108

\* \* \*

We have considered Karupaiyan's remaining arguments and find them unpersuasive. Accordingly, we **AFFIRM** the judgment of the district court in part, **VACATE** the judgment insofar as the district court dismissed with prejudice claims over which it lacked subject matter jurisdiction, and **REMAND** for the district court to amend its judgment to dismiss these claims without prejudice.

**All Citations**

Not Reported in Fed. Rptr., 2024 WL 2174272

---

**Footnotes**

1    Because the time to amend has long since run despite multiple extensions, the dismissal without prejudice has ripened into a final and appealable order over which we may exercise jurisdiction. *See* 28 U.S.C. § 1291; *Salmon v. Blesser*, 802 F.3d 249, 252 n.2 (2d Cir. 2015).

2    Unless otherwise indicated, case quotations omit all internal quotation marks, alteration marks, footnotes, and citations.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

835 Fed.Appx. 637

This case was not selected for publication in West's Federal Reporter.

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY
ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE
OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY
ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX
OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A
SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

United States Court of Appeals, Second Circuit.

Miriam LOWELL, Seth Healey, Plaintiffs-Appellants,

v.

VERMONT DEPARTMENT OF CHILDREN AND FAMILIES, "DCF," Kenneth Schatz, Commissioner,
DCF, Karen Shea, Deputy Commissioner for the Family Services Division ("FSD"), DCF, Christine Johnson,
Deputy Commissioner for FDS, DCF, Emily Carrier, District Director, DCF, Catherine Clark, Director,
Commissioner's Registry Review Unit, DCF, Kathleen Smith, Family Services Supervisor, Christine Gadwah,
Family Services Worker, DCF, Kathleen Greenmun, Substantiation Hearing Officer, DCF, Defendants-Appellees,
John and Jane Does 1-10, Defendants.

19-3987-cv
|
December 01, 2020
|
Amended December 15, 2020

**Synopsis**

**Background:** Parents brought action in federal court seeking declaratory and injunctive relief, and damages against the Vermont
Department of Children and Families (DCF) and certain DCF officials, arising from DCF's investigation of purportedly false
allegations of abuse. The United States District Court for the District of Vermont, Geoffrey W. Crawford, Chief Judge, denied
parents motion for a temporary restraining order and preliminary injunction, but denied defendants' motion to dismiss. Plaintiffs
appealed.

**[Holding:]** The Court of Appeals held that *Younger* abstention was warranted.

Affirmed.

**Procedural Posture(s):** Motion for Preliminary Injunction; Motion for Temporary Restraining Order (TRO).

West Headnotes (1)

**[1]**    **Federal Courts**    Families and children

*Younger* abstention was warranted in parents' action against the Vermont Department for Children and Families
(DCF) and certain DCF officials seeking declaratory and injunctive relief, arising from a DCF investigation into
purportedly false allegations of child abuse; Vermont's substantiation process for abuse allegations was akin to a

criminal prosecution, Vermont had a vital interest in protecting the well-being of its children, the state proceedings provided a sufficient forum for review of federal constitutional claims, and the actions alleged in the complaint were not sufficient to sustain a finding of bad faith. 33 Vt. Stat. Ann. §§ 4915, 4915a, 4915b.

24 Cases that cite this headnote
More cases on this issue

**\*638**  Appeal from the United States District Court for the District of Vermont (Crawford, *Ch. J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFFS-APPELLANTS: COLIN R. HAGAN, Shlansky Law Group, LLP, Chelsea, Massachusetts.

FOR DEFENDANTS-APPELLEES: BENJAMIN D. BATTLES, Solicitor General, for Thomas J. Donovan, Jr., Attorney General, Montpelier, Vermont.

PRESENT: BARRINGTON D. PARKER, DENNY CHIN, Circuit Judges, JANE A. RESTANI, Judge. *

**AMENDED SUMMARY ORDER**

Plaintiffs-appellants Miriam Lowell and Seth Healey ("plaintiffs") appeal the decision of the district court issued November 18, 2019, denying their motion for a temporary restraining order and preliminary injunction. Plaintiffs brought the action below seeking declaratory and injunctive relief, and damages against defendant-appellant Vermont Department for Children and Families ("DCF") and certain DCF officials. DCF had brought a proceeding against plaintiffs seeking to investigate and determine whether to substantiate a report of child abuse or neglect based on purportedly false allegations. Plaintiffs sought injunctive relief to stop DCF from conducting an administrative hearing and listing their names on Vermont's child protection registry. In its ruling, the district court concluded that the *Younger* abstention doctrine barred plaintiffs' claims for injunctive relief. *See Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The court also denied defendants' motion to dismiss the action, noting that *Younger* abstention did not apply to plaintiffs' claims for damages. This appeal followed. We assume the parties' familiarity with the underlying facts, procedural history of the case, and the issues on appeal.

We review *de novo* whether the requirements for abstention have been met. *See Disability Rights New York v. New York*, 916 F.3d 129, 133 (2d Cir. 2019); **\*639** *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 197-98 (2d Cir. 2002). Although the findings of facts are reviewed for clear error, whether those facts support a finding that the case meets an exception to the *Younger* abstention doctrine is a mixed question of law and fact that is reviewed *de novo*. *See id.* at 198.

As a general matter, *Younger* abstention requires federal courts to abstain from exercising jurisdiction over state-level proceedings. Three types of proceedings trigger *Younger* abstention: 1) "ongoing state criminal prosecutions," 2) state "civil enforcement proceedings," and 3) proceedings involving state courts "perform[ing] their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. U.S. 69, 70, 134 S.Ct. 584, 187 L.Ed.2d 505 (2013). Moreover, after applying the categorical *Sprint* approach, this court will consider three additional, non-dispositive factors to determine whether abstention is appropriate: 1) whether there is a "pending state proceeding," 2) whether that proceeding "implicates an important state interest," and 3) whether "the state proceeding affords an adequate opportunity for judicial review of ... federal constitutional claims." *Falco v. Justices of Matrimonial Parts of Supreme Ct. of Suffolk Cnty.*, 805 F. 3d 425, 427 (2d Cir. 2015) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). Altogether, even if *Younger's* prerequisites

are satisfied, a federal court may exercise jurisdiction if the plaintiff can make a showing of "bad faith, harassment or any other unusual circumstance that would call for equitable relief." *Id.* (quoting *Younger*, 401 U.S. at 54, 91 S.Ct. 746).

The district court correctly concluded that Vermont's substantiation process is akin to a criminal prosecution, falling within *Younger*'s second category. In determining whether a civil enforcement action is akin to a criminal proceeding, we consider whether the action involved a state sanctioning a party "for some wrongful act," was "initiated [by the State] to sanction the federal plaintiff," and involved "[i]nvestigations [that] culminat[e] in the filing of a formal complaint or charges." *Sprint*, 571 U.S. at 79-80, 134 S.Ct. 584. The substantiation process at issue here possessed these features. Therefore, DCF's proceeding constituted an ongoing state proceeding akin to a criminal prosecution.

The substantiation proceedings also satisfy the additional *Middlesex* factors. Vermont has a vital interest in protecting the well-being of its children. *See Moore*, 442 U.S. at 435, 99 S.Ct. 2371 ("Family relations are a traditional area of state concern."). Moreover, the state proceedings provide a sufficient forum for review of federal constitutional claims. After an accusation of wrongdoing, DCF can initiate an investigation. Vt. Stat. Ann. Tit. 33 § 4915, 4915a, 4915b. If DCF finds that the claims are substantiated, it provides notice of that fact to the accused. It also informs the accused that DCF can place the individual on the child protection registry. Vt. Stat. Ann. tit. 33 § 4916a(a). The accused is notified of the right to request administrative review of the decision, *id.*, which is conducted by a neutral arbiter who is not an employee of DCF, *id.* § 4916a(f). The burden of proof rests on DCF and the accused has the right to present documentary evidence and other evidence. *Id.* §§ 4916a(d), a(e). A person's name is not placed on the registry until after the accused is granted an administrative review, and the substantiation is upheld. *Id.* § 4916a(h). The accused can appeal that decision to the Human Services Board. *Id.* §§ 4916a(i), b. That decision, in turn may be appealed to the Vermont Supreme Court. *Id.* tit. 3 § 3091(f). Accordingly, plaintiffs have an opportunity to raise their constitutional claims at the hearing before **\*640** the Human Services Board and before the Vermont Supreme Court.

Plaintiffs argue that this review of their constitutional claims arrives too late, beyond the point that their names are listed on the child protection registry, potentially affecting their employment in an irreparable way. Plaintiffs' names, however, have not been placed on the child-protection registry, as the state has not held the administrative review not entirely made clear by the record. Moreover, in *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 79 (2d Cir. 2003), this Court held that the "*ability* to raise constitutional claims in subsequent 'state-court judicial review of [an underlying] administrative proceeding' is sufficient to provide plaintiffs with a meaningful opportunity to seek effective relief through state proceedings and bar federal courts from taking jurisdiction over the same claims while the state proceeding is pending" (emphasis added). Thus, the state process provides sufficient opportunity to raise constitutional claims.

Plaintiffs also argue that the district court should have applied the "bad faith" exception to *Younger,* and exercised jurisdiction because they have shown "bad faith" and "harassment" by defendants. *Diamond "D,"* 282 F.3d at 198 (quoting *Younger,* 401 U.S. at 54). The district court correctly held that the actions alleged in the complaint are not sufficient to sustain a finding of bad faith. To show bad faith, a plaintiff must show that "the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive" and "ha[s] no reasonable expectation of obtaining a favorable outcome." *Diamond "D,"* 282 F.3d at 199. A state proceeding that "is legitimate in its purposes, but unconstitutional in its execution -- even when the violations of constitutional rights are egregious -- will not warrant the application of the bad faith exception." *Id.* (internal citation omitted). Here, the case was initially brought to the attention of a mental health counselor by the accusations of Lowell's daughter, not by the reporting of a DCF employee. Hence, the suggestion that the state proceeding was therefore initiated with a harassing or retaliatory motive, or that the state had no reasonable expectation of a favorable outcome, is not plausible, and plaintiffs have not met their burden of showing that the bad faith exception should apply.

We have reviewed plaintiffs' remaining arguments on appeal and conclude they are without merit. Accordingly, we **AFFIRM** the order of the district court denying plaintiffs' claims for a temporary restraining order and preliminary injunctive relief.

**All Citations**

835 Fed.Appx. 637

---

### Footnotes

\*        Judge Jane A. Restani, of the United States Court of International Trade, sitting by designation.

---

        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2025 Thomson Reuters. No claim to original U.S. Government Works.                                                   4

268 Fed.Appx. 83
This case was not selected for publication in the Federal Reporter.
United States Court of Appeals,
Second Circuit.

Abdel–Jabor MALIK, Plaintiff–Appellant,

v.

Parole Officer George MACKEY, Defendant–Appellee.

No. 06–5837–pr.
|
March 5, 2008.

**Synopsis**

**Background:** Parolee filed civil rights action alleging that parole officer violated his constitutional rights by knowingly filing false parole violation charges. The United States District Court for the Southern District of New York, Griesa, J., entered summary judgment in officer's favor, and parolee appealed.

**Holding:** The Court of Appeals held that officer was entitled to qualified immunity from liability.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment.

West Headnotes (1)

**[1]**    **Civil Rights**    Prisons, Jails, and Their Officers;  Parole and Probation Officers

State parole officer reasonably believed that parolee had violated terms of his parole, and thus officer was entitled to qualified immunity from civil rights liability in connection with his filing of parole violation charges against parolee, even though parolee erroneously believed that he was only required to report to his federal parole officer, and state hearing officer found that there was no probable cause to find that parolee violated his parole conditions "in an important respect," where parolee admittedly violated two conditions of his state parole supervision by failing to advise officer of change in residence and failing to report to officer's office.

5 Cases that cite this headnote

**\*83**  Appeal from a judgment of the United States District Court for the Southern District of New York (Griesa, J.).
**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED.**

**Attorneys and Law Firms**

Abdel–Jabor Malik, Dannemora, NY, pro se.

Barbara D. Underwood, Solicitor General (Michael S. Belohlavek, Senior Counsel, and Daniel J. Chepaitis, Assistant Solicitor General, on the brief), for Andrew M. Cuomo, Attorney General of the State of New York, New York, NY, for Defendant–Appellee.

PRESENT: Hon. DENNIS JACOBS, Chief Judge, Hon. GUIDO CALABRESI, Hon. ROBERT D. SACK, Circuit Judges.

### *SUMMARY ORDER*

**\*\*1**  *Pro se* plaintiff Abdel–Jabor Malik ("Malik") appeals the March 31, 2006 judgment **\*84** of the district court, granting defendant-appellee's motion for summary judgment on the ground of qualified immunity. Malik brought this civil rights damages action against George Mackey, a New York state parole officer, alleging Mackey violated his constitutional rights by knowingly filing false parole violation charges. In 1997, when Malik was on parole after serving consecutive prison terms for unrelated state and federal crimes, he was required to report to both state and federal parole officers. He admittedly violated two conditions of his state parole supervision by failing to advise Mackey of a change in residence and failing to report to Mackey's office. At a preliminary hearing following Malik's arrest for these parole violations, Malik said that he believed there was a cooperation agreement between the state and federal agencies permitting him to report to only the latter. That belief was incorrect, it turns out; but the state hearing officer concluded there was no probable cause to find that Malik violated his parole conditions "in an important respect," and he was released. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

We review a grant of summary judgement *de novo* and if, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law. *Miller v. Wolpoff & Abramson,* 321 F.3d 292, 300 (2d Cir.2003). "[D]amages suits concerning constitutional violations need not proceed to trial, but can be terminated on a properly supported motion for summary judgment based on the defense of immunity." *Butz v. Economou,* 438 U.S. 478, 508, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). For substantially the reasons stated in the district court's opinion, *Malik v. Mackey,* No. 03–cv–0580 (TPG), 2006 WL 846343 (S.D.N.Y. Mar. 31, 2006), we agree that Mackey is entitled to qualified immunity on Malik's constitutional claims.

A government official is entitled to immunity from § 1983 suits if "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir.1996); *see also Scotto v. Almenas,* 143 F.3d 105, 112–13 (2d Cir.1998) (qualified immunity analysis applies to parole officer determination to recommend issuance of arrest warrant). Based on the undisputed testimony that Malik failed to advise Mackey of a change of address and failed to report, Mackey reasonably believed that Malik had violated the terms of his parole. The reasonableness of Mackey's actions is not impaired by the hearing officer's later determination that the violations were not significant and Malik should be released. Even if Mackey had been mistaken in his belief that Malik had violated his parole, qualified immunity protects him as long as his belief was reasonable. *See Butz v. Economou,* 438 U.S. at 507, 98 S.Ct. 2894 ("Federal officials will not be liable for mere mistakes in judgment, whether the mistake is one of fact or one of law."); *Moore v. Vega,* 371 F.3d 110, 117 (2d Cir.2004) ("a mistake while engaging in the performance of an official duty ... does not deprive a government officer of immunity").

**\*\*2**  We have considered Malik's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED.**

### All Citations

268 Fed.Appx. 83, 2008 WL 623947

**Malik v. Mackey, 268 Fed.Appx. 83 (2008)**

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Moalawi v. James, Not Reported in Fed. Supp. (2023)

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 73 of 108

2023 WL 4817618
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Ali MOALAWI, Plaintiff,

v.

Letitia JAMES, in her capacity as Attorney General of the State of New York, Defendant.

22-CV-6770 (RA)
|
Signed July 27, 2023

**Attorneys and Law Firms**

Ali Moalawi, Huntington Station, NY, Pro Se.

Jacob Richard Samuels-Kalow, New York, NY, for Defendant.

MEMORANDUM OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

**\*1**  Plaintiff, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983, challenging his February 5, 2018 New York state court conviction. Plaintiff "seek[s] relief from this court akin to the relief once available to [him] via federal habeas corpus." For the reasons that follow, Plaintiff's Complaint is dismissed.

**BACKGROUND**

On November 17, 2017, Plaintiff was convicted of burglary in New York state court. Compl. ¶ 8. He was sentenced to three and a half years of incarceration and two and a half years of post-release supervision. *Id.* ¶ 9. The New York Appellate Division, First Department, affirmed his conviction and sentence on June 17, 2021; and the New York Court of Appeals denied Plaintiff leave to appeal that decision on August 4, 2021. *Id.* ¶¶ 11-12. Plaintiff does not allege that he then filed a petition for a writ of habeas corpus or made any other collateral attack on his conviction. In March 2022, Plaintiff was released from parole and thus "no longer remain[s] within the custody or control of New York State." *Id.* ¶ 17.

Acknowledging that he is no longer eligible for federal habeas corpus relief, *see id.* ¶ 18, Plaintiff seeks to raise his constitutional challenges via 42 U.S.C. § 1983. He alleges primarily (1) that he was deprived of his federal due process rights because there was insufficient evidence to support the charges against him; and (2) that he was deprived of his Sixth Amendment rights because his trial counsel was ineffective and because he was precluded from testifying on his own behalf. According to Plaintiff, his counsel's "performance fell below what could be expected of a reasonably competent trial counsel" because he "denied [Plaintiff his] chance to present [his] stellar personal history" as well as "exculpatory facts [he] planned to present during [his] testimony." *Id.* ¶ 48. Plaintiff also alleges that he was unfairly prejudiced by the introduction of evidence that "the Terrorist Watch was involved with the case," which, according to Plaintiff, suggests that the government "hoped that some jurors would determine ... this person of Middle Eastern descent was ... guilty of something." *Id.* ¶¶ 62–64.

Plaintiff does not request damages; instead, he asks for an order "vacating [his] conviction and directing the State of New York to expunge the conviction forthwith or retry the plaintiff within sixty days." *Id.* at 13.

Moalawi v. James, Not Reported in Fed. Supp. (2023)

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 74 of 108

## STANDARD OF REVIEW

Under Federal Rule of Criminal Procedure 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). [1] Courts "read the pleadings of a *pro se* plaintiff liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999). This is especially true when the plaintiff alleges civil rights violations. *McEachin v. McGunnis*, 357 F.3d 197, 200 (2d Cir. 2004). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

## DISCUSSION

**\*2** As an initial matter, to the extent Plaintiff alleges constitutional violations by "the state, the state trial court, and the state prosecutor," those allegations fail because each of these individuals are "absolutely immune from [his] claims." *Teichmann v. New York*, 769 F.3d 821, 825 (2d Cir. 2014). Moreover, while Attorney General James appears to be an improper defendant in this action, the Court further notes that "a government attorney is entitled to absolute immunity when functioning as an advocate of the state in a way that is intimately associated with the judicial process." *Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006) (holding that the Connecticut Attorney General was absolutely immune from claims raised in a § 1983 suit). *Accord Owens v. State of N.Y. Att'y Gen.*, 10 F. App'x 34, 36 (2d Cir. 2001) (explaining that "amendment of the § 1983 and ADA claims contained in Owens's complaint would have been futile because the judges, attorney general, and assistant attorney general are immune from suit for their conduct").

More fundamentally, however, the Court must dismiss Plaintiff's action because the relief he seeks is not cognizable under § 1983. *Teichmann v. New York* is instructive in this respect. There, a plaintiff who had been convicted in state court and had completed his sentence filed a complaint in federal court under § 1983, "alleging that he had been convicted in violation of his constitutional rights ... and asking for his conviction to be vacated." 769 F.3d at 822. The Second Circuit affirmed the district court's dismissal, explaining that "§ 1983—while broad in its equitable and legal remedies—does not recognize a declaration of innocence, standing alone, as a cognizable form of relief." *Id.* at 826. The court further explained that "where a plaintiff seeks simply a declaration that there was a past injury, but claims no damages or injunction against future behavior, there is no § 1983 claim because there is no true case or controversy." *Id.* The Second Circuit's reasoning in *Teichmann* thus forecloses Plaintiff's action here.

The Complaint, moreover, must be dismissed for the additional reason that the *Rooker-Feldman* doctrine precludes federal district courts from reviewing final judgments of the state courts. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (holding that federal district courts are barred from deciding cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."). While *Rooker-Feldman* would not generally preclude Plaintiff from bringing a § 1983 action for a violation of his constitutional rights, dismissal is warranted insofar as "he seeks nothing more than a review of a state court judgment." *Teichmann*, 769 F.3d at 826; *see Mitchell v. New York State*, No. 22-cv-1747 (LDH) (LB), 2023 WL 2734823, at \*4 (E.D.N.Y. Mar. 31, 2023) (dismissing, under *Rooker-Feldman* doctrine, § 1983 action because plaintiff "necessarily invites the Court to review the judgment of [his state court criminal] conviction.").

Finally, the Court will not grant leave to amend, as any amendment would be futile given the relief that Plaintiff seeks. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011).

SO ORDERED.

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 75 of 108

**Moalawi v. James, Not Reported in Fed. Supp. (2023)**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 4817618

---

## Footnotes

1     Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, omissions, and alterations.

---

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.



KeyCite Yellow Flag
Distinguished by  Rivera v. Anderson,  W.D.Wash.,  February 25, 2025

2024 WL 3992588
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

MULHERN GAS CO., INC.; New York State Builders Association; National Association of Home Builders; New York Propane Gas Association; National Propane Gas Association; Northeast Hearth, Patio and Barbecue Association; Plumbing Contractors Association of Long Island; Licensed Plumbing Association of New York City, Inc. d/b/a Master Plumbers Council of the City of New York; Holmes Mech. LLC; International Brotherhood of Electrical Workers Local 1049; Plumbers Local Union No. 200; International Brotherhood of Electrical Workers Local Union 97; and Transport Workers Union Local 101, AFL-CIO, Plaintiffs,

v.

Robert J. RODRIGUEZ in his official capacity as New York Secretary of State and member of the State Fire Prevention and Building Code Council; New York Department of State; New York State Fire Prevention and Building Code Council; James Cable in his official capacity as a member of the State Fire Prevention and Building Code Council; Ruthanne Visnauskas in her official capacity as a member of the State Fire Prevention And Building Code Council; Roberta Reardon, in her official capacity as a member of the State Fire Prevention and Building Code Council; Eric Adams in his official capacity as a member of the State Fire Prevention and Building Code Council; Michael Spano in his official capacity as a member of the State Fire Prevention and Building Code Council; Joseph M. DeStefano in his official capacity as a member of the State Fire Prevention and Building Code Council; Claudia Braymer in her official capacity as a member of the State Fire Prevention and Building Code Council; Joseph Toomey in his official capacity as a member of the State Fire Prevention and Building Code Council; Shawn Hamlin in his official capacity as a member of the State Fire Prevention and Building Code Council; Timothy Deruyscher in his official capacity as a member of the State Fire Prevention and Building Code Council; Robert Hughes in his official capacity as a member of the State Fire Prevention and Building Code Council; William W. Tuyn in his official capacity as a member of the State Fire Prevention and Building Code Council; Patrick Dolan in his official capacity as a member of the State Fire Prevention and Building Code Council; and Dominic Marinelli in his official capacity as a member of the State Fire Prevention and Building Code Council, Defendants.

1:23-CV-1267 (GTS/CFH)
|
Signed August 29, 2024

**Attorneys and Law Firms**

CAROLINE M. WALTER, ESQ., REICHMAN JORGENSEN LEHMAN & FELDBERG LLP, Counsel for Plaintiffs, 400 Madison Avenue, Suite 14d, New York, NY 10017, SARAH JORGENSEN, ESQ., 1201 West Peachtree Street, Suite 2300, Atlanta, GA 30309, BRIAN C. BARAN, ESQ., 1909 K Street NW, Suite 800, Washington, DC 20006, COURTLAND L. REICHMAN, ESQ., 100 Marine Parkway, Suite 300, Redwood, CA 94065.

HON. LETITIA JAMES, NEW YORK STATE ATTORNEY GENERAL, GAVIN G. MCCABE, ESQ., LAURA MIRMAN-HESLIN, ESQ., Assistants Attorney General, Counsel for Defendants, 28 Liberty Steet, 19th Floor, New York, NY 10005, CHRISTOPHER C. GORE, ESQ., Assistant Attorney General, TIMOTHY L. HOFFMAN, ESQ., Assistant Attorney General, Main Place Tower, Suite 300A, 350 Main Street, Buffalo, NY 14202.

<u>**DECISION and ORDER**</u>

GLENN T. SUDDABY, United States District Judge

**\*1** Currently before the Court, in this declaratory judgment action filed by Mulhern Gas Co., Inc., New York State Builders Association, National Association of Home Builders, New York Propane Gas Association, National Propane Gas Association, Northeast Hearth, Patio and Barbecue Association, Plumbing Contractors Association of Long Island, Licensed Plumbing Association of New York City, Inc., Holmes Mech. LLC, International Brotherhood of Electrical Workers Local 1049, Plumbers Local Union No. 200, International Brotherhood of Electrical Workers Local Union 97, and Transport Workers Union Local 101 AFL-CIO ("Plaintiffs") against New York Secretary of State Robert J. Rodriguez, the New York Department of State, the New York State Fire Prevention and Building Code Council, and various members of the State Fire Prevention and Building Code Council (collectively "Defendants"), is Defendants' motion to dismiss various claims and Defendants in Plaintiffs Complaint for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). (Dkt. No. 19.) For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## I. RELEVANT BACKGROUND

### A. Plaintiffs' Complaint

Generally, in their Complaint, Plaintiffs seek declaratory and injunctive relief related to New York statutes implementing a ban on natural gas and propane infrastructure in new construction projects that they allege are preempted by the Energy Policy and Conservation Act ("EPCA"). (Dkt. No. 1.) Specifically, Plaintiffs allege that, on May 2, 2023, the New York legislature adopted as part of its 2024 fiscal year budget two amendments to New York's Energy Law and Executive Law "that mandate a prohibition on 'the installation of fossil-fuel equipment and building systems' in most new buildings under seven stories." (*Id.* at ¶ 42.) These amendments allegedly direct the New York State Fire Prevention and Building Code Council ("Code Council") to amend the Energy Conservation and Construction Code ("Energy Code") and the Uniform Fire Prevention and Building Code ("Building Code") to include the prohibitions in the content and manner dictated by those amendments. (*Id.* at ¶¶ 43-44.)

### B. Parties' Briefing on Defendants' Motion to Dismiss

#### 1. Defendants' Memorandum of Law

Generally, in their motion to dismiss, Defendants make three arguments. (Dkt. No. 19, Attach. 1.) First, Defendants argue that the Court lacks subject-matter jurisdiction over Plaintiffs' claims against the New York Department of State and the Code Council, because those entities are protected by sovereign immunity under the Eleventh Amendment. (*Id.* at 8-10.) Specifically, Defendants argue that the Department of State and the Code Council are state agencies and/or instrumentalities that are entitled to all the protections and immunities of the state itself and that such immunity has not been either waived or abrogated related to the asserted claims. (*Id.*)

Second, Defendants argue that the Eleventh Amendment also bars Plaintiffs' claims against the individual members of the Code Council, who have all been sued in their official capacities. (*Id.* at 10-14.) Specifically, Defendants argue that the Code Council (and its members) have no authority to enforce the allegedly preempted portions of the Energy and Building Codes, but instead the only authority that has been delegated to them by the New York Legislature is that which is outlined in the relevant sections of the Energy Law and Executive Law (which does not include enforcement authority), and, in fact, the Legislature explicitly delegated enforcement authority of the Codes to local government, county government, and the Secretary of State. (*Id.*) Defendants further argue that the Court should reject any argument that the Code Council's process of adopting the relevant

amendments constitutes an "enforcement connection" because the act of incorporating the amendments into the relevant codes at the direction of the Legislature is not an enforcement of the challenged gas ban. (*Id.*)

**\*2**  Third, Defendants argue that, although the Eleventh Amendment does not bar claims against Defendant Rodriguez in his capacity as Secretary of State, it limits such claims to only prospective relief for ongoing violations of federal constitutional law, and, as a result, any request for relief that would extend beyond this limit should be dismissed based on a lack of subject matter jurisdiction over such relief. (*Id.* at 14-15.)

### 2. Plaintiffs' Opposition Memorandum of Law

Generally, in their opposition memorandum of law, Plaintiff makes three arguments. (Dkt. No. 22.) First, Plaintiffs argue that the members of the Code Council are not subject to sovereign immunity under the Eleventh Amendment. (*Id.* at 12-19.) Specifically, Plaintiffs argue that the members of the Code Council have a sufficient connection with the enforcement of the gas ban because "they have a nondiscretionary duty to amend the Codes to implement the statutorily mandated ban" and such implementation amounts to an enforcement of the relevant statutes because the "authority to promulgate regulations under the challenged statute is a sufficient connection to enforcement." (*Id.* at 12-15.) They also argue that they seek prospective relief related to an ongoing violation of federal law as required under *Ex Parte Young*. (*Id.*) Plaintiffs further argue that it does not matter whether the members of the Code Council will be responsible for enforcing the Codes they implement because their duty to adopt the Codes is itself an enforcement of the relevant statutes, and *Ex Parte Young* is not limited to situations where the plaintiff is seeking to enjoin officials from bringing civil or criminal enforcement proceedings. (*Id.* at 16-19.)

Second, Plaintiffs argue that the Court should not dismiss any of the asserted bases for relief because they are not seeking damages or any form of improper retrospective relief and any "other or further relief as the Court may deem just and proper" inherently could be construed only as relief that is permitted by the bounds of the applicable law. (*Id.* at 19-20.)

Third, Plaintiffs concede that the New York Department of State and the Code Council must be dismissed based on sovereign immunity, but argue that such dismissal should be without prejudice as a result of the dismissal being based on a lack of subject-matter jurisdiction. (*Id.* at 20.)

### 3. Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, Defendants make three arguments. (Dkt. No. 25.) First, Defendants argue that the members of the Code Council lack the enforcement connection required to overcome the Eleventh Amendment, because their role is limited to "performing the non-discretionary duty of integrating the Legislature's prohibitions into the two Codes" and such action does not, by itself, impose any limitation or restriction on Plaintiffs given that other entities are required to issue permits and inspections before any enforcement could be taken against Plaintiffs. (*Id.* at 9-12.) Defendants further argue that Plaintiffs' argument that the Code Council enforces the statutes as opposed to the Codes they are tasked with implementing must be rejected, because (a) the Complaint itself acknowledges that neither the Code Council nor its members have the authority to enforce the statutes, and (b) the members of the Code Council are not enforcing anything by implementing the statutes into the Codes given that it was the Legislature who enacted the content of the relevant gas prohibition, who has mandated the Code Council to integrate the statutes into the Code, and who imposed the duty of enforcement of the Codes onto entities or persons other than the Code Council. (*Id.*) Defendants argue that Plaintiffs' arguments amount to little more than an improper attempt to make the Code Council members stand in for the state legislature, who Plaintiffs are unable to sue because of sovereign immunity. (*Id.*)

**\*3** Second, Defendants argue that the dismissal of Plaintiffs' claims should be with prejudice because jurisdiction under the Eleventh Amendment is not coextensive with Article III and "there is no scenario under which Plaintiffs could reassert claims against the state entities who are immune from suit in this Court." (*Id.* at 13-14.)

Third, Defendants argue that relief against Defendant Rodriguez should be limited explicitly to prospective injunctive relief. (*Id.* at 14.)

## II. GOVERNING LEGAL STANDARDS

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction. *Makarova*, 201 F.3d at 113. The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]). When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

Generally, dismissals for lack of subject-matter jurisdiction must be without prejudice (because the Court lacks jurisdiction to pass on the merits of the claims asserted). *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) ("One other wrinkle: when a case is dismissed for lack of federal subject matter jurisdiction, 'Article III deprives federal courts of the power to dismiss [the] case with prejudice.' ").

Finally, it appears to be a factually specific inquiry (if not an open question) whether a dismissal based on sovereign immunity is one based on a lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) or one based on a failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Compare Carver v. Nassau Cnty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013) ("[W]hether the claim of sovereign immunity constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense is an open question in the Supreme Court and the Second Circuit.... More recently, we held that the burden of proof in a case involving the assertion of sovereign immunity is on the party asserting it—a holding that we acknowledged is more consistent with the understanding that sovereign immunity was an affirmative defense.") *with Dorking Genetics v. United States*, 76 F.3d 1261, 1264 (2d Cir. 1996) (treating a dismissal of a claim under the Federal Tort Claims Act based on sovereign immunity as one based on lack of subject-matter jurisdiction).

## III. ANALYSIS

**A. Whether Plaintiffs' Claims Against Members of the Code Council Are Barred by the Eleventh Amendment**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendants' memorandum of law. *See, supra*, Part I.B.1 and 3 of this Decision and Order. To those reasons, the Court adds the following analysis.

**\*4** "[T]hrough the doctrine of *Ex Parte Young*, a party may bring 'a suit for injunctive [or declaratory] relief challenging the constitutionality of a state official's actions in enforcing state law.' " *Taylor v. New York State Office for People with Developmental Disabilities*, 13-CV-0740, 2014 WL 1202587, at \*6 (N.D.N.Y. Mar. 24, 2014) (Mordue, J.) (quoting *CSX Transp., Inc. v. New York State Off. of Real Prop. Servs.*, 306 F.3d 87, 98 [2d Cir. 2002]). "[B]ecause an unconstitutional legislative enactment is 'void,' a state official who enforces that law 'comes into conflict with the superior authority of [the] Constitution,' and therefore is 'stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct,' " and " '[t]he State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.' " *Virginia Off. for Protection and Advocacy v. Stewart*, 563 U.S. 247, 254-55 (2011) (quoting *Ex Parte Young*, 209 U.S. 123, 159-60 [1908]). [1] In other words, "when a federal court commands a state official to

do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Virginia Off. for Protection and Advocacy*, 563 U.S. at 255.

For this exception to sovereign immunity to apply, a complaint must allege "an ongoing violation of federal law" and seek "relief properly characterized as prospective." *Gazzola v. Hochul*, 645 F. Supp. 3d 37, 58 (N.D.N.Y. 2022) (quoting *In re Deposit Ins. Agency*, 482 F.3d 612, 618 [2d Cir. 2007]). Further, "the state officer against whom a suit is brought 'must have some connection with the enforcement of the act' that is in continued violation of federal law," and "[s]o long as there is such a connection, it is not necessary that the officer's enforcement duties be noted in the act." *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372-73 (2d Cir. 2005) (quoting *Ex Parte Young*, 209 U.S. 123, 154, 157 [1908]); *see also Whole Woman's Health v. Jackson*, 595 U.S. 30, 54 (2021) (concurrence in part) ("[A]n *Ex Parte Young* defendant must have 'some connection with the enforcement of the act'–*i.e.*, 'the right and power to enforce' the 'act alleged to be unconstitutional.' ").

It is important to place the context of this case into proper focus. Plaintiffs' Complaint unambiguously alleges that it is the relevant amendments to the Energy Law and Executive Law that New York passed as part of its 2024 budget that are preempted by federal law and thus unconstitutional. (Dkt. No. 1, at ¶¶ 42, 91.) It is therefore those statutes that the relevant Defendants must have some connection with the enforcement of, not the Codes that they are tasked with eventually enacting. Plaintiffs argue that this connection is established by the fact that the Code Council is mandated by the statutory amendments to adopt the content of those amendments into the Energy Code and Building Code because implementing those amendments into the Codes constitute an enforcement of the statute.

As an initial matter, the Court acknowledges that the paragraph in the Complaint relating to the Code Council officials alleges that "[a]s members, they are responsible for amending and enforcing New York State's Uniform Fire Prevention and Building Code and Energy Conservation Construction Code incorporating the gas ban": this admittedly appears to allege that it is the amendments to the Codes that these officials have enforcement power over, not the relevant statutory amendments themselves. (Dkt. No. 1, at ¶ 38.) [2] If that were the case, Plaintiffs' argument would fail given that there has been no allegation or relevant submitted evidence to even suggest that the members of the Code Council enforce the Codes after they are enacted; as will be discussed below, the relevant statutes and related provisions of the New York Executive Law affirmatively place enforcement responsibility on the Secretary and local/county government, not the Code Council. [3]

**\*5** However, drawing all reasonable inferences in favor of the Plaintiffs at this stage, the inclusion of "amending" could plausibly be construed as alleging an action of enforcing the statutory amendments through implementation of the Codes, given that other allegations make clear that such amendments are mandatory by the very wording of the statutes. (Dkt. No. 1, at ¶¶ 42-44, 49-50.) The Court therefore declines to go as far as Defendants argue, and instead finds that the arguments Plaintiffs now assert in their memoranda can be located within the allegations of the Complaint.

Turning to the substance of the arguments here, the Court acknowledges that this case presents a somewhat unusual factual situation, one in which a state legislature passed the statute that Plaintiffs assert is unconstitutional, but such law (although codifying the relevant restrictions on installation of gas equipment) has little or no practical effect in terms of enforcement against the Plaintiffs until it is implemented as directed through the Codes. Indeed, the statutory amendments do not themselves implement a prohibition on fossil-fuel equipment and systems through which a state official can enforce such a ban, but instead they direct that such a prohibition should be put into the Codes which, according to other provisions of Article 11 of the Energy Law and Article 18 of the Executive Law, can then be enforced by the Secretary of State and certified local and municipal code enforcement personnel that are trained pursuant to rules and regulations adopted by the Secretary of State. N.Y. Energy. L. § 11-107; N.Y. Exec. L §§ 377(1), 381.

Nonetheless, under the specific circumstances presented here, the Court finds that suing the individual members of the Code Council in their official capacity is little more than an attempt to sue the State under a different name, because those members (with the exception of Defendant Rodriguez, by virtue of his additional title and responsibilities in his capacity as Secretary) do not have a sufficient connection to the enforcement of the relevant statute. *See Ex Parte Young*, 209 U.S. at 157 (stating that

there must be a sufficient connection between the officer and the enforcement of the act "or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party").

Even according to Plaintiff's own factual allegations, the members of the Code Council act collectively as a sort of middleman related to the relevant statute, implementing the amendments to the Code as directed by the Legislature (a mandate that specifically requires the restrictions on the use and installation of gas equipment to which Plaintiffs object) with no discretion to deviate from what the Legislature has directed them to include in the Code. (Dkt. No. 1, at ¶¶ 42-50.) Indeed, Plaintiff acknowledges that, "[b]ecause the statutes provide that the Codes 'shall prohibit' gas appliances and infrastructure by the effective dates, the Code Council has a statutory obligation to integrate the ban into the Codes," and it "does not have discretion to delay the gas ban, refuse to implement it, or alter its scope." (Id. at ¶ 49.) Plaintiffs' own allegations therefore appear to recognize that it is the Legislature, not the Code Council or any of its members, that has mandated the policy to which they object, and the fact that the Code Council is tasked with integrating that mandatory policy into the Codes does not transform the members of the Code Council into the authors or the enforcers of that policy; they are merely doing what is required of them pursuant to the Legislature's enacted statute.

**\*6** Although Plaintiffs appear to argue that the fact that the duty to implement that restriction related to gas equipment was non-discretionary somehow suggests that the members of the Code Council are enforcing the statute through adhering to that duty, they cite no authority to support that assertion. Moreover, the various cases Plaintiffs cite regarding situations in which state officials have been found to have enforcement authority in part where they possessed a regulatory or rulemaking authority under a challenged statute are inapposite. (Dkt. No. 22, at 13-14.) None of these cases stands for the proposition that the delegation of a duty to codify provisions dictated by a statute or even of rulemaking or regulatory authority, *by itself*, constitutes a connection with the enforcement of the statute. In one such case, the ability "to promulgate rules and regulations relating to the implementation of the provisions" was the basis for a finding of a connection with enforcement, but that involved "directions that patrol officers should implement the statute by conducting vehicle inspections"; [4] unlike that situation, the members of the Code Council do not here have the power to direct the eventual enforcement agents to do anything, but instead they merely codify the requirements of the statute–it is the Secretary and local/county governments (through code enforcement divisions) that direct how the Codes should be enforced. [5] Again, in this case, although codification of the restriction on gas equipment is a step in the path of allowing eventual enforcement, the act of codification itself does not enforce the terms of the statute against any individual and the members of the Code Council do not have the authority to enforce the Code it enacts. N.Y. Energy L. § 11-107; N.Y. Exec. L. § 376-a; N.Y. Exec. L. § 381.

Again, although the Legislature tasked the Code Council with incorporating the relevant restrictions into the Codes, the statutes themselves specify that the enforcement of the relevant provisions related to gas equipment is to be carried out by the Secretary and county or local governments. *See* N.Y. Energy L. § 11-107 (referencing N.Y. Exec. L. § 381). The fact that the Secretary or county/local governments would not enforce the provisions mandated by the statute until the Codes are amended to reflect the Legislature's directions in the relevant statutes does not transform the adoption of the Codes into an enforcement action.

The circumstances here are somewhat–although not completely–analogous to those in *NASD Dispute Resolution, Inc. v. Judicial Council of California*, 232 F. Supp. 2d 1055 (N.D. Ca. 2002), *vacated on other grounds by* 488 F.3d 1065 (9th Cir. 2007). In that case, the U.S. District Court for the Northern District of California found that members of the state's Judicial Council were entitled to immunity pursuant to the Eleventh Amendment where the law challenged (which was passed by the California legislature) "mandated the creation of standards by an independent policymaking body." *NASD*, 232 F. Supp. 2d at 1064-65. The court reasoned that there is a difference between the enforcement of a policy that may violate federal law and the mere creation of such a policy, noting that "[f]ederal law may prevent particular applications of the ethical standards, but the creation of those standards was not itself a prohibited act." *Id.* at 1065. Furthermore, the court directly rejected the plaintiffs' argument that obeying the legislature's mandate to draft the relevant guidelines constituted an enforcement. *Id.* Similarly, here, the members of the Code Council have been delegated the responsibility of codifying the restriction on gas equipment specified by the statute enacted by the Legislature; they have no involvement in the application or eventual enforcement of the amendments to the Code

that they implement. To hold the members of the Code Council responsible for merely codifying what the Legislature enacted would be, in essence, to allow a suit against the State under another guise, a result that *Ex Parte Young* is designed to prevent.

**\*7**  Moreover, N.Y. Exec. L. § 377 states as follows:

> The council may from time to time amend particular provisions of the uniform code and shall periodically review the entire code to ensure that it effectuates the purposes of this article and the specific objectives and standards hereinafter set forth. The secretary shall conduct public hearings on said uniform code and any amendment thereto. The secretary shall review such code or amendment, together with any changes incorporated by the council as a result of such hearings, to insure that it effectuates the purposes of this article. *Upon being so satisfied, the secretary shall approve said code or amendment prior to its becoming effective.*

N.Y. Exec. L. § 377(1) (emphasis added).

This section makes clear that, although the members of the Code Council create amendments to the Codes, such amendments must be reviewed and approved specifically by the Secretary before they can become effective. In other words, it is the Secretary, and not the members of the Code Council, that enacts amendments to the Codes; and thus it is the Secretary that has the authority to implement the relevant statutes directing the gas equipment amendments that Plaintiffs now challenge, even if it is the members of the Code Council who prepare or write the relevant amendments. Therefore, even if it could be said that there is some measure of "enforcement" of the statutes in the adoption of the statutes' requirements into the Codes, it is the Secretary that is ultimately responsible for that enforcement by virtue of the Secretary having the final approval of any code amendments.

For all of the above reasons, the Court finds that Plaintiffs have not alleged facts plausibly suggesting that the members of the Code Council in their official capacities had a sufficient enforcement connection to render them subject to suit under the *Ex Parte Young* exception.

### B. Whether Dismissal of Claims Against Various Defendants on the Basis of Sovereign Immunity Should Be Without Prejudice

After careful consideration, the Court answers this question in the affirmative for the following reasons.

Plaintiffs acknowledge that the claims against Defendants New York Department of State and Code Council must be dismissed based on the application of sovereign immunity, but argue that the dismissal must be without prejudice because it is premised on a lack of jurisdiction. (Dkt. No. 22, at 20.) In response, Defendants argue that the dismissal should be with prejudice because it occurs in the context of the sovereign immunity rather than Article III jurisdiction, and therefore the principle on which Plaintiffs rely does not apply. (Dkt. No. 25, at 13-14.)

Whether a dismissal pursuant to the Eleventh Amendment is jurisdictional or merely an affirmative defense is an unsettled question in federal jurisprudence, with significant disagreement and varying outcomes amongst the district and circuit courts throughout the country. *See Ripa v. Stony Brook Univ.,* 808 F. App'x 50, 50 n.1 (2d Cir. 2020) ("Whether Eleventh Amendment immunity 'constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense' has not yet been decided by the Supreme Court or this Court."); *accord Allco Fin. Ltd. v. Roisman,* 22-2762, 2023 WL 4571965, at \*1 (2d Cir. July 18, 2023). In addition to affecting matters such as whether a motion arises under Fed. R. Civ. P. 12(b)(1) or Fed. R. Civ. P. 12(b)(6) and which party bears the burden to establish the entitlement (or lack thereof) to such immunity, it impacts whether a dismissal on that basis should be with or without prejudice, given that a dismissal for lack of jurisdiction must necessarily be without prejudice. *See Miller v. Brightstar Asia, Ltd.,* 43 F.4th 112, 126 (2d Cir. 2022) ("A dismissal for

lack of jurisdiction must be without prejudice rather than with prejudice."). Notably, neither party acknowledges this significant uncertainty in the relevant law related to this issue or offers any concrete persuasive argument grounded in the law related to whether Eleventh Amendment immunity is jurisdictional or an affirmative defense.

**\*8**  In light of this significant uncertainty (and the fact that Defendants themselves have framed this motion as a request for dismissal based on a lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1)), the Court finds that the most appropriate course is to dismiss the claims against Defendant New York Department of State, Defendant Code Council, and the various individual defendant members of the Code Council in their official capacities only without prejudice. The Court hastens to add, however, that this finding does not mean that Plaintiffs would be permitted to amend their Complaint as to any of the claims against those Defendants, given that their status as State entities and the Court's above analysis pursuant to *Ex Parte Young* shows that the defects in Plaintiff's claims against those Defendants cannot be cured by the pleading of any additional factual allegations. *See, e.g., Verdi v. Farah*, 22-CV-0825, 2022 WL 4236401, at \*9 n.9 (Sept. 14, 2022) (Sannes, C.J.); *Cox v. Morley*, 20-CV-1235, 2020 WL 6781522, at \*10, n.12 (N.D.N.Y. Nov. 18, 2020) (Sharpe, J.).

Finally, the Court must address Defendants' suggestion that a dismissal without prejudice should not be allowed because Plaintiffs may use such dismissal to refile their claims in state court and avoid claim preclusion if they receive an adverse determination on the remaining claim against Defendant Rodriguez in his capacity as Secretary. Given that the sole claim in this case involves the question of whether federal law preempts the relevant state law, and the analysis of that question would be the same regardless of which defendant it is asserted against, Defendants' fears that Plaintiffs could somehow use a dismissal without prejudice to get a second chance in a state court are unfounded; a state court could not simply ignore the preclusive effect of this Court's finding regarding the issue of preemption in any subsequent proceeding.

For the above reasons, the Court finds that the dismissal of the relevant Defendants should be without prejudice.

### C. Whether the Court Should Limit Plaintiffs' Claim Against Defendant Rodriguez

Defendants lastly argue that the Court should limit the relief sought by Plaintiffs to only the prospective injunctive relief that is permitted by the Eleventh Amendment because Plaintiffs have indicated in their Complaint that they are seeking "other and further relief as the Court may deem just and proper." (Dkt. No. 19, Attach. 1, at 14-15.) The Court finds no reason to grant that requested relief at this time. It is well established that Plaintiffs would be entitled only to relief that is permitted under the *Ex Parte Young* exception as to Defendant Rodriguez, and the Court is certainly aware of that fact. Because there is no indication that Plaintiffs are attempting, or will attempt, to seek any relief beyond that scope, the Court declines to grant the requested relief unless and until an actual controversy becomes apparent. Defendants, of course, will be permitted to raise the issue again at such time.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 19) is **GRANTED in part** and **DENIED in part without prejudice**, such that Plaintiff's claims against Defendants New York Department of State, Code Council, and members of the Code Council sued in their official capacity are **DISMISSED without prejudice** pursuant to the Eleventh Amendment.

**All Citations**

Slip Copy, 2024 WL 3992588

---

**Footnotes**

1    Preemption is a matter of constitutionality by virtue of its basis in the Supremacy Clause. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015) (noting that, in the context of how the Supremacy Clause affects proceedings in federal courts, "as we have long recognized, if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted").

2    The Court notes that, as far as the briefing indicates, the amendments to the Code have not yet been adopted, a fact that poses a problem for any claim premised on the Codes themselves.

3    Plaintiffs also appear to expressly disavow any such allegation based on the arguments presented in their response memorandum of law: "But Code enforcement is not why the Council members are in this suit. The Council members are here because they have a nondiscretionary statutory obligation to adopt code provisions implementing the ban–and thus to enforce the challenged statute." (Dkt. No. 22, at 7.)

4    *Calzone v. Hawley*, 866 F.3d 866, 869-70 (8th Cir. 2017).

5    The Court finds that *Nassau & Suffolk Cnty. Taxi Owners Ass'n v. New York*, 336 F. Supp. 3d 50 (E.D.N.Y. 2018) is also not analogous because, although the relevant statute there delegated authority to the commissioner of the Department of Motor Vehicles to promulgate regulations regarding the issuance of licenses necessary to allow persons to operate as a TNC under the statute and the commissioner had acted on that authority, (a) the regulations promulgated by the commissioner in that case appear to have involved more discretion in their content (whereas, in the current case, the members of the Code Council are essentially codifying what has been dictated by the Legislature), (b) the commissioner himself had some degree of enforcement power regarding the granting of the relevant licenses in addition to mere rulemaking authority (whereas the Code Council does not have any power to enforce the relevant amendments to the Code), and (c) there is no allegation that the members of the Code Council have actually acted on their delegated authority under the statute at this point in time. Moreover, as will be discussed below, although the Legislature directed that the relevant amendments be integrated into the Codes, relevant statutory authority indicates that any amendments to the Code can become effective only upon the approval of the Secretary, a fact which calls into question whether the members of the Code Council themselves actually possess any rulemaking authority as a practical matter as to the relevant provisions challenged here. N.Y. Exec. L. § 377(1).

**End of Document**                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag

Distinguished by   Civil Rights Corps v. Pestana,   S.D.N.Y.,   May 5, 2022

686 Fed.Appx. 34

This case was not selected for publication in West's Federal Reporter.

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

United States Court of Appeals, Second Circuit.

David Evan SCHORR, Plaintiff-Appellant,

v.

Jorge DOPICO, in his official capacity as Chief Counsel of the First Judicial Department Disciplinary Committee in New York State, Ernest J. Collazo, in his official capacity as Chairman of the First Judicial Department Disciplinary Committee in New York State, Defendants-Appellees, A. Gail Prudenti, in her official capacity as Chief Administrative Judge of the Courts of New York State, First Judicial Department Disciplinary Committee in New York State, Defendants.

16-3315-cv
|
April 06, 2017

**Synopsis**

**Background:** Attorney brought § 1983 action against officials of state attorney disciplinary committee alleging retaliation under First and Fifth Amendments. The United States District Court for the Southern District of New York, Sweet, J., 205 F.Supp.3d 359, dismissed complaint. Attorney appealed.

**Holdings:** The Court of Appeals held that:

[1] district court properly abstained from hearing his case under *Younger* abstention doctrine, and

[2] attorney's allegations were insufficient to show subjective bad faith on part of disciplinary committee, as required for bad faith exception to *Younger* abstention doctrine to apply.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion to Dismiss.

West Headnotes (2)

[1]    **Federal Courts** ⟵ Professional or other services;  malpractice

Focus of attorney's § 1983 claims against attorney disciplinary committee was an ongoing state proceeding, and thus district court properly abstained from hearing his case under *Younger* abstention doctrine, even though disciplinary committee had not yet brought charges against attorney in a formal hearing, where the disciplinary proceedings were pending at the time attorney filed his § 1983 complaint and continued during federal court proceedings. 42 U.S.C.A. § 1983.

11 Cases that cite this headnote
More cases on this issue

[2]    **Federal Courts**    Professional or other services;  malpractice

Attorney's allegation that state attorney disciplinary committee re-opened its investigation into his alleged misconduct, in violation of its own rules, in order to retaliate against attorney for requesting a formal disciplinary hearing was insufficient to show subjective bad faith on the part of disciplinary committee, as required for bad faith exception to *Younger* abstention doctrine to apply to preclude federal court's abstention from hearing attorney's § 1983 action against disciplinary committee, absent allegation that reopening was aimed at harassing attorney. 42 U.S.C.A. § 1983.

7 Cases that cite this headnote
More cases on this issue

Appeal from a judgment of the United States District Court for the Southern District of New York (Sweet, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** and Appellant's motion to supplement the record is **DENIED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: David Schorr, Esq., pro se, New York, NY.

FOR DEFENDANTS-APPELLEES: Mark H. Shawhan, Assistant Solicitor General, New York State Office of the Attorney General, New York, NY.

PRESENT: PETER W. HALL, GERARD E. LYNCH, CHRISTOPHER F. DRONEY, Circuit Judges.

**\*36  SUMMARY ORDER**

Appellant David Schorr, an attorney proceeding *pro se*, sued two officials of the New York State Appellate Division, First Judicial Department Attorney Disciplinary Committee ("committee") under 42 U.S.C. § 1983, alleging retaliation under the First and Fifth Amendments. Schorr alleged that the committee unlawfully re-opened its investigation of Schorr's misconduct after he exercised his right to reject a private admonition and request a formal hearing. The district court dismissed the complaint under the *Younger* abstention doctrine and for failure to state a claim. Schorr appeals the judgment of the district court and moves to supplement the record on appeal with an email from opposing trial counsel explaining the circumstances of the district court's denial of Schorr's motion for a preliminary injunction based on Schorr's default. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review *de novo* dismissals based on *Younger* abstention. *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 197 (2d Cir. 2002). "In *Younger v. Harris*, the Supreme Court held that a federal court, except in cases where an injunction is necessary to prevent immediate and irreparable injury, should not enjoin a criminal proceeding in a state court." *Liberty Mut. Ins. Co. v.*

Schorr v. DoPico, 686 Fed.Appx. 34 (2017)

*Hurlbut*, 585 F.3d 639, 646 (2d Cir. 2009). A previous three-part test held that a federal court must abstain from hearing a case when "1) there is an ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has an avenue open for review of constitutional claims in the state court." *Id.* at 647 (internal quotation marks omitted). In *Sprint Communications, Inc. v. Jacobs*, however, the Supreme Court cautioned that those three conditions "were not dispositive" because relying on them alone "would extend *Younger* to virtually all parallel state and federal proceedings ... where a party could identify a plausibly important state interest." *Sprint*, ––– U.S. ––––, 134 S.Ct. 584, 593, 187 L.Ed.2d 505 (2013). Accordingly, the Supreme Court clarified that courts should abstain under *Younger* only in three "exceptional circumstances" that "define *Younger*'s scope": (1) pending state criminal proceedings; (2) civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *See id.* at 588, 591. The Court specifically enumerated state-initiated attorney disciplinary proceedings for violations of state ethics rules as an example of civil enforcement proceedings. *See id.* at 592 (citing *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 433–34, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)). While "it remains unclear how much weight" we should afford our previous three-part test after *Sprint*, district courts should not rely entirely on the older test. *See Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk Cty.*, 805 F.3d 425, 427 (2d Cir. 2015).

[1] Although the district court erred when it relied only on the older three-part test for *Younger* abstention, it nonetheless properly dismissed Schorr's claims under the doctrine. The focus of Schorr's claims is an ongoing state attorney disciplinary proceeding, which falls squarely within *Younger* abstention. *See id.* ("On *de novo* review, however, we independently conclude that [the] case presents circumstances that qualify as 'exceptional' under *Sprint* and that *Younger* abstention was therefore warranted."); *see also Sprint*, 134 S.Ct. at 592. Schorr's argument that the proceeding is not ongoing because the committee has not yet brought charges in **\*37** a formal hearing is without merit. The disciplinary proceedings were pending at the time that Schorr filed the complaint in this action and they have continued since, including the initial scheduling of Schorr's deposition.

[2] The district court also correctly determined that the bad faith exception to the *Younger* doctrine does not apply here. A court may refuse to abstain when "a prosecution or proceeding has been brought to retaliate for or to deter constitutionally protected conduct, or where a prosecution or proceeding is otherwise brought in bad faith or for the purpose of harass." *Cullen v. Fliegner*, 18 F.3d 96, 103–04 (2d Cir. 1994). But "[a] state proceeding that is legitimate in its purposes, but unconstitutional in its execution—even when the violations of constitutional rights are egregious—will not warrant the application of the bad faith exception." *Diamond "D"*, 282 F.3d at 199. The plaintiff must therefore show subjective bad faith on the part of the defendants. *Id.* at 199–200. The plaintiff must demonstrate that the party bringing the state action has "no reasonable expectation of obtaining a favorable outcome." *Id.* at 199 (quoting *Cullen*, 18 F.3d at 103).

Schorr argues that he adequately pleaded bad faith by alleging that the committee re-opened its investigation, in violation of its own rules, in order to retaliate against him for requesting a formal hearing. Yet, this is not sufficient to show subjective bad faith on the part of the defendants. While Schorr is correct that the next steps after his request for a hearing were to present formal charges in front of a referee, *see* N.Y. Comp. Codes R. & Regs. tit. 22, §§ 605.6(e), 605.8 (2013), nothing in the regulations specifically prohibits the re-opening of an investigation. Even assuming that the committee's actions were improper, Schorr still failed plausibly to allege any facts showing bad faith. He asserted only that the re-opening of the investigation was unlawful and done in response to his request for a hearing. Even assuming *arguendo* that the re-opening was improper, the complaint does not sufficiently allege bad faith because it does not plausibly plead that the reopening was aimed at harassing Schorr. *See Diamond "D"*, 282 F.3d at 199–200. Nor is it a sign of bad faith that a staff attorney notified Schorr to comply with a subpoena compelling him to appear for an examination under oath or face suspension. Failure to comply with a committee subpoena warrants suspension. *Matter of Horowitz*, 14 A.D.3d 191, 193, 789 N.Y.S.2d 108 (1st Dep't 2005). Accordingly, the staff attorney's matter-of-fact statement concerning the repercussions of failing to comply with the committee's subpoena did not rise to the level of animus required to show bad faith.

In any event, Schorr cannot show that the committee would be unlikely to succeed in proving its charges. The committee found that Schorr violated N.Y. Comp. Codes R. & Regs. tit. 22, § 29.1, which prohibits the unauthorized audio recording of court proceedings, and thereby violated Rules of Professional Conduct 3.3(f)(3) and 8.4(d), which prohibit violations of tribunal

rules and conduct prejudicial to the administration of justice, respectively. Critically, Schorr admitted making an unauthorized recording of a court proceeding with his cell phone.

Finally, Schorr's argument that he was permitted to carry his phone in the courthouse misconstrues the meaning of the committee's admonition. It was not Schorr's possession of a cell phone that violated Rule 8.4(d), but his use of the **\*38** device to record a hearing surreptitiously. Despite Schorr's arguments to the contrary, the committee considered the circumstances surrounding the recording and mitigated his punishment to a private admonition. Since the committee already considered mitigating circumstances and imposed discipline, it would likely still impose discipline after a full hearing. The district court properly determined, therefore, that the bad faith exception did not apply.

Schorr also moves to supplement the record on appeal with an email explaining the circumstances of the district court's denial of his motion for a preliminary injunction to enjoin a deposition. Schorr, however, does not challenge on appeal the district court's order denying the preliminary injunction, and he has thus abandoned the issue. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92–93 (2d Cir. 1995). Accordingly, his motion to supplement the record with regard to the denial of his request for a preliminary injunction is denied as moot: the issue is not before us on appeal.

We have considered all of Schorr's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court and **DENY** Schorr's motion to supplement the record.

**All Citations**

686 Fed.Appx. 34

---

### Footnotes

\*      The Clerk of the Court is respectfully directed to amend the caption as set forth above.

---

End of Document                                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

651 Fed.Appx. 72

This case was not selected for publication in West's Federal Reporter.

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

United States Court of Appeals, Second Circuit.

Moshe SHTRAUCH, Plaintiff–Appellant,

v.

Kevin M. DOWD, Individually and as the administrator of the
Supreme Court building in Norwich, NY, Defendant–Appellee.

15–2727
|
June 10, 2016

**Synopsis**

**Background:** Plaintiff brought § 1983 action against judge for allegedly violating his First, Fourth, Fifth, and Fourteenth Amendment rights by having him removed from the courthouse during his divorce proceedings. The United States District Court for the Northern District of New York, Thomas J. McAvoy, J., 2015 WL 4508604, granted judge's motion to dismiss, and plaintiff appealed .

**[Holding:]** The Court of Appeals held that judge had judicial immunity from plaintiff's suit.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion to Dismiss.

West Headnotes (1)

[1]    **Civil Rights** 👈 Judges, courts, and judicial officers

Judge had judicial immunity from plaintiff's § 1983 action alleging he violated plaintiff's First, Fourth, Fifth, and Fourteenth Amendment rights by having him removed from the courthouse for allegedly behaving improperly during a conference in chambers, even though judge had recused himself from plaintiff's divorce proceedings prior to ordering that he be removed from the courthouse; the removal of plaintiff from the courthouse was a function typically performed by a judge in his judicial capacity and in relation to an individual case, and whether plaintiff was correct in asserting that he did not violate decorum under New York court rules was irrelevant to the question of immunity. U.S. Const. Amend. 1, 4, 5, 14; 42 U.S.C.A. § 1983; N.Y. Comp. Codes R. & Regs. tit. 22, § 100.3(B)(2).

65 Cases that cite this headnote

Appeal from a judgment of the United States District Court for the Northern District of New York (Thomas J. McAvoy, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED,   *73  AND DECREED** that the judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

For Petitioner–Appellant: Moshe Shtrauch, pro se, Mount Upton, NY.

For Defendant–Appellee: Jonathan D. Hitsous, Assistant Solicitor General (Barbara D. Underwood, Solicitor General and Andrew B. Ayers, Senior Assistant Solicitor General, on the brief ), for Eric T. Schneiderman, Attorney General of the State of New York, Albany, NY.

PRESENT: ROBERT D. SACK, GERARD E. LYNCH, Circuit Judges, J. GARVAN MURTHA, [*] District Judge.

## SUMMARY ORDER

Appellant Moshe Shtrauch, proceeding pro se, appeals the district court's judgment dismissing his 42 U.S.C. § 1983 complaint asserting that Kevin Dowd, a New York state justice, violated his First, Fourth, Fifth, and Fourteenth Amendment rights as barred by judicial immunity. [1] We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009). Additionally, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity.' " *Bliven*, 579 F.3d at 209, quoting *Mireles v. Waco*, 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). Moreover, judicial immunity does not bar a claim for prospective injunctive and declaratory relief. *Cf. Pulliam v. Allen*, 466 U.S. 522, 541–43, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984).

We employ "a 'functional' approach" to determine whether an act is "judicial" because judicial "immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 224, 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (emphasis in original). "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature," *Bliven*, 579 F.3d at 210, whereas, "[a]dministrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts," *Forrester*, 484 U.S. at 228, 108 S.Ct. 538. This Court looks to state law to "inform [the] inquiry as to whether [judges] acted ... in their judicial capacities."  **74  *Huminski v. Corsones*, 396 F.3d 53, 76 (2d Cir. 2005).

Dowd was entitled to judicial immunity because the act underlying Shtrauch's claims—the removal of Shtrauch from the courthouse—was a function typically performed by a judge in his judicial capacity and in relation to an individual case. *See* 22 N.Y.C.R.R. § 100.3(B)(2) (providing that a judge in New York "shall require order and decorum in proceedings before" him); *People v. Knowles*, 88 N.Y.2d 763, 766, 650 N.Y.S.2d 617, 673 N.E.2d 902 (1996) (stating that judges in New York "possess inherent authority" to control the conduct of the trial before them); *see also Huminski*, 396 F.3d at 79 (concluding that defendant was entitled to judicial immunity for barring litigant from courthouse because she "acted pursuant to Vermont law in ensuring the security of the courthouse"). Moreover, in this case, Dowd ordered Shtrauch removed based on Dowd's perception—right or

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

wrong—that Shtrauch had behaved improperly during a conference in a case pending before him. Whether Shtrauch is correct in asserting that he did not violate decorum is irrelevant to the question of immunity; by definition, immunity protects wrongful as well as appropriate exercises of a judicial function. *See Stump*, 435 U.S. at 359, 98 S.Ct. 1099.

Shtrauch argues that Dowd is not entitled to judicial immunity because Dowd recused himself from Shtrauch's divorce proceedings prior to ordering that Shtrauch be removed from the courthouse. Dowd's recusal from Shtrauch's case, however, does not alter the functional analysis of the underlying act. The removal of a litigant from a courtroom remains conduct typically performed by a judge in his judicial capacity arising directly from an individual case before the judge. The judge's decision to grant a recusal motion does not deprive the judge of authority to address perceived misbehavior during the proceeding on that motion.

Shtrauch is not entitled to injunctive relief because he "allege[d] neither the violation of a declaratory decree, nor the unavailability of declaratory relief." *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999). Nor is Shtrauch entitled to declaratory relief because he alleges only past conduct and does not seek to prevent an ongoing or future violation of federal law. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996) (concluding that relief sought was not prospective where the "specific allegations target[ed] past conduct" and the "remedy [was] not intended to halt a present, continuing violation of federal law").

We have considered all of Shtrauch's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

**All Citations**

651 Fed.Appx. 72

---

## Footnotes

\*    The Honorable J. Garvan Murtha, of the United States District Court for the District of Vermont, sitting by designation.

1    Shtrauch also moves to supplement the record on appeal to include the transcript of a state court proceeding. "[A]bsent extraordinary circumstances, federal appellate courts will not consider ... evidence which [is] not part of the [district court] record." *Int'l Bus. Machs. Corp. v. Edelstein*, 526 F.2d 37, 45 (2d Cir. 1975). Nevertheless, because it is undisputed that the transcript is accurate, the inclusion of the transcript does not affect the merits of the case, and we have necessarily reviewed the transcript in the course of deciding the motion, the motion is granted.

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 92 of 108

Walker v. Family Court Judge Catherine Cholakis, Not Reported in Fed. Supp. (2020)

2020 WL 3503158

2020 WL 3503158
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alisha C. WALKER, Plaintiff,

v.

FAMILY COURT JUDGE CATHERINE CHOLAKIS, et al., Defendants.

1:19-CV-1288 (LEK/CFH)
|
Signed 06/29/2020

**Attorneys and Law Firms**

Alisha C. Walker, Melrose, NY, pro se.

Denise P. Buckley, New York State Attorney General - Albany, Albany, NY, Mindy Ming-Huai Jeng, State of New York Unified Court System Office of Court Administration, New York, NY, for Defendant Family Court Judge Catherine Cholakis.

James P. Lagios, Rivkin Radler LLP, Albany, NY, for Defendant Joseph Drescher, Esq.

Matthew Foley, Esq., Troy, NY, pro se.

## MEMORANDUM-DECISION AND ORDER

Lawrence E. Kahn, Senior U.S. District Judge

### I. INTRODUCTION

 **\*1**  This action concerns alleged violations of pro se plaintiff Alisha C. Walker's First, Fifth, and Fourteenth Amendment rights. Dkt. No. 1 ("Complaint"). Plaintiff asserts claims under 42 U.S.C. §§ 1983 and 1985 against the Honorable Catherine Cholakis, a judge of the Family Court of New York, Rensselaer County ("Judge Cholakis"), and attorneys Joseph Drescher ("Drescher") and Matthew Foley ("Foley") (collectively, "Defendants"). Compl. ¶1. Plaintiff seeks damages of at least $1,000,000 against Defendants individually and collectively. Id. ¶¶ 49–52.

Before the Court are three motions to dismiss made pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6): one filed by Foley, Dkt. Nos. 10 ("Foley Motion to Dismiss"); 10-1 ("Foley Memorandum"); 10-24 ("Foley Affidavit"); one filed by Drescher, Dkt. Nos. 13 ("Drescher Motion to Dismiss"); 13-1 ("Drescher Memorandum"); and one filed by Judge Cholakis, Dkt. Nos. 15 ("Cholakis Motion to Dismiss"); 15-1 ("Cholakis Memorandum") (collectively, "Motions to Dismiss"). Plaintiff did not respond to any motion.

For the following reasons, the Court grants Defendants' Motions to Dismiss.

### II. BACKGROUND

The Court draws all facts, which are assumed to be true, from the Complaint. Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 210 (2d Cir. 2012). Plaintiff's claims stem from a pending custody action in Rensselaer County Family Court ("Family Court"). Plaintiff commenced the action in Family Court on November 15, 2018, against the father of her children, Luke Walker ("Walker") (who is represented by Drescher in the state court proceeding). Id. ¶ 4. Foley was appointed as an attorney for A.W. and T.W. ("Plaintiff's children") by Judge Kehn. Id. ¶ 5. The case was later transferred to Judge Cholakis, who issued orders

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 93 of 108

Walker v. Family Court Judge Catherine Cholakis, Not Reported in Fed. Supp. (2020)

2020 WL 3503158

on May 31, 2019 and August 19, 2019, granting temporary custody of Plaintiff's children to Walker. Id. ¶11. In response to this temporary custody ruling, Plaintiff brought this action against Defendants on October 18, 2019. Id. ¶ 2.

### A. Plaintiff's Factual Allegations and Claims

Plaintiff alleges that Drescher and Foley conspired with Judge Cholakis to deprive her and her children of their civil and constitutional rights. Compl. ¶¶ 46–47. Judge Cholakis violated her children's due process rights. Id. ¶¶ 42, 45. Foley discriminated against Plaintiff on the basis of her Buddhist religion by informing the court the Plaintiff believed in karma and thus would not provide medical attention to the children. Id. ¶ 17.

Moreover, in the course of the proceeding, Foley and Drescher made "false and misleading statements with no evidentiary support" and "belittled [Plaintiff's] character." Id. ¶¶ 30–31, 37. Drescher and Foley engaged in deceit, "character assassination and perjury." Id. ¶ 27.

Judge Cholakis demonstrated a lack of judicial competence, as she "made numerous improper pejorative and discriminatory statements," did not read the psychological reports verifying Plaintiff's parental fitness, "appeared not to know the case details," "unduly and unfairly relied on the spin and deceit and character assassination and perjury" made by Drescher and Foley, and exhibited "personal animus and bias" against Plaintiff. Id. ¶¶ 13–41.

**\*2** The temporary custody orders are "suspect, gained under lies and false pretenses, and should therefore be considered invalid." Id. ¶ 40.

As a result of improper conduct by Defendants, Plaintiff has been injured and suffered harm, worry, anxiety, sleeplessness, and a loss of protected family and liberty rights. Id. ¶ 48. Defendants are liable to her in an amount no less than $1,000,000, separately and collectively. Id. ¶¶ 45–48.

The Court construes the following claims: (1) a Fourteenth Amendment equal protection claim under § 1983 on behalf of Plaintiff's minor children, against Drescher and Foley; (2) a Fourteenth Amendment due-process claim under § 1983 on behalf of Plaintiff's minor children, against Judge Cholakis; (3) a Fourteenth Amendment "equal protection" claim and due-process claim under § 1983 and § 1985 against Judge Cholakis, Drescher, and Foley; (4) defamation claims against Foley and Drescher; (5) a claim against Judge Cholakis based on her lack of judicial competence; and (6) a claim for declaratory relief, seeking a declaration that the temporary custody order imposed by Judge Cholakis is invalid.

### III. LEGAL STANDARD

"Pursuant to [Rule] 12(b)(1), a party may, prior to serving a responsive pleading, move to dismiss a complaint on the ground the Court lacks subject matter jurisdiction. When a federal court lacks the statutory or constitutional power to adjudicate a case, it must be dismissed irrespective of its merits." McCluskey v. Town of E. Hampton, No. 13-CV-1248, 2014 WL 3921363, at \*2 (E.D.N.Y. Aug. 7, 2014) (citing Makarova, 201 F.3d at 113). Thus, "[w]hen defendants move for dismissal on a number of grounds, the 'court should consider the Rule 12(b)(1) challenge first since it must dismiss the complaint for lack of subject matter jurisdiction, and the accompanying defenses and objections become moot and do not need to be determined.' " Lipin v. National Union Fire Ins. Co. of Pittsburgh, Pa., 202 F. Supp. 2d 126, 132 (S.D.N.Y. 2002) (quoting Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990)). Plaintiff bears the burden of establishing the Court's subject matter jurisdiction by a preponderance of the evidence. Id.

The Court recognizes that pro se plaintiffs enjoy a more liberal pleading standard. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."). "This is particularly so when the pro se plaintiff alleges that her civil rights have been violated." Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). But pro se plaintiffs must still "comport with the procedural and substantive rules of law." Javino v. Town of Brookhaven, No. 06-CV-1245, 2008 WL 656672, at \*3 (E.D.N.Y. Mar. 4, 2008). To survive

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 94 of 108

Walker v. Family Court Judge Catherine Cholakis, Not Reported in Fed. Supp. (2020)

2020 WL 3503158

a 12(b)(6) motion to dismiss, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Bell Atl. Corp. v Twombly, 550 U.S. 544, 545 (2007).

## IV. DISCUSSION

**\*3**  The Court grants the Defendants' Motion to Dismiss because there is a lack of subject matter jurisdiction, Plaintiff cannot assert claims on behalf of her minor children, and Defendants are protected by various forms of immunity.

### A. The Court Lacks Subject Matter Jurisdiction

Drescher and Foley move to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction under the Rooker-Feldman doctrine and the Younger Abstention doctrine. Foley Mem. at 1, 9; Drescher Mem. at 8, 10. All Defendants move to dismiss for lack of subject matter jurisdiction under the Domestic Relations exception. Foley Mem. at 8; Drescher Mem. at 7; Cholakis Mem. at 5. The Court analyzes each doctrine in turn.

#### 1. Rooker-Feldman Doctrine

Defendants Foley and Drescher argue that Plaintiff's claims must be dismissed pursuant to the Rooker-Feldman doctrine. Foley Mem. at 1; Drescher Mem. at 8. This doctrine "pertains not to the validity of the suit but to the federal court's subject matter jurisdiction to hear it." Vossbrink v. Accredited HomeLenders, Inc., 773 F.3d 423, 427 (2d Cir. 2014). The Rooker-Feldman doctrine bars "federal courts from exercising jurisdiction over claims 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' " Sykes v Mel S. Harris and Assoc. LLC, 780 F3d 70, 94 (2d Cir. 2015) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)).

Accordingly, the Rooker Feldman doctrine has four requirements: (1) the plaintiff must have lost in state court; (2) the loss must have occurred before the district court proceedings commenced; (3) the plaintiff must complain of injuries caused by a state court judgment; and (4) the plaintiff must invite district court review and rejection of that judgment. Hoblock v. Albany County. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005). The first and second requirements are "loosely termed" procedural, while the third and fourth requirements are substantive. Id.

The Rooker-Feldman doctrine does not bar jurisdiction in this action because the Plaintiff's claims do not meet the first requirement: Plaintiff did not lose in state court. The Rooker-Feldman doctrine does not apply when the state court had not entered a final custody order because the "outcome of the state action is unclear" and the "court proceedings never reached a final outcome that would be appealable in state court". Krowicki v. Sayemour, No. 16-CV-1186, 2016 WL 9227665, at \*5 (N.D.N.Y. Oct. 5, 2016) (citing Green v. Mattingly, 585 F.3d 97, 102 (2d Cir. 2009), report and recommendation adopted by No. 16-CV-1186, 2017 WL 2804945 (N.D.N.Y. June 28, 2017)). Plaintiff commenced this action due to a loss in temporary custody of her children pursuant to a court order. Compl. ¶ 10. A final custody order to remove her children has not been issued. Id. ¶ 11. Given these circumstances, Plaintiff has not "lost" in state court. Green, 585 F.3d at 102. Therefore, the Court finds that Rooker-Feldman does not bar Plaintiff's claims.

#### 2. Younger Abstention

Drescher and Foley argue that Plaintiff's claims are also barred by the doctrine of Younger abstention. Foley Mem. at 9; Drescher Mem. at 10. There is "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex County Ethics Comm. v Garden State Bar Ass'n, 457 US 423, 431 (1982). The Younger

2020 WL 3503158

abstention doctrine "requires federal courts to abstain from exercising jurisdiction over claims that implicate ongoing state proceedings." Torres v. Gains, 130 F. Supp. 3d 630, 635 (D. Conn. 2015) (citing Younger v. Harris, 401 U.S. 37, 43–44 (1971)). "[Younger] abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." Morpugo v Inc. Vil. of Sag Harbor, 327 F. Appx. 284, 285 (2d Cir. 2009) (quoting Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002)).

 **\*4** The Court must abstain from exercising jurisdiction over the present case. This suit undoubtedly "raises important state interests," because the Plaintiff has challenged a temporary order in an ongoing child custody dispute. Graham v N.Y. Ctr. for Interpersonal Dev., No. 15-CV-459, 2015 WL 1120120, at \*3 (E.D.N.Y. Mar. 12, 2015) (quoting Reinhardt v. Com. of Mass. Dep't of Social Servs., 715 F.Supp. 1253, 1256 (S.D.N.Y. 1989)). Additionally, "[Plaintiff] is able to raise any potential constitutional claims in the state court system." Graham, 2015 WL 1120120, at \*3. [1] Plaintiff stated that the temporary custody order was gained under "lies and false pretenses and therefore should be considered invalid." Compl. ¶40. Thus, in addition to seeking monetary damages, Plaintiff is seeking declaratory relief. Younger abstention effectively bars a plaintiff's claims for declaratory relief. See Morpugo, 327 F. Appx. at 285–86 (holding that Younger barred plaintiff's claims for injunctive and declaratory relief). Therefore, Plaintiff's claims for declaratory relief are barred by Younger.

Conversely, the Second Circuit "[has] held that abstention and dismissal are inappropriate when [monetary] damages are sought, even when a pending state proceeding raises identical issues and we would dismiss otherwise identical claims for declaratory and injunctive relief." Kirschner v. Klemons, 225 F3d 227, 238 (2d Cir. 2000). In Morpugo, for instance, the Court abstained from exercising jurisdiction over the plaintiff's claims for injunctive relief pursuant to Younger but did not bar the plaintiff's claims for monetary relief. 327 Fed. App'x. at 286. Likewise, Plaintiff's claims for monetary relief are not barred by Younger.

Pursuant to Younger abstention, the Court is barred from exercising subject matter jurisdiction over Plaintiff's claim for declaratory relief. Although Younger does not bar Plaintiff's claims for monetary relief, as discussed above, all of Plaintiff's claims seeking monetary relief are dismissed for a lack of subject matter jurisdiction under the domestic relations exception.

### 3. Domestic Relations Exception

Defendants argue that Plaintiff's claims are barred by the domestic relations exception. Foley Mem. at 8; Drescher Mem. at 7; Cholakis Mem. at 5. It is well-settled that federal courts generally do not have jurisdiction over domestic relations matters, which include divorce, child custody, child support, and alimony. Marshall v. Marshall, 547 U.S. 293, 294–295 (2006). This policy exception exists because the states have developed competence and expertise in adjudicating marital and custody disputes, a skill that the federal courts traditionally lack. See Thomas v. New York City, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993). Claims that: (1) attempt to "rewrit[e] a domestic dispute as a tort claim for monetary damages," Schottel v. Kutyba, No. 06-1577-CV, 2009 WL 230106, at \*6 (2d Cir. Feb. 2, 2009); or (2) allege constitutional violations but whose injuries "stem directly from the disputed family court decision," Amato v. McGinty, No. 17-CV-593, 2017 WL 4083575, at \*5 (N.D.N.Y. Sep. 15, 2017), will be barred under the domestic relations exception.

Here, Plaintiff's claims fail because they stem directly from a child custody decision. Plaintiff commenced a civil rights action and has alleged that the actions and decisions of Judge Cholakis, Foley, and Drescher were unconstitutional. Compl. ¶¶ 45–48. Although she is not directly seeking a rejection of state judgment in her request for relief, the "crux of the argument" arises out of the temporary custody order because the Court would need to "re-examine and reinterpret" the state court order and evidence surrounding the order to effectively address her constitutional claims. Amato, 2017 WL 4083575, at \*5; see also Pappas v. Zimmerman, No. 13-CV-4883, 2014 WL 3890149, at \*4 (E.D.N.Y. Aug. 6, 2014) (holding that the domestic relations exception barred the plaintiff's claims because she raised constitutional issues that invited the federal court to "re-examine and reinterpret" state court divorce proceedings).

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 96 of 108
Walker v. Family Court Judge Catherine Cholakis, Not Reported in Fed. Supp. (2020)
2020 WL 3503158

**\*5**  In Amato, although plaintiffs alleged that the "order and processes" of the family court were unconstitutional, the domestic relations exception applied because plaintiff's injuries "stem[med] directly" from the disputed family court custody decision. 2017 WL 4083575, at \*5. Likewise, Plaintiff's claims are barred under the domestic relations doctrine, because she invited the Court to re-examine and reinterpret a temporary custody order made in Family Court, and her injuries stem directly from this custody decision.

Additionally, to obtain a review of the state court decision, Plaintiff has rewritten a domestic dispute as a tort claim for monetary damages. This Court recently clarified that state courts are better suited to adjudicate tort claims that "begin and end in a domestic dispute." Dodd v. O'Sullivan, 19-CV-560, 2019 WL 2191749, at \*4 (N.D.N.Y. May 21, 2019) (quoting Schottel, 2009 WL 23106, at \*1), report and recommendation adopted by 519-CV-560, 2020 WL 204253 (N.D.N.Y. Jan. 14, 2020) (Kahn, J.). Therefore, pursuant to the domestic relations exception, the Court dismisses Plaintiff's claims for monetary relief for lack of subject matter jurisdiction.

### B. Plaintiff Cannot Assert Claims on Behalf of Her Minor Children

Defendants move to dismiss Plaintiff's claims made on behalf of her minor children. Foley Mem. at 8; Drescher Mem. at 9; Cholakis Mem. at 8. "Federal Rule of Civil Procedure 17(c)(1)(A) permits a guardian to bring suit on behalf of a minor." Hagans v Nassau County Dept. of Social Services, 18-CV-1917, 2020 WL 1550577, at \*4 (E.D.N.Y. Mar. 31, 2020). However, it is well established that a pro se plaintiff lacks the authority to represent anyone other than herself in a court action, including her child. Cheung v. Youth Orchestra Found of Buffalo Inc., 906 F.2d 59, 61 (2d Cir. 1990); LeClair v. Vinson, 19-CV-28, 2019 WL 1300547, at \*4 (N.D.N.Y. Mar. 21, 2019), report and recommendation adopted by 19-CV-28, 2019 WL 2723478 (N.D.N.Y. July 1, 2019). This restriction exists because "the choice to appear pro se is not a true choice for minors who under state law cannot determine their own legal actions." Cheung, 906 F.3d at 61 (citation omitted).

Plaintiff purports to represent her minor children in this action. Compl. ¶¶ 42, 45–48. Accordingly, Plaintiff's claims alleging constitutional violations of her children's rights should be dismissed.

### C. Defendants Are Entitled to Immunity

Defendants assert that Plaintiff's claims should be dismissed under 12(b)(6), because even if the case had proper subject matter jurisdiction, Plaintiff fails to state a claim upon which relief can be granted, as Defendants are protected by quasi-judicial immunity, absolute immunity, and sovereign immunity.

#### 1. Quasi-Judicial Immunity

Foley argues that as an appointed attorney, his actions are protected by quasi-judicial immunity. Foley Mem. at 6. "Law guardians are entitled to quasi-judicial immunity for actions pertaining to their representation of a child in family court." Amato, 2017 WL 4083575, at \*3. Quasi-judicial immunity is absolute and protects court-appointed guardians from civil liability. Lewittes v. Lobis, 4-CV-155, 2004 WL 1854082, at \*11 (S.D.N.Y. Aug. 19, 2004) aff'd., 164 F. Appx, 97 (2d Cir. 2006). Foley was appointed by Judge Kehn to represent Plaintiff's children. Thus, Foley, who is being sued for conduct he engaged in when representing Plaintiff's children, is protected from suit under quasi-judicial immunity.

#### 2. Absolute Immunity

**\*6**  Drescher argues that he is entitled to absolute immunity from defamation claims for all statements made during the family court proceedings. Drescher Mem. at 11–12. Attorneys have absolute immunity from liability for defamation "when such words and writings [made during a court proceeding] are material and pertinent to the questions involved." Front, Inc. v. Khalil, 24

Walker v. Family Court Judge Catherine Cholakis, Not Reported in Fed. Supp. (2020)

2020 WL 3503158

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 97 of 108

N.Y.3d 713, 718 (2015) (quoting Youmans v. Smith, 153 N.Y. 214, 265 (1897)). This immunity allows an attorney to "speak freely to zealously represent their clients without fear of harassment or financial hazard." Park Knoll Assoc. v. Schmidt, 59 N.Y.2d 205, 209 (1983). When there is an absolute privilege, the defendant has immunity from liability regardless of motive. Id.

Plaintiff alleges that Foley and Drescher conspired with Judge Cholakis to deprive her of her constitutional and civil rights. Compl. ¶ 10. Plaintiff further alleges that Drescher and Foley gave "false and misleading statements" to Judge Cholakis that were "full of innuendo and not backed up by any factual evidence." Id. ¶ 13. Plaintiff believes that Drescher's language was full of "deceit", "character assassination, and perjury." Id. ¶ 27. Given that there are no factual allegations to support any other claim on these facts, [2] the Court has construed Plaintiff's allegations against Drescher as a claim for defamation, for which Drescher has absolute immunity. [3]

### 3. Sovereign Immunity

Judge Cholakis argues that all claims against her are barred by judicial immunity and Eleventh Amendment sovereign immunity. Cholakis Mem. at 2–5. Judicial immunity protects conduct "taken as part of all judicial acts except those performed in the clear absence of jurisdiction." LeClair, 2019 WL 1300547, at *7; see also Stump v. Sparkman, 435 U.S. 349, 356–57 (1978). When determining the limits of judicial action, the judge's jurisdictional scope must be construed broadly. LeClair, 2019 WL 1300547, at *7. This immunity is designed to benefit the public, so that the judge may exercise her functions with "independence and without fear of consequences." Id. Further, the Eleventh Amendment bars a plaintiff from bringing suit in federal court against a state, its agencies, or officials unless the state consents to the suit or there is a statutory waiver of immunity. Pennhurst State Sch. & Hosp. v. Halderman, 465, U.S. 89, 99–101 (1984).

 *7 Judge Cholakis has absolute judicial immunity for all judicial actions that occurred within her judicial capacity. Accepting Plaintiff's allegations as true, all of Judge Cholakis's actions occurred while she was working within her judicial capacity to determine the proper custody for Plaintiff's children. Plaintiff alleges that Judge Cholakis demonstrated a lack of judicial competence and exhibited "personal animus and bias" against her. Id. ¶¶ 13–41. However, "[t]his immunity applies even when the judge is accused of acting maliciously and corruptly." Amato, 2017 WL 4083575, at *3 (quoting Pierson v. Ray, 386 U.S. 547, 554 (1967)). Accordingly, Judge Cholakis is entitled to judicial immunity.

Judge Cholakis is also protected under sovereign immunity. In Gollomp v. Spitzer, the Court held that the New York Unified Court System is an "arm of the State" and affirmed the dismissal of a § 1983 claim against a judge under sovereign immunity. 568 F.3d 355, 365–68 (2d Cir. 2009). Likewise, Plaintiff has filed her complaint against Judge Cholakis, a member of the Rensselaer County Family Court, which is part of the New York Unified Court System. Compl. ¶3; N.Y. Const. Art. VI, §§ 1, 13. All of Judge Cholakis's alleged constitutional violations occurred while she acted within her official capacity as a Family Court judge in adjudicating a custody dispute. Therefore, all claims against Judge Cholakis should be dismissed, because "a suit against a state official in [her] official capacity is, in effect, a suit against the state itself, which is barred." Berman Enterprises, Inc. v Jorling, 3 F.3d 602, 606 (2d Cir. 1993) (citing Hafer v. Melo, 502 U.S. 21, 21 (1991)). [4]

### V. CONCLUSION
Accordingly, it is hereby:

**ORDERED**, that Foley's Motion to Dismiss (Dkt. No. 10), Drescher's Motion to Dismiss (Dkt. No. 13), and Cholakis's Motion to Dismiss (Dkt. No. 15) are **GRANTED**. Plaintiff's claims against Foley, Drescher, and Judge Cholakis are **DISMISSED** with prejudice, and without leave to amend; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this action; and it is further

Case 3:25-cv-00725-AMN-MJK    Document 13    Filed 07/22/25    Page 98 of 108
Walker v. Family Court Judge Catherine Cholakis, Not Reported in Fed. Supp. (2020)
2020 WL 3503158

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 3503158

## Footnotes

1    The appropriate place for a party to appeal a final decision made in Rensselaer County Family Court is the Supreme Court of New York, Appellate Division, Third Department. Family Ct. Act § 1111.

2    Plaintiff alleges that Defendants acted in concert to deprive her of her constitutional and civil rights under § 1983 and § 1985. To state a claim under § 1983, "a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived them of that right acted under color of state law.' " Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005) (quoting Gomez v. Toledo, 446 U.S. 635, 640 (1980)). Private individuals who are not state actors (not acting under the color of state law) may be liable under § 1983 "if they have conspired with or engaged in joint activity with state actors." Storck v. Suffolk County Dept. of Social Services, 62 F. Supp. 2d 927, 940 (E.D.N.Y 1999). Allegations of conspiracy cannot be vague nor conclusory but must allege with "some degree of particularity" clear acts that defendants engaged in that were reasonably related to the alleged conspiracy. Id. Plaintiff did not allege any specific acts that Drescher and Foley engaged in that would indicate a conspiracy with Judge Cholakis. Therefore, the allegation should be dismissed under 12(b)(6) because Plaintiff fails to state a claim under § 1983 against Drescher and Foley. Similarly, to state a claim under § 1985, the plaintiff's claim must contain more than conclusory or vague allegations of conspiracy. Storck, 62 F. Supp. 2d at 940. Accordingly, Plaintiff's § 1985 claim should be dismissed under 12(b)(6) as well.

3    An individual can file an attorney misconduct complaint with the Third Judicial Department Attorney Grievance Committee in Albany, NY. New York State Unified Court System, Judicial Conduct, Attorneys, *Grievance Complaints*, http://ww2.nycourts.gov/attorneys/grievance/complaints.shtml (last visited June 26, 2020).

4    A complaint regarding a judge's religious discrimination or bias may be filed with the USC Managing Inspector General for Bias Matters. New York State Unified Court System, *Judicial Conduct*, https://nycourts.gov/ip/judicialconduct/index.shtml (last visited June 26, 2020). Similarly, if a party believes that a judge violated the Rules of Judicial Conduct, a complaint can be filed against the judge with the New York State Commission of Judicial Conduct. Id.

**End of Document**                                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 713295
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Jomo WILLIAMS, Plaintiff,

v.

DOES, et al., Defendants.

CIVIL ACTION NO.: 24 Civ. 4794 (PAE) (SLC)

|

Signed January 30, 2025

**Attorneys and Law Firms**

Jomo Williams, New York, NY, Pro Se.

Miranda Onnen, Office of the New York State Attorney General, New York, NY, for Defendants.

## REPORT AND RECOMMENDATION

SARAH L. CAVE, United States Magistrate Judge.

**\*1  TO THE HONORABLE PAUL A. ENGELMAYER**, United States District Judge.

## I. INTRODUCTION

Pro se Plaintiff Jomo Williams asserts claims under 42 U.S.C. § 1983 alleging that Defendants Erlon Hodge and Theresa Daniel denied him access to the New York State courts in violation of his First and Fourteenth Amendment rights. (ECF Nos. 1; 18). Mr. Williams also names as a defendant BSREP UA 3333 Broadway LLC ("BSREP"), but it has neither been served nor otherwise appeared in this action. Hodge and Daniel move to dismiss the Complaint with prejudice. (ECF No. 37 (the "Motion")).

We respectfully recommend that: (i) the Motion be granted; (ii) BSREP be dismissed pursuant to Federal Rule of Civil Procedure 21; (iii) this action be dismissed with prejudice and without leave to amend; and (iv) that all other of Mr. Williams' pending requests be denied as moot.

## II. BACKGROUND

### A. Factual Background

In several hundred pages of filings, over two hundred of which consist of the Complaint (ECF No. 1) and the Amended Complaint (ECF No. 18 (together, the "Complaint")), [1] Mr. Williams complains of systemic discrimination and disadvantages based on race, socioeconomic status, and other characteristics. A federal case, however, is a limited affair not suitable for carte blanche grievance against the world and, as best we can discern from the Complaint, Mr. Williams filed this action to remedy the alleged denial of his right to access a New York State court. (ECF No. 1 at 2, 5–6, 8).

To set the scene, after Mr. Williams allegedly failed to pay rent on an apartment, he and BSREP became involved in adversarial housing proceedings in New York State courts (the "State Courts"). [2] (ECF No. 18 at 5–23 (the "Housing Matters")). [3] Mr.

Williams complained, among other things, that BSREP imposed or contributed to the allegedly improper living conditions he experienced because of his race and socioeconomic status. (Id.) Throughout the Complaint, Mr. Williams appended documents he submitted in the State Courts in the Housing Matters. (See generally ECF Nos. 1; 18).

In June 2023, Mr. Williams attempted to file a petition and other documents in the State Courts using the New York State Courts Electronic Filing System ("NYSCEF") without the prepayment of fees. (ECF No. 1 at 72). Daniel, a management analyst in the E-filing Division of the New York State Office of Court Administration ("OCA"), emailed Mr. Williams to inform him that his petition was deleted from the system because a "[p]oor person application cannot be done on NYSCEF." (Id. at 32). Daniel further explained that Mr. Williams needed first to "obtain a court order granting [him] poor person status BEFORE [he was] permitted to file" a petition. (Id. (emphasis in original)).

**\*2** About a year later, in June 2024, Mr. Williams attempted to file in the State Courts a second petition, to which he attached his first petition, by sending it to several email addresses, at least one of which appears to connect to an emergency relief docket. (Id. at 15; 72). After several days without acknowledgment of this filing, Mr. Williams filed his second petition on NYSCEF. (Id. at 15–17). Mr. Williams was later notified that his second petition could not be processed. (Id. at 17). After additional administrative back-and-forth regarding his second petition, Hodge, another OCA management analyst, emailed Mr. Williams, informing him that the State Courts "require[ ] for a Poor Person Application to be filed at the court in person ... [p]rior to commencement" of an action without the prepayment of fees. (Id. at 31). "Once the order is signed[,] then you can file the signed order and your comm[e]nceme[n]t [d]ocuments." (Id.) Mr. Williams alleges that he then submitted his documents to the State Courts' pro se office, which did not respond. (Id. at 21–22).

Mr. Williams claims that the emails from Daniel and Hodge, informing him that he was required to receive a signed order before commencing an action in the State Courts without the prepayment of fees, signaled "tacit approvals" of and amounted to denial of his access to the State Courts. (ECF No. 1 at 22).

In the Amended Complaint, Mr. Williams added allegations that, because he was denied access to the State Courts, he should be able to pursue his underlying claims against BSREP in this Court. (ECF No. 18 at 5). To that end, Mr. Williams repeated the allegations he made against BSREP in the State Courts. (See generally ECF No. 18).

The relief Mr. Williams seeks includes: (i) an order compelling Hodge and Daniel to "accept" his "CPLR 1101 Application via electronic means to allow him to proceed in the e-filing" of his second petition in the State Courts; (ii) an order tolling "all deadlines and statutes of limitations that may have expired due to this instant unequal access to the court matter"; and, (iii) damages of $50 million. (ECF No. 1 at 6).

**B. Procedural Background**

On June 18, 2024, Mr. Williams filed the Complaint against various unidentified "Doe" defendants. (ECF No. 1). The Honorable Paul A. Engelmayer granted Mr. Williams' request to proceed in forma pauperis and directed the Clerk of Court to: (i) add Hodge and Daniel as defendants in the case, pursuant to Rule 21; (ii) drop all unidentified defendants from the action without prejudice under the same Rule; and (iii) effect service of process on Hodge and Daniel. (ECF No. 9). The Clerk of Court issued the summonses for Hodge and Daniel and mailed an information package to Mr. Williams. (ECF Nos. 10; 11). Judge Engelmayer then granted Mr. Williams' request for permission to utilize electronic case filing in this action and referred the case for general pretrial supervision. (ECF Nos. 15; 16). The United States Marshals Service ("USMS") served Hodge and Daniel with the Complaint and summonses. (ECF Nos. 20; 21). On August 12, 2024, Mr. Williams filed the Amended Complaint. (ECF No. 18).

Although Mr. Williams does not clearly define his claims, we construe his Complaint as asserting three claims: (i) a § 1983 claim based on denial of his right to access the State Courts under the First Amendment (the "Access to Courts Claim"); (ii) a § 1983 claim based on violation of his equal protection rights under the Fourteenth Amendment (the "Equal Protection Claim"); and, (iii) purported criminal claims against Defendants (the "Criminal Claims").

On October 25, 2024, Hodge and Daniel filed the Motion, which Judge Engelmayer referred for a report and recommendation. (ECF Nos. 37; 41). After Hodge and Daniel filed the Motion—and between Mr. Williams' various other lengthy filings and requests for relief—the Court ordered Mr. Williams to file a response to the Motion, granted him several extensions of time to do so, and warned him each time that failure to respond would result in the Court ruling on the Motion based on the Complaint and Defendants' submissions alone. (ECF Nos. 44; 47; 50; 52; 56).

**\*3** On December 30, 2024, Mr. Williams filed a document labeled as his response to the Motion, which does address some of Defendants' arguments (ECF No. 60), so the Court deemed that submission Mr. Williams' opposition to the Motion. (ECF No. 62). Hodge and Daniel then filed a reply (ECF No. 66). [4]

## III. JURISDICTION AND VENUE

Personal jurisdiction and venue are uncontested. As discussed below, Hodge and Daniel challenge the Court's subject matter jurisdiction over Mr. Williams' claims.

## IV. STANDARDS OF REVIEW

### A. Federal Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). [5] Mr. Williams' Access to Courts and Equal Protection Claims trigger the Court's federal question jurisdiction under 28 U.S.C. § 1331, which grants federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." [6] Mr. Williams asserts those claims pursuant to a federal statute, 42 U.S.C. § 1983. (See ECF Nos. 1; 18). Section 1983 provides a vehicle for judicial relief to civil litigants who allege a "person who, under color of any statute, ordinance, regulation, custom, or usage of any State" subjected them to the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983.

Hodge and Daniel move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) on the ground that the Eleventh Amendment deprives the Court of subject matter jurisdiction and shields them from suit under the doctrine of sovereign immunity, and under Rule 12(b)(6) on the ground that Mr. Williams fails to state a claim against them. (ECF Nos. 38; 66).

### B. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008). A court may properly refer to matters outside the pleadings when considering the existence of jurisdiction on a Rule 12(b)(1) motion. See Kamen, 791 F.2d at 1010–11.

On a motion to dismiss under Rule 12(b)(1), "the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both." Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 (2d Cir. 2001). A challenge to the legal sufficiency of jurisdiction is "based solely on the allegations of the complaint or the complaint and exhibits attached to it," and thus "plaintiffs have no evidentiary burden, for both parties can be said to rely solely on the facts as alleged in the plaintiffs' pleading." Katz v. Donna Karan Co., LLC, 872 F.3d 114, 119 (2d Cir. 2017). When a defendant makes a factual challenge, however, the defendant can "proffer[ ] evidence beyond the plaintiffs' pleading." Id. (cleaned up). Plaintiffs opposing such a motion must "come forward with evidence of their own to controvert that presented by the defendant, or may instead rely on

the allegations in their pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." Id. (cleaned up).

### C. Rule 12(b)(6)

**\*4** A complaint survives a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if "the facts, taken as true and with all reasonable inferences drawn in the plaintiff's favor, state a plausible claim to relief." Sharikov v. Philips Med. Sys. MR, Inc., 103 F.4th 159, 166 (2d Cir. 2024). Although a district court must accept a plaintiff's "well-pleaded factual allegations" as true, this obligation is "inapplicable to legal conclusions, such as threadbare recitals of the elements of a cause of action that are supported by mere conclusory statements." Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 n.3 (2007)).

The Court "construe[s] a pro se complaint liberally," Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), by "reading such submissions 'to raise the strongest arguments they suggest.' " Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Pro se litigants, however, "remain subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in Twombly and Iqbal." Brickhouse v. City of N.Y., No. 09 Civ. 9353 (NRB), 2010 WL 3341845, at \*2 (S.D.N.Y. Aug. 16, 2010).

Although Mr. Williams responded in some form to the Motion, any failure on his part to oppose particular arguments Defendants make in the Motion does not alone merit dismissal of the Complaint. See Goldberg v. Danaher, 599 F.3d 181, 183–84 (2d Cir. 2010); McCall v. Pataki, 232 F.3d 321, 322–23 (2d Cir. 2000). "[T]he sufficiency of a complaint is a matter of law that the [C]ourt is capable of determining based on its own reading of the pleading and knowledge of the law. If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." Goldberg, 599 F.3d at 184 (citing McCall, 232 F.3d at 322–23).

## V. DISCUSSION

To bring some order to the parties' filings, we first discuss Hodge and Daniel's invocation of Eleventh Amendment immunity followed by their arguments that Mr. Williams fails to state a claim. We will then turn to Mr. Williams' allegations concerning BSREP and whether leave to amend the Complaint is appropriate. Finally, we will discuss Mr. Williams' other pending requests for relief.

### A. Eleventh Amendment Immunity

Mr. Williams argues that he brings his claims "against all in their [ ] available capacities." (ECF No. 60 at 17). We interpret that statement to mean Mr. Williams asserts his claims against Hodge and Daniel in both their official and individual capacities. To the extent Mr. Williams seeks monetary relief against them in their official capacities as employees of the State Courts, Hodge and Daniel argue the Eleventh Amendment shields them from Mr. Williams' request for monetary relief. They are correct.

### 1. Legal Standard

The Eleventh Amendment to the United States Constitution prohibits the "[j]udicial power of the United States" from extending to "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Thus, "as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity" or Congress has "abrogate[d] the states' Eleventh Amendment immunity ... pursuant to its authority under Section 5 of the Fourteenth Amendment." Woods v. Rondout Valley Cent. Sch. Dist. Bd. Of Educ., 466 F.3d 232, 236 (2d. Cir. 2006). "The immunity recognized by the Eleventh Amendment

extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." Id. A suit against an individual state official in his or her official capacity "is no different from a suit against the State itself[,]" and is thus barred by the Eleventh Amendment. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).

**\*5** "The Eleventh Amendment does not bar all claims against officers of the State, even when directed to actions taken in their official capacity and defended by the most senior legal officers in the executive branch of the state government." Fla. Dep't of State v. Treasure Salvors, Inc., 458 U.S. 670, 684 (1982). A suit seeking only prospective injunctive relief against a state official—as opposed to retrospective monetary damages—is permissible notwithstanding the Eleventh Amendment. See Ex parte Young, 209 U.S. 123, 155–56 (1908) (collecting authorities supporting principle that a federal court has equitable jurisdiction to enjoin state officers from engaging in an act that violates the United States Constitution); see also P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (explaining that "Young and its progeny render the [Eleventh] Amendment wholly inapplicable to a certain class of suits"); Henrietta D. v. Bloomberg, 331 F.3d 261, 287 (2d Cir. 2003) (noting that the "Eleventh Amendment ... does not preclude suits against state officers in their official capacity for prospective injunctive relief to prevent a continuing violation of federal law").

In addition, the Eleventh Amendment does not preclude a suit for monetary damages against state officials in their individual capacities. See Alden v. Maine, 527 U.S. 706, 757 (1999) (explaining that "a suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief is sought not from the state treasury but from the officer personally"); Hafer v. Melo, 502 U.S. 21, 25–31 (1991) (holding that state officers may be held personally liable for damages for actions in their official capacities).

### 2. Application

Because "New York State has not waived its sovereign immunity[,] [n]or has Congress, through § 1983, abrogated the state's immunity," Johnson v. New York, No. 10 Civ. 9532 (DLC), 2012 WL 335683, at *1 (S.D.N.Y. Feb. 1, 2012) (citing Santiago v. N.Y. State Dep't of Corr. Servs., 945 F.2d 25, 31 (2d Cir. 1991)), the Eleventh Amendment bars Mr. Williams' claims for monetary relief against Hodge and Daniel in their official capacities. See A.G. v. Green, No. 22 Civ. 6146L, 2023 WL 2573324, at *1 (W.D.N.Y. Mar. 20, 2023) (dismissing claims that sought only monetary relief against state official in his official capacity); Day v. Gallagher, 151 F. Supp. 3d 253, 255 (D. Conn. 2015) (dismissing claims for money damages against all defendants in their official capacities); Clark v. Tosco Corp., No. Civ. A. 300CV1016JCH, 2000 WL 33116539, at *2 (D. Conn. Oct. 17, 2000) (same).

Accordingly, the Court lacks subject matter jurisdiction over Mr. Williams' claims to the extent that they seek monetary damages against Hodge and Daniel in their official capacities. [7]

### B. Failure to State a Claim

To the extent that Hodge and Daniel might be subject to liability in their individual capacities, the Complaint, liberally construed, asserts only the Access to Courts and Equal Protection Claims against them. (See § II.B., supra; see generally ECF Nos. 1; 18). Mr. Williams has not, however, plausibly alleged all the elements of those claims. In addition, Mr. Williams' Criminal Claims are frivolous or lack merit. (Id.) Because Mr. Williams fails to state a claim under any theory, we respectfully recommend that the Motion be granted, and that the Complaint be dismissed.

### 1. Access to Courts Claim

**\*6** "In order to establish a violation of the right to access the courts, the plaintiff must demonstrate that the alleged deprivation actually interfered with his access to the courts or prejudiced an existing action. In addition, [a p]laintiff must demonstrate that

an 'actual injury' resulted from the denial of access to the courts." Posr v. Dolan, No. 02 Civ. 659 (LBS), 2003 WL 22203738, at *4 (S.D.N.Y. Sept. 23, 2003). "[I]n order to survive a motion to dismiss, a plaintiff must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim." Id.

Nothing in the Complaint plausibly alleges that Hodge and Daniel's conduct was deliberate and malicious. After Mr. Williams attempted to initiate an action in the State Courts without the prepayment of fees, Hodge and Daniel each sent a separate notice to Mr. Williams that informed him that the State Courts required him to seek an order to proceed without the prepayment of fees before commencing his action. (ECF No. 1 at 31; 32). Because Mr. Williams did not initiate an action in the State Courts pursuant to the State Courts' rules and practices, Hodge and Daniel merely informed him of the steps he needed to take. (Id.) No reading of the Complaint, even liberally construed, plausibly shows that Hodge and Daniel's conduct was a deliberate and malicious attempt to deny Mr. Williams access to the State Courts. To the contrary, the only plausible inference from Mr. Williams' allegations is that Hodge and Daniel facilitated his access to the State Courts by explaining the requirements for his filings. Accordingly, we respectfully recommend dismissing Mr. Williams' Access to Courts Claim.

## 2. Equal Protection Claim

Mr. Williams also mentions the Equal Protection Clause of the Fourteenth Amendment as it relates to his alleged denial of access to the State Courts. (ECF No. 1 at 2). "To prove an equal protection violation, claimants must prove purposeful discrimination, directed at an identifiable or suspect class." Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995). Assuming for purposes of the Motion that Mr. Williams plausibly alleged membership in a suspect class, the Complaint does not plausibly allege that Mr. Williams was subjected to purposeful discrimination based on race, income, disability, or any other protected characteristic. New York law requires any person who wishes to initiate an action without the prepayment of fees to first ask the State Courts for permission to do so. See N.Y. C.P.L.R. § 1101. Hodge and Daniel simply informed Mr. Williams of that generally applicable requirement. (ECF No. 1 at 31; 32). A fair reading of the Complaint suggests that Mr. Williams would have been allowed to initiate an action in the State Courts without the prepayment of fees if he had followed the instructions for doing so. Mr. Williams has not plausibly alleged that he suffered purposeful discrimination relating to his alleged denial of access to the courts and, therefore, we respectfully recommend dismissing his Equal Protection Claim. Cf. Todd v. Dulce, No. 13 Civ. 5421 (NGG), 2015 WL 4488455, at *8 (E.D.N.Y. July 22, 2015) (rejecting Fourteenth Amendment access to courts argument in the habeas corpus context where the New York State court denied a pro se plaintiff poor person status to pursue his appeal); San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 24 (1973) ("At least where wealth is involved, the Equal Protection Clause does not require absolute equality or precisely equal advantages.").

## 3. Criminal Claims

*7 Mr. Williams references thirteen criminal statutes and purports to bring criminal claims against Hodge and Daniel for violating those statutes. [8] Hodge and Daniel argue that because Mr. Williams' claims alleging violations of those criminal statutes are "based on an indisputably meritless legal theory," they should be dismissed as frivolous. (ECF Nos. 38 at 16–18; 66 at 10). Specifically, they contend that Mr. Williams: (i) improperly directed his claims against them; (ii) lacks a private right of action; and (iii) failed to plead his claims with particularity. (ECF No. 66 at 10).

The Court is required to dismiss claims that are frivolous or malicious. See 28 U.S.C. § 1915(e)(2)(B)(i). A claim is "frivolous" when either: (1) the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy;" or (2) "the claim is 'based on an indisputably meritless legal theory.' " Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998); Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). "A claim is based on an 'indisputably meritless legal theory' when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." Livingston, 141 F.3d at 437.

Mr. Williams' purported criminal claims against Hodge and Daniel both lack an arguable basis in law and raise dispositive defenses. Four of the criminal statutes Mr. Williams identifies—42 U.S.C. § 3631, N.Y. Real Prop. Acts. Law § 768, N.Y. Penal L. § 20.20, N.Y.C. Admin. Code § 26-523—relate to violations of Mr. Williams' housing rights or apply only to corporations. They are facially inapplicable to Hodge and Daniel. As to the two perjury statutes, N.Y. C.P.L.R. § 2106 and N.Y. Penal L. § 210, Hodge and Daniel are correct that "[i]n New York, there is no civil action for perjury." Campaign v. Esterhay, 61 Misc. 3d 662, 667 (N.Y. Sup. Ct. 2018) (citing Verplanck v. Van Buren, 76 N.Y. 247, 261 (1879)).

Moreover, and as to the remaining criminal statutes Mr. Williams cites, "[i]t is well-settled that, unless specifically provided for, federal criminal statutes rarely create private rights of action." Daniel v. Safir, 135 F. Supp. 2d 367, 376 (E.D.N.Y. 2001) (citing Chrysler Corp. v. Brown, 441 U.S. 281, 316 (1979)). Mr. Williams lacks such private rights of action here. See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 511 (2d Cir. 1994) (discussing 18 U.S.C. § 242); Keady v. Nike, Inc., 116 F. Supp. 2d 428, 435 (S.D.N.Y. 2000) (discussing 18 U.S.C. § 241); Greenblatt v. Richard Potasky Jewelers, No. 93 Civ. 3652 (LMM), 1994 WL 9754, at *4 n.4 (S.D.N.Y. Jan. 13, 1994) (discussing 18 U.S.C. § 371); Zietek v. Pinnacle Nursing and Rehab Center, No. 21 Civ. 5488, 2024 WL 243436 (AT) (JLC), at *2, n.4 (S.D.N.Y. Jan. 23, 2024) (discussing 18 U.S.C. §§ 1701 and 1702). Mr. Williams merely references the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, but he has not plausibly advanced a RICO claim by alleging with particularity that he was "injured in his business or property by reason of a RICO violation[,]" Alix v. McKinsey & Co., Inc., 23 F.4th 196, 200 (2d Cir. 2022), so—to the extent he is able to and did attempt to assert a RICO claim—it also fails. [9]

**\*8** Accordingly, we respectfully recommend dismissing the Criminal Claims.

### C. Qualified Immunity

Hodge and Daniel argue that they are shielded from Mr. Williams' claims by qualified immunity. (ECF No. 38 at 14–15). Having determined that Mr. Williams has failed to state any plausible claim, however, we need not address the more difficult question of whether qualified immunity applies here. See Porath v. City of N.Y., No. 22 Civ. 1302 (JPC) (SLC), 2023 WL 9197680, at *14 (S.D.N.Y. Dec. 21, 2023), adopted by, 2024 WL 127025 (S.D.N.Y. Jan. 11, 2024); Steele-Warrick v. Microgenics Corp., No. 19 Civ. 6558 (FB) (VMS), 2023 WL 3081290, at *11 (E.D.N.Y. Apr. 26, 2023) (declining to address qualified immunity argument with respect to claims that were not plausibly alleged); DeMeo v. Koenigsmann, No. 11 Civ. 7099 (HBP), 2015 WL 1283660, at *18 (S.D.N.Y. Mar. 20, 2015) ("Because plaintiff has failed to state claims on which relief can be granted against Dr. Holder, I need not address the defendants' argument that he is entitled to qualified immunity.").

### D. BSREP

Mr. Williams seeks "removal" to this Court of the claims he purportedly made against BSREP in the State Courts, where he lodged a litany of allegations against BSREP concerning housing conditions. (ECF No. 18 at 3–23, 28). BSREP has not been served and has not appeared in this action. Mr. Williams does not claim, however, that BSREP denied him access to the State Courts; rather, he contends that because Hodge and Daniel allegedly denied him access to the State Courts, his underlying claims against BSREP should be heard here. We disagree.

"At any time, on just terms," the Court, on its own motion, may "add or drop a party." Fed. R. Civ. P. 21. "A court has broad discretion in determining whether to add or drop parties, ... which is guided by principles of fundamental fairness and judicial efficiency." BBK Tobacco & Foods, LLP v. 7th St. Vill. Farm Inc., No. 17 Civ. 4079 (GHW), 2017 WL 8723938, at *1 (S.D.N.Y. June 15, 2017); Williams v. Does, No. 24 Civ. 4794 (PAE), 2024 WL 3723052, at *1 (S.D.N.Y. July 16, 2024); (ECF No. 9). When evaluating motions brought under Rule 21, courts have considered "(1) whether severance would serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence." See Golden Goose Deluxe Brand v. Aierbushe, No. 19 Civ. 2518 (VEC), 2019 WL 2162715, at *2 (S.D.N.Y. May 16, 2019) (citing Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A., 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008)); see also In re Merrill

Lynch & Co., Inc. Research Reports Secs. Litig., 214 F.R.D. 152, 154–55 (S.D.N.Y. 2003). Hodge and Daniel were added to this action pursuant to Rule 21 (ECF No. 9 at 2–3), and we recommend dismissing BSREP as a party pursuant to the same rule.

To the extent that any of the claims against Hodge and Daniel were to continue, dismissing BSREP from this case would be in the interest of judicial economy. First, Mr. Williams' allegations against BSREP concerning housing violations do not arise out of the same transaction or occurrence as his claims against Hodge and Daniel. The Complaint is focused entirely on Mr. Williams' claim that the State Courts' requirement for litigants to make an application to proceed without the prepayment of fees before commencing an action amounted to the denial of his right of access. (ECF No. 1 at 5–6). The Complaint merely reasons that because Mr. Williams was allegedly unable to commence an action against BSREP in the State Courts he can bring that action here instead.

**\*9** Second, Mr. Williams has not plausibly alleged this Court's subject matter jurisdiction over his claims against BSREP. More specifically, Mr. Williams has not plausibly alleged that BSREP is a state actor that deprived him of his rights under the Constitution or any statute, and the Complaint lacks allegations sufficient to state any other plausible claim against BSREP under this Court's federal question or diversity jurisdiction.

We therefore respectfully recommend that, if the claims against Hodge and Daniel were to continue, BSREP be dismissed from this action pursuant to Rule 21. Cf. McGee v. State Farm Mut. Auto. Ins. Co., 684 F. Supp. 2d 258, 262 (E.D.N.Y. 2009) (sua sponte exercising discretion under Rule 21 to dismiss parties).

### E. Leave to Amend

Mr. Williams has not requested leave to amend and we respectfully submit that no such leave is warranted.

"It is the usual practice upon granting a motion to dismiss to allow leave to replead." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991); see also Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Leave to amend may be denied, however, "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014). "Although district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings, leave to amend need not be granted when amendment would be futile." Terry v. Inc. Vill. of Patchogue, 826 F.3d 631, 633 (2d Cir. 2016). "Where it appears that granting leave to amend is unlikely to be productive ... it is not an abuse of discretion to deny leave to amend." Apotex Inc. v. Acorda Therapeutics, Inc., 823 F.3d 51, 62 (2d Cir. 2016) (quoting Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)).

Mr. Williams made two attempts at pleading viable claims and received the benefit of the Court considering them together as a single Complaint. Mr. Williams also submitted a lengthy response to the Motion. (ECF No. 60). In the hundreds of pages that comprise the Complaint and his opposition, liberally construed, Mr. Williams was not able to allege a single plausible claim and there is no indication he could do so if given the opportunity to replead. Leave to amend would be futile and is therefore not warranted. See Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999) ("[W]here [a] plaintiff is unable to demonstrate he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied.").

### F. Mr. Williams' Other Pending Requests

Mr. Williams filed numerous other requests for relief both before and after Hodge and Daniel filed the Motion. They include, among others: a request for the USMS to serve 106 people and entities (ECF Nos. 24; 26); a temporary restraining order and preliminary injunction enjoining Defendants from (i) "remanding [this] case to state court[,]" and withholding state court records and an induction stove from his home, (ii) ordering "access to [a] judge to sign [Mr. Williams'] criminal complaints" against Defendants, and (iii) consolidating this case with another of Mr. Williams' cases (ECF Nos. 29; 31); a response to Mr. Williams' purported order to show cause why he has not immediately received his requested relief (id.); an order of protection and to show cause based on Mr. Williams' allegations concerning "Project 2025" and several other groups and federal offices (ECF Nos. 33; 43); an application for pro bono counsel (ECF No. 46), which the Court held in abeyance pending a decision

on the Motion (ECF No. 47); a motion for reconsideration under Federal Rule of Civil Procedure 60, "seeking correction of clerical mistakes, relief from dismissal based on inadvertence or neglect, and addressing misconduct by opposing parties in the handling of the CVRA case" (ECF No. 58; see also ECF Nos. 54; 55); and additional requests to proceed in forma pauperis in this Court and on appeal (ECF Nos. 63–65).

 **\*10**  If the Court dismisses the Complaint, we respectfully recommend denying all other of Mr. Williams' pending requests as moot in light of the Court's decision on the Motion.


## VI. CONCLUSION

Accordingly, we respectfully recommend that: (i) the Motion (ECF No. 37) be **GRANTED**; (ii) Defendant BSREP UA 3333 Broadway LLC be **DISMISSED** pursuant to Federal Rule of Civil Procedure 21; (iii) the Complaint (ECF Nos. 1; 18) be **DISMISSED WITH PREJUDICE** and **WITHOUT LEAVE TO AMEND**; and (iv) that all other of Mr. Williams' pending requests be **DENIED as moot**.

\* \* \*


### NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Engelmayer.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).


**All Citations**

Slip Copy, 2025 WL 713295


### Footnotes

1    Defendants contend the Amended Complaint alone is the operative pleading under Federal Rule of Civil Procedure 15(d) (ECF No. 66 at 2), while Mr. Williams argues he intended to supplement not replace the Complaint with the Amended Complaint (ECF No. 60 at 2). In deference to Mr. Williams' pro se status, we consider the allegations of the Complaint and Amended Complaint together. See Briggs v. SCO Family of Servs., No. 16 Civ. 3882 (JFB) (SIL), 2019 WL 2359421, at \*1 (E.D.N.Y. Feb. 13, 2019), adopted by, 2019 WL 1253220 (E.D.N.Y. March 18, 2019).

2    It is unclear, but also immaterial, who initiated the first proceeding and in which New York State court. For simplicity, we define the New York State courts collectively.

3    Record citations are to the ECF page numbers and not the paragraph numbers, which are non-consecutive.

4    Mr. Williams filed a request to file a sur-reply. (ECF No. 67). The Court reviewed Mr. Williams' filing and finds that it does not advance any different or additional arguments in opposition to the Motion.

5    Internal citations and quotation marks are omitted from case citations, and alterations are adopted throughout unless otherwise indicated.

6    As discussed below (see § V.B.3., infra), Mr. Williams' references to criminal statutes are improper in this civil action.

7    Although the Eleventh Amendment does not preclude the Court from exercising subject matter jurisdiction over claims against Defendants in their individual capacities and where Mr. Williams seeks equitable relief against them in their official capacities (see § V.A.1., supra), for the reasons set forth in the remainder of this Report and Recommendation, Mr. Williams has not plausibly alleged any such claims. (See § V.B., infra).

8    The referenced criminal statutes include:

  • 18 U.S.C. § 241 (Conspiracy Against Rights)

  • 18 U.S.C. § 371 (Conspiracy to Defraud the United States)

  • 18 U.S.C. § 242 (Deprivation of Rights Under Color of Law)

  • 18 U.S.C. § 1961 (Racketeering)

  • 18 U.S.C. § 1701 (Obstruction of mails)

  • 18 U.S.C. § 1702 (Obstruction of correspondence)

  • 42 U.S.C. § 3631 (Criminal Interference with Right to Fair Housing)

  • 42 U.S.C. § 7413(c) (Criminal Provisions of the Clean Air Act)

  • N.Y. Real Prop. Acts. Law § 768 (Unlawful Eviction)

  • N.Y. Penal L. § 210 (Perjury)

  • N.Y. Penal L. § 20.20 (Criminal Liability of Corporations)

  • N.Y. C.P.L.R. § 2106 (Perjury)

  • New York City, N.Y., Code § 26-523 (Criminal Penalties for Unlawful Eviction)

9    To the extent Mr. Williams identified other statutes in his initial form complaint, he has not pursued them further in his subsequent filings. (See ECF No. 1 at 2). The Court thus deems any alternative claims abandoned. See Bravo v. U.S. Marshals Serv., 684 F. Supp. 3d 112, 122 (S.D.N.Y. 2023).

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.